**From:** Mark Lanterman mlanterman@compforensics.com
**Subject:** Miller's Breach
**Date:** February 1, 2022 at 1:20 PM
**To:** Edward Miller edmillerlaw@gmail.com
**Cc:** Evelyn Donegan edonegan@rkalaw.com, Yimin Chen mindy@ymclaw.com, Michael Cukor mcukor@mcgearycukor.com

Ed—

In your January 28, 2022 letter to the Court, you take two positions that relate to me and my company:

1) That CFS and I are/were somehow responsible to enforce your agreement with opposing counsel; and
2) You dispute our invoices.

First, you are CFS's client, Ed. You executed our engagement letter, which includes a confidentiality provision. CFS is not a party to the agreement between counsel. Therefore, I am not sure how your point that "CFS called Mr. Miller as many times as Mr. Miller called CFS" has any bearing on this issue. You should have, as a party to the agreement with opposing counsel, refrained from any direct communications and ensured your own compliance with your agreement with opposing counsel. Your attempts to shift your responsibility to CFS is transparent.

Notwithstanding that CFS had no obligation under any agreement between counsel, CFS did, in fact, remind you of your obligations. On October 12, 2021, Nate Dittmar (a CFS employee) initiated a phone call with you and asked if opposing counsel should be present on the line. You answered in the affirmative, but told Mr. Dittmar that he could provide you "a heads up." This indicates that you solicited additional substantive information about CFS's work beyond just billing.

As another example, on December 1, 2021, you contacted CFS and posed a number of substantive questions to CFS, without opposing counsel on the line. At the start of the call you asked one question about billings (why some tasks were billed at a different hourly rate), and then asked the following:

1. What percentage of deleted documents/files are permanently lost? How many relate to ACU?
2. What percentage of permanently deleted documents/files relate are quickbooks files? How many of the permanently deleted quickbooks files relate to ACU?
3. Of what was downloaded to the Thumb Drive(s) were we able to retrieve? How many relate to ACU?

We asked if you would put your questions in an email, to which you responded that "I can't do an email. I had an agreement with my counter parties not to communicate with you without them...I need it verbally over the phone." We did not answer your questions. I think that your position now that you only contacted CFS regarding billing is disingenuous and, based on our records, at best, you simply used our billings as a pretext for a direct, substantive communication. You put us in an awkward situation, Ed.

Second, you now take issue with CFS's billings. I have attached copies of all our invoices along with additional detailed entries. As you know, Ed, your requests were a moving target. At the outset, CFS discovered mass file deletions that occurred immediately before CFS received the device. In an October 12, 2021 phone call between Nate, you, and Mr. Quach discussing the mass deletions (again, not about billing), you acknowledged you had advised Mr. Quach that he could delete files before sending the device to CFS. As it turns out, many of the deleted files were germane to this litigation, including entire QuickBooks files.

In addition to the complexity added by the mass deletions, CFS was asked to prepare and produce additional work product, and to analyze specific sources of information (*e.g.,* QuickBook accounting files). You instructed me to generate a declaration, with less than two days' notice. All of these factors, in the aggregate, impacted our costs. To illustrate this point, CFS was instructed to analyze and produce financials from multiple password-protected QuickBooks files related to ACU. Because CFS was not

financials from multiple password-protected QuickBooks files related to Floor because CFS was not provided the password(s) for the files, additional work was done to circumvent the passwords. CFS was successful in bypassing QuickBooks' security features and was able to access the financial information, which I briefly discussed in my November 3, 2021 declaration. This work request required CFS to work well past midnight on November 2 into November 3, 2021. Because CFS was required to work after-hours, and because this is clearly an expedited request, CFS billed at its 1.5x priority rate pursuant to its contract with you.

Furthermore, it is frustrating that you cite information about our flat fees for forensic imaging (creating a forensic copy of Quatch's laptop). These fees are between $300 and $750. You know well that that cost was associated with the initial task of copying Quatch's laptop hard drive and was never intended as a cap on project fees, yet you mislead the Court.

Ed—Our relationship has reached its end. Either pay the outstanding invoices or don't. Unless all fees are immediately paid, CFS will cease performing all services on Thursday February 3, and will destroy all property and data in our possession.

Mark Lanterman
Chief Technology Officer
ComputerForensic Services
800 Hennepin Avenue, 5th Floor
Minneapolis, MN 55403
952-924-9920 office
mlanterman@compforensics.com
www.compforensics.com



Invoice_102949[56].pdf



**INVOICE**

Computer Forensic Services, LLC
800 Hennepin Ave., 5th Floor
Minneapolis, MN 55403

Invoice #: 103091
Date: 01-25-2022

Edward Miller, Esq.
Ed Miller Law

Matter Name: Vision Industries Group, Inc. v. ACU Plasmold, Inc.

| Date | Description | Quantity | Rate | Total |
| --- | --- | --- | --- | --- |

| Date | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 11-03-21 | Communications | 1.10 | 325.00 | $357.50 |
| 11-22-21 | Document Review | 1.00 | 325.00 | $325.00 |
| 12-01-21 | Data Hosting (500 GB) | 1.00 | 1725.00 | $1,725.00 |
| 01-25-22 | Data Hosting (500GB, From 12/1/2021 to 1/25/2022) | 1.00 | 3162.50 | $3,162.50 |

|   |   |
|---|---|
| Total | $5,570.00 |
| Payment | $0.00 |
| Balance Owing | $5,570.00 |

Please make all checks payable to: Computer Forensic Services, LLC

If you have any questions concerning this invoice,
contact us at (952) 924-9920 or billing@compforensics.com.

Thank you for your business!

Page: 1



CFS Engag...C..pdf



Plasmold Time and Co...ort.xlsx



# INVOICE

Computer Forensic Services, LLC
800 Hennepin Ave., 5th Floor
Minneapolis, MN 55403

Invoice #: 102949
Date: 11-10-2021

Edward Miller, Esq.
Ed Miller Law

Matter Name: Vision Industries Group, Inc. v. ACU Plasmold, Inc.

Reduced by $5,000 prepayment.

| Date | Description | Quantity | Rate | Total |
| --- | --- | --- | --- | --- |
| 10-20-21 | Communications | 0.50 | 325.00 | $162.50 |
| 11-01-21 | Submittal Preparation | 6.90 | 325.00 | $2,242.50 |
| 11-01-21 | Communications | 0.40 | 325.00 | $130.00 |
| 11-02-21 | Submittal Preparation | 3.10 | 325.00 | $1,007.50 |
| 11-02-21 | Decryption | 3.40 | 325.00 | $1,105.00 |
| 11-02-21 | Analysis | 3.10 | 325.00 | $1,007.50 |
| 11-02-21 | Declaration Preparation | 4.30 | 937.50 | $4,031.25 |
| 11-03-21 | Document Review | 0.50 | 325.00 | $162.50 |
| 11-03-21 | Declaration Preparation | 2.70 | 625.00 | $1,687.50 |
| 11-01-21 | Data Hosting (500 GB) | 1.00 | 1725.00 | $1,725.00 |
| 11-02-21 | QuickBooks Desktop Subscription | 1.00 | 378.08 | $378.08 |

|  |  |
|---:|---:|
| Discount | $5,000.00 |
| Total | $8,639.33 |
| Payment | $0.00 |
| Balance Owing | $8,639.33 |

Please make all checks payable to: Computer Forensic Services, LLC

If you have any questions concerning this invoice,
contact us at (952) 924-9920 or billing@compforensics.com.

Thank you for your business!



# INVOICE

Computer Forensic Services, LLC
800 Hennepin Ave., 5th Floor
Minneapolis, MN 55403

Invoice #: 103091
Date: 01-25-2022

Edward Miller, Esq.
Ed Miller Law

Matter Name: Vision Industries Group, Inc. v. ACU Plasmold, Inc.

| Date | Description | Quantity | Rate | Total |
|---|---|---|---|---|
| 11-03-21 | Communications | 1.10 | 325.00 | $357.50 |
| 11-22-21 | Document Review | 1.00 | 325.00 | $325.00 |
| 12-01-21 | Data Hosting (500 GB) | 1.00 | 1725.00 | $1,725.00 |
| 01-25-22 | Data Hosting (500GB, From 12/1/2021 to 1/25/2022) | 1.00 | 3162.50 | $3,162.50 |

Total $5,570.00
Payment $0.00
Balance Owing $5,570.00

Please make all checks payable to: Computer Forensic Services, LLC

If you have any questions concerning this invoice,
contact us at (952) 924-9920 or billing@compforensics.com.

Thank you for your business!

Page: 1

**From:** Mark Lanterman mlanterman@compforensics.com
**Subject:** Re: Miller's Breach
**Date:** February 1, 2022 at 3:53 PM
**To:** Edward Miller edmillerlaw@gmail.com, Nate Dittmar ndittmar@compforensics.com
**Cc:** Evelyn Donegan edonegan@rkalaw.com, Yimin Chen mindy@ymclaw.com, Michael Cukor mcukor@mcgearycukor.com

Settle down, Ed. The invoice was generated on January 25, 2022.

When can we expect payment, Ed? If *you* don't answer, we will understand your non-answer to be an admission that, in fact, the amounts are properly owed.

Mark Lanterman
Chief Technology Officer
ComputerForensic Services
800 Hennepin Avenue, 5th Floor
Minneapolis, MN 55403
952-924-9920 office
mlanterman@compforensics.com
www.compforensics.com

---

**From:** Edward Miller <edmillerlaw@gmail.com>
**Date:** Tuesday, February 1, 2022 at 2:34 PM
**To:** Mark Lanterman <mlanterman@compforensics.com>, Nate Dittmar <ndittmar@compforensics.com>
**Cc:** Evelyn Donegan <edonegan@rkalaw.com>, Yimin Chen <mindy@ymclaw.com>, Michael Cukor <mcukor@mcgearycukor.com>
**Subject:** Re: Miller's Breach

You didn't answer the question. The question was: "When was the January 25, 2022 invoice generated?"

This is the third time we've asked the question. If you don't answer, we will understand your non-answer to be an admission that, in fact, the invoice was created after January 25th and backdated.

On Tue, Feb 1, 2022 at 1:20 PM Mark Lanterman <mlanterman@compforensics.com> wrote:

> Ed—
>
> In your January 28, 2022 letter to the Court, you take two positions that relate to me and my company:
>
> 1) That CFS and I are/were somehow responsible to enforce your agreement with opposing counsel; and
> 2) You dispute our invoices.
>
> First, you are CFS's client, Ed. You executed our engagement letter, which includes a confidentiality provision. CFS is not a party to the agreement between counsel. Therefore, I am not sure how your

provision. CFS is not a party to the agreement between counsel. Therefore, I am not sure how your point that "CFS called Mr. Miller as many times as Mr. Miller called CFS" has any bearing on this issue. You should have, as a party to the agreement with opposing counsel, refrained from any direct communications and ensured your own compliance with your agreement with opposing counsel. Your attempts to shift your responsibility to CFS is transparent.

Notwithstanding that CFS had no obligation under any agreement between counsel, CFS did, in fact, remind you of your obligations. On October 12, 2021, Nate Dittmar (a CFS employee) initiated a phone call with you and asked if opposing counsel should be present on the line. You answered in the affirmative, but told Mr. Dittmar that he could provide you "a heads up." This indicates that you solicited additional substantive information about CFS's work beyond just billing.

As another example, on December 1, 2021, you contacted CFS and posed a number of substantive questions to CFS, without opposing counsel on the line. At the start of the call you asked one question about billings (why some tasks were billed at a different hourly rate), and then asked the following:

1. What percentage of deleted documents/files are permanently lost? How many relate to ACU?
2. What percentage of permanently deleted documents/files relate are quickbooks files? How many of the permanently deleted quickbooks files relate to ACU?
3. Of what was downloaded to the Thumb Drive(s) were we able to retrieve? How many relate to ACU?

We asked if you would put your questions in an email, to which you responded that "I can't do an email. I had an agreement with my counter parties not to communicate with you without them…I need it verbally over the phone." We did not answer your questions. I think that your position now that you only contacted CFS regarding billing is disingenuous and, based on our records, at best, you simply used our billings as a pretext for a direct, substantive communication. You put us in an awkward situation, Ed.

Second, you now take issue with CFS's billings. I have attached copies of all our invoices along with additional detailed entries. As you know, Ed, your requests were a moving target. At the outset, CFS discovered mass file deletions that occurred immediately before CFS received the device. In an October 12, 2021 phone call between Nate, you, and Mr. Quach discussing the mass deletions (again, not about billing), you acknowledged you had advised Mr. Quach that he could delete files before sending the device to CFS. As it turns out, many of the deleted files were germane to this litigation, including entire QuickBooks files.

In addition to the complexity added by the mass deletions, CFS was asked to prepare and produce additional work product, and to analyze specific sources of information (*e.g.,* QuickBook accounting files). You instructed me to generate a declaration, with less than two days' notice. All of these factors, in the aggregate, impacted our costs. To illustrate this point, CFS was instructed to analyze and produce financials from multiple password-protected QuickBooks files related to ACU. Because CFS was not provided the password(s) for the files, additional work was done to circumvent the passwords. CFS was successful in bypassing QuickBooks' security features and was able to access the financial information, which I briefly discussed in my November 3, 2021 declaration. This work request required CFS to work well past midnight on November 2 into November 3, 2021. Because CFS was required to work after-hours, and because this is clearly an expedited request, CFS billed at its 1.5x priority rate pursuant to its contract with you.

Furthermore, it is frustrating that you cite information about our flat fees for forensic imaging (creating a forensic copy of Quatch's laptop). These fees are between $300 and $750. You know well that that cost was associated with the initial task of copying Quatch's laptop hard drive and was never intended as a cap on project fees, yet you mislead the Court.

Ed—Our relationship has reached its end. Either pay the outstanding invoices or don't. Unless all fees are immediately paid, CFS will cease performing all services on Thursday February 3, and will destroy all property and data in our possession.



800 Hennepin Ave, 5th Floor

Minneapolis, MN 55403

(952) 924-9920 / www.compforensics.com

*Via* Email Only (edmillerlaw@gmail.com)

Engagement Letter

Edward Miller, Esq., Attorney

Ed Miller Law

Sep 16, 2021

Re: CLW VISION INDUSTRIES GROUP, INC. v. ACU PLASMOLD, INC.

Engagement: Computer Forensic Services, LLC ("CFS") agrees to be engaged by Ed Miller Law ("EML") to provide digital forensic analysis and other services, as requested. CFS agrees to provide services upon the return of EML's executed copy of this agreement and any requested retainer deposit. All requests for services that are performed after the offer of this agreement signify acceptance of the entire agreement, regardless if an executed agreement and/or retainer deposit are returned to CFS.

Confidentiality: CFS will maintain the confidentiality of all project information EML entrusts to the custody of CFS. CFS will not disclose any confidential information obtained during the course of providing services for EML to any third party, except as may be required by law or court order. EML will immediately provide CFS with any relevant order or stipulation regarding the handling of any confidential information. Confidentiality will not survive a breach of this agreement by EML.

CFS Services and Pricing

General Rates: CFS charges for the time dedicated to the engagement on an hourly basis. The current hourly rates are set forth as follows: Forensic Analysts, $325 per hour; Mark Lanterman, $425 per hour. The stated rates also apply to work performed outside of CFS' offices, including travel time, and internal peer review of work product.

Preservation Fees: CFS charges a flat-fee for the forensic preservation of digital media/electronic devices. Preservation includes the creation of a proprietary forensically sound bit-stream forensic image, and verification. The flat fee amount is dependent upon the media type and size. A brief

listing of current preservation rates are as follows: for computer/laptop hard drives, $300-$750 per device, and for mobile devices (smartphones, tablets, etc.), $575 per device.

Data Hosting: A monthly data hosting fee is assessed to the engagement. The data hosting fee is calculated based on the volume of data created by or provided to CFS, to include forensic images. The current data hosting rate is $3.45 per GB of data per month. Data hosting charges will accrue immediately upon creation or receipt of project data. Data hosting may be terminated at any time after the start of data hosting invoicing. Termination is only effective if received in writing. All unpaid data hosting charges are due immediately upon termination. EML understands and agrees to pay all data hosting charges.

Testimony: Oral testimony, written reports, affidavits, letters, and other expert witness services are provided at $625 per hour. A minimum reservation charge of 8-hours will be assessed for deposition and testimony preparation, and appearance. A minimum reservation charge will not apply for other expert witness services. CFS requires a 5-day notice of cancellation for performance of any and all requested or reserved expert witness services.

Expedited Rates: In situations where work requests must be expedited, or performed outside of CFS' normal business hours (M-F, 9AM-5PM CST), including holidays and weekends, CFS will charge 1.5x the applicable hourly rate.

Expenses: EML acknowledges CFS may advance reasonable and necessary out-of-pocket expenses required for the completion of the project. EML will pay all such reasonable and necessary out-of-pocket expenses incurred by CFS to complete the project.

General Terms and Conditions

Estimates: EML acknowledges that the nature of the work performed by CFS is complex and time consuming, and that any cost estimate, retainer or quote furnished by CFS is not a cap on the amount EML may be charged for the project.

Invoices: CFS will periodically submit invoices to EML for any and all services performed or costs incurred on the project. CFS reserves the right to withhold all productions until after payment for services is received. CFS invoices are due upon receipt. CFS must be notified in writing of any and all disputes regarding an invoice within 15 days of the date of the disputed invoice. CFS billing records are the default record establishing an invoice. EML acknowledges that if no disputative

writing is received by CFS within the 15-day period then all amounts under an invoice are due and owed to CFS.

Late Payment/Non-payment: Invoices not paid promptly are subject to a late fee of 1.8% of the amount of the invoice per month for each month the invoice remains unpaid. CFS reserves the right to cease work on the project or any other project on which CFS is providing services to EML if an invoice remains unpaid for a period of 30 days. CFS reserves the right to withdraw from this engagement if its invoices remain unpaid for a period of 45 days. CFS reserves the right to declare as abandoned any and all data and devices a customer has placed in our custody for a period greater than 60 days.

Authority to Submit Data and Indemnification: EML acknowledges its authority to submit data, materials, equipment, or information to CFS. CFS will exercise necessary care to secure and protect from physical damage or destruction the data, materials, equipment and information provided by EML. EML agrees to hold harmless and indemnify CFS, its officers, its employees and agents for any and all claims of physical damage or destruction of any and all data, materials, equipment and information provided to CFS by EML except if such claim is due to the gross negligence of CFS.

Conflicts and Arbitration: CFS reserves the right to withdraw from this engagement if there is a material disagreement between CFS and EML relating to CFS's services. Any controversy, claim, or dispute arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation, or validity thereof, or relating otherwise to the firm's representation of Client, including the determination of the scope, jurisdiction or applicability of this agreement to arbitrate, shall be determined through binding arbitration in Minnesota by a sole arbitrator. The prevailing party in any arbitration or litigation will be entitled to recover all attorneys' fees (including if CFS is the prevailing party, the value of the time of all professionals of our firm who perform services in connection with the dispute, computed at their normal billing rates), all experts' fees and expenses and all costs (whether or not these costs would be recoverable under the Minnesota Code of Civil Procedure or other applicable law) that may be incurred in obtaining or collecting any judgment and/or arbitration award, in addition to any other relief to which that party may be entitled. In agreeing to binding arbitration, EML and CFS voluntarily relinquish important constitutional rights to trial by judge or jury, as well as rights to appeal. EML is advised that it has the right to have an independent lawyer of its choice review this arbitration provision, and this entire Agreement, prior to signing this Agreement. EML agrees that, any and all damages sought against CFS are solely limited to any amounts paid to CFS by EML on the particular matter out of which the dispute has arisen.

No Attorney-Client Relationship: During the course of the engagement EML may work with licensed attorneys who are employees of CFS. All material or oral representations that are provided by CFS

are for information purposes only and do not constitute legal advice. EML understands that this agreement does not create an attorney-client relationship, nor provide a substitute for obtaining legal advice from a qualified attorney.

Superseding Agreement: This agreement is the entire engagement agreement between CFS and Ed Miller Law. The parties will abide by the prices, terms and conditions set out in this agreement. This agreement supersedes all other oral and written agreements between the parties regarding this project. This agreement can only be modified in writing.

Signatures

Please acknowledge by signature in the space provided below that the foregoing accurately sets forth the prices, terms and conditions, of our agreement.

This Agreement is duly executed by the duly authorized representatives of the parties as set forth below:

Computer Forensic Services, LLC

*[signature: Mark Lanterman]*

Mark Lanterman, Chief Technology Officer

Date:  09 / 24 / 2021

Ed Miller Law

*[signature: Edward Miller, Esq.]*

Edward Miller, Esq., Attorney

Date:  09 / 24 / 2021

# Signature Certificate

Document Ref.: XQW44-LMHTG-KMF3G-IBUYD

Document signed by:



**Edward Miller, Esq.**

E-mail:
edmillerlaw@gmail.com

Signed via link

IP: 71.190.203.188   Date: 24 Sep 2021 16:00:22 UTC



**Mark Lanterman**

E-mail:
mlanterman@compforensics.com

Signed via link

IP: 63.158.138.178   Date: 24 Sep 2021 17:24:14 UTC



Document completed by all parties on:
24 Sep 2021 17:24:14 UTC
Page 1 of 1



Signed with PandaDoc.com

PandaDoc is a document workflow and certified eSignature solution trusted by 25,000+ companies worldwide.



| Date | User | Work Type | Description | Invoice Status | Entry Type |
|---|---|---|---|---|---|
| 11/29/2021 | Nate Dittmar | Documentation | Documentation<br><br>Continue locating phone calls and communications relating to Plasmold matter,. Download call recordings. Document summaries of phone calls and emails. This will take a coupe of days. | Not Invoiced | NCDS |
| 11/29/2021 | Nate Dittmar | Documentation | Documentation<br><br>Begin locating phone calls and communications relating to Plasmold matter,. Download call recordings. Document summaries of phone calls and emails. This will take a coupe of days. | Not Invoiced | NCDS |
| 11/22/2021 | Nate Dittmar | Document Review | Review documents emailed by Ed Miller<br>Document Review | Invoiced | Std |
| 11/08/2021 | Joseph Lanterman | Communications | Email Correspondence: Confidential CFS Invoice - Vision Industries Group, Inc. v. ACU Plasmold, Inc.<br>Communications | Not Invoiced | NCDS |
| 11/03/2021 | Mark Lanterman | Affidavit Preparation | Declaration Preparation - finalize and edit declaration | Invoiced | Std |
| 11/03/2021 | Nate Dittmar | Communications | Communications<br><br>Various calls with client and colleagues regarding this Vision Industries matter. | Invoiced | Std |
| 11/03/2021 | Sean Lanterman | Document Review | Peer reviewed MTL affidavit. | Invoiced | Std |
| 11/02/2021 | Joseph Lanterman | Indexing/Analysis | Indexing/Analysis - load up the 3 QBW files and generate financial reports. | Invoiced | Std |
| 11/02/2021 | Mark Lanterman | Affidavit Preparation | Declaration Preparation - prepare declaration per Ed's instruction | Invoiced | Std |
| 11/02/2021 | Joseph Lanterman | Decryption | Decryption - bypass admin account credentials. | Invoiced | Std |
| 11/02/2021 | Nate Dittmar | Submittal Preparation | Submittal Preparation<br><br>Finish preparing and uploading submittal. | Invoiced | Std |
| 11/01/2021 | Nate Dittmar | Communications | Call with Ed Miller. Ed wants data produced.<br><br>Nate spoke with Mark and Joe.<br>Communications | Invoiced | Std |
| 11/01/2021 | Nate Dittmar | Submittal Preparation | Submittal Preparation - Locate and export data. Finalize reports for submittal.<br><br>Submittal contains:<br><br>ATTORNEYS EYES ONLY - 210294S01 - Vision Industries v ACU Plasmold<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Responsive User Items<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Chrome Downloads - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Chrome Logins - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Cloud Services - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Edge - Browser History - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Edge Bookmarks - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Edge Downloads - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Google Searches - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Installed Programs - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Jump List (File Access) Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - LNK File (File Access) Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Locally Accessed Files and Folders - Report<br><br>ATTORNEYS EYES ONLY - 1.1 Lenovo T470 - Recycle Bin - Report | Invoiced | Std |
| 10/20/2021 | Nate Dittmar | Communications | Phone Correspondence: Call with Edward Miller, Esq. on Oct 20, 2021<br>Communications | Invoiced | Std |
| 10/19/2021 | Nate Dittmar | Indexing/Analysis | Indexing/Analysis<br><br>Additional notes and spreadsheet prep | Invoiced | Std |
| 10/19/2021 | Nate Dittmar | Communications | Communications<br><br>Phone call with Ed Miller discussing next steps | Invoiced | Std |

| Date | Name | Category | Description | Status | Rate |
|---|---|---|---|---|---|
| 10/15/2021 | Nate Dittmar | Indexing/Analysis | Indexing/Analysis<br><br>Begin data recovery as requested by Ed Miller. | Invoiced | Std |
| 10/14/2021 | Sean Lanterman | Communications | Drafted written assurance email for client for NCD to send. | Invoiced | Std |
| 10/13/2021 | Nate Dittmar | Indexing/Analysis | Continued analysis on device 1.1.<br><br>Several brief conversations with Ed Miller,.<br>Indexing/Analysis | Invoiced | Std |
| 10/13/2021 | Nate Dittmar | Indexing/Analysis | Continued analysis on device 1.1.<br><br>Data recovery and USB/LNK analysis. Document status of USB, File Access, Deletions, Search Hits. Quickbooks. | Invoiced | Std |
| 10/11/2021 | Nate Dittmar | Indexing/Analysis | Run search terms. Work on identifying data copying and deletions.<br>Indexing/Analysis | Invoiced | Std |
| 10/07/2021 | Mark Lanterman | Indexing/Analysis | Analysis | Invoiced | Std |
| 10/05/2021 | Mark Lanterman | Indexing/Analysis | Analysis | Invoiced | Std |
| 10/04/2021 | Nate Dittmar | Indexing/Analysis | Indexing/Analysis<br><br>LNK Analysis, USB, Shellbag, Jumplists, Browser history, cloud artifact searches | Invoiced | Std |
| 10/01/2021 | Mark Lanterman | Indexing/Analysis | Analysis | Invoiced | Std |
| 10/01/2021 | Nate Dittmar | Indexing/Analysis | Indexing/Analysis - Parse and index 1.1 Lenovo | Invoiced | Std |
| 09/30/2021 | Nate Dittmar | Document Review | Document Review. Review and make edits to proposed search protocol. | Invoiced | Std |
| 09/30/2021 | Nate Dittmar | Communications | Two phone calls with Ed Miller<br>Communications | Invoiced | Std |
| 09/30/2021 | Nate Dittmar | Communications | Call with client<br>Communications | Invoiced | Std |
| 09/28/2021 | Christopher Lester | Evidence Return | Evidence Return - Mailed Laptop back to J. Quach. | Invoiced | Std |
| 09/15/2021 | Joseph Lanterman | Drafting | Email Correspondence: RE: Case 2:18-cv-06296-ES-CLW VISION INDUSTRIES GROUP, INC. v. ACU PLASMOLD, INC. | Not Invoiced | NCDS |
| 09/15/2021 | Nate Dittmar | Communications | Communications - Call with Ed Miller | Invoiced | Std |
| 09/15/2021 | Nate Dittmar | Communications | Communications - Call with Ed Miller | Invoiced | Std |
| 09/15/2021 | Nate Dittmar | Communications | Communications - Call with courier company to arrange pickup of three laptops from client for Monday morning at 10:30 AM | Invoiced | Std |
| 09/15/2021 | Nate Dittmar | Communications | Communications - Call with Ed Miller | Invoiced | Std |
| 09/15/2021 | Nate Dittmar | Communications | Communications - Call with Ed Miller | Invoiced | Std |
| 09/15/2021 | Nate Dittmar | Communications | Communications  - Call with Ed Miller | Invoiced | Std |
| 09/15/2021 | Nate Dittmar | Communications | Communications - Call with Ed Miller | Invoiced | Std |
| 01/25/2022 | Joseph Lanterman | Communications | Email Correspondence: Ed Miller Invoices<br>Communications | Not Invoiced | NCDS |
| | TOTAL | | | | |

| Date | User | Description | Invoice Status | Total |
|---|---|---|---|---|
| **09/24/2021** | Nate Dittmar | Imaging - 0GB to 500GB - 1.1 Lenovo T470 SN PF-1SAX2R | Invoiced | $300.00 |
| **01/25/2022** | N/A | Data Hosting (500GB, From 12/1/2021 to 1/25/2022) | Invoiced | $3,162.50 |
| **09/22/2021** | N/A | Shipping - FedEx | Invoiced | $190.00 |
| **09/28/2021** | N/A | Shipping - FedEx | Invoiced | $159.96 |
| **11/01/2021** | N/A | Data Hosting (500 GB) | Invoiced | $1,725.00 |
| **11/02/2021** | N/A | QuickBooks Desktop Subscription | Invoiced | $378.08 |
| **12/01/2021** | N/A | Data Hosting (500 GB) | Invoiced | $1,725.00 |
| | | Total | | $7640.54 |
| | | | | |