# LAW OFFICES OF CHEN & ASSOCIATES, P.C.
**COUNSELORS & ATTORNEYS AT LAW**

<u>Queens Office</u>
39-15 Main Street, Suite 502
Flushing, New York 11354
Tel: (718)886-1858/4858
Fax: (800) 490-0564

<u>Brooklyn Office</u>
6402 8th Avenue, Suite 604
Brooklyn, NY 11220
Tel: (347) 899-4777
Fax: (800) 490-0564
www.ymclaw.com
*Please direct all correspondence to our Queens Office*

\*\* **Yimin Chen**
mindy@ymclaw.com
♦*Edward W. Miller
EdMiller@ymclaw.com
**Beini Zhang**
betty@ymclaw.com
**Binyue Xiao**
*brianna@ymclaw.com

*Admitted in NY
\*\*Admitted in NY&NJ
♦ Of Counsel

February 4, 2022

Hon. Cathy L. Waldor
Martin Luther King Jr. Courthouse
50 Walnut Street
Room 4040, Courtroom 4C
Newark, New Jersey 07101

    RE: Vision Industries Group, Inc. v. ACU Plasmold, Inc.
       Case No.: 2:18-cv-06296-ES-CLW

Dear Judge Waldor:

  Defendant will pay Computer Forensics Services ("CFS") $8,639.33 within two weeks.

  The "evidence" in this case consists of 8,462 files responsive to the 19 search terms selected by Plaintiff's counsel. Both Plaintiff's counsel and Defendant's counsel have possession of those files (as zip files). Those 8,462 files do not have to be stored by CFS.

  CFS wants to charge Defendant for keeping (storing) the rest of Quach's computer, consisting of non-ACU files. That information is irrelevant to this case and Defendant is therefore unwilling to pay for its storage. That data (the *image* of John Quash's computer) can anyway be stored at virtually no cost to CFS. What CFS is doing is demanding an exorbitant amount of money for a worthless service.

  Thus, Defendant will pay the November 10th invoice, but will not pay the lions' share of the January 25th invoice ($4,887.50 of $5,570.00) for storage (which has been addressed above). The rest is for "communications" and "document review." That part Defendant will pay. Furthermore, Defendant will not pay any invoices for work after Mr. Lanterman's sending an email to all counsels with the subjected marked as, "Lanterman Withdrawal."

  Mr. Lanterman explains, in his latest communication, that he did not overbill Defendant by $20,000.00 (the approximate amount that the billings exceeded the amount authorized). Instead, his firm was dealing with an unforeseen emergency – Quach had scrubbed his computer

clean and the data needed to be restored.  Lanterman explains that Mr. Miller was informed of the situation and authorized the work, which took a huge amount of time and was successful.  Lanterman brags about how his firm was able not only restore the deleted QuickBooks data, but "circumvented the passwords,…..was successful in bypassing Quickbooks' security features," and "able to access the financial information.".  Dkt. No 166.

   As for Mr. Lanterman's recent claim that Mr. Miller said he had instructed Mr. Quash to destroy company records – how much sense does it make for a person who authorized the destruction of records, to then authorize the payment of $20,000 to have them restored?

   Mr. Lanterman's involvement in this case started with an email from Mr. Lanterman saying that Mr. Miller had, "contacted CFS no fewer than 17 times without opposing counsel's participation or knowledge." Dkt. No. 153.  Mr. Miller responded with a detailed report of the phone calls showing that most of the phone calls were initiated by CFS.  Mr. Lanterman responded with a single sentence email: "Stop wasting my time."

   Mr. Lanterman's involvement in this case continued when he participated in a January 25, 2022 conference with the Judge during which he informed the Court that, <u>in response to CFS's protestations that they shouldn't be talking to Mr. Miller without Plaintiff's counsel present on the phone</u>, Mr. Miller responded, "f' them."  In fact, Mr. Miller said 'f' them,' but it was in response to a question from Nate Ditmar of CFS concerning whether or not CFS should comply with an order from Plaintiff's attorneys for CFS to issue an affidavit addressing their search words.  This, along with a potpourri of other non-stop misrepresentation may be a basis for a lawsuit against Mr. Lanterman and his company.

   Now Mr. Lanterman has come with a new set of misrepresentations, but the important thing is that Mr. Lanterman has once again confirmed that his firm restored virtually all of the deleted material, and (this time) provided details as how it did so.

              Very Truly Yours,

               /s/ Edward W. Miller
               Edward W. Miller, Esq.

To: all counsels on record