

THE LAW OFFICE OF
**AVRAM E. FRISCH LLC**

**New Jersey Office**
1 University Plaza
Suite 119
Hackensack, NJ 07601

**New York Office**
999 Central Avenue
Suite 100-D
Woodmere, New York 11598

Avram E. Frisch Esq. – Admitted in NY and NJ.  Mail to NJ address.

Hon. Cathy L. Waldor
Martin Luther King Jr. Courthouse
50 Walnut Street Room 4040, Courtroom 4C
Newark, New Jersey 07101

        RE:    **Vision Industries Group, Inc. v. ACU Plasmold, Inc.**
                  **Case No.: 2:18-cv-06296-ES-CLW**

Dear Judge Waldor:

      I represent Defendant ACU Plasmold, Inc. ("ACU") in this case.  This letter is written in order to request leave to file a motion for summary judgment.

      The events leading to this case started in early October 2015 when Luke Liang (CEO and owner of Vision Industries Group, Inc. – "Vision") initiated the first contact between Alvin Zhuo (the Chief Executive Officer and owner of ACU) and himself by telephoning Alvin Zhuo.  By the end of the month (October 28, 2015) Luke Liang sent Alvin Zhuo a draft exclusive distribution contract which he claimed to have "modified myself from a mostly boilerplate format."

      Under the proposed agreement ACU would limit its sales in the United States to Vision, and ACU would be bound to sell its products to Vision at a price "no greater than the best price supplier's (ACU) factory provides its largest customer." (Exclusive Distribution Agreement – the "Agreement," Section 5.1).  The Agreement created no obligations on Vision.  There was no minimum monthly or annual sales imposed upon Vision under the Agreement.

      After entering into the Agreement on November 3, 2015, two years went by with no substantial orders from Vision.  During the over two years life of the Agreement prior to January 3, 2018, Vision's total orders amounted to $6,794.66.

      Between June 26, 2017 and January 3, 2018 there were no orders at all.

      Then, on January 3, 2018 Vision placed a tiny order for approximately $1,089.55 worth of awning operators and limit devices (the order failed to set forth a price, which was a required item on the order form).  On January 19, 2018 Vision placed another small order (this time for hinges) totaling approximately $3,510 (Vision put down an old price lower than the current price).  On January 19, 2018, ACU's factory in China refused to fill the two small orders explaining that it did not have any hinges in stock, and that it could not profitably fulfill such tiny orders.  ACU's e-mail concluded with a request that Vision, "Please contact our company headquarters (ACU in Canada) for all your new orders."

 

After the January 19th email from ACU's factory in China to Vision, on February 7, 2018 Luke Liang sent an email to Alvin Zhuo, captioned "**re: Pending Lawsuit**."  On February 14, 2018 Alvin Zhuo emailed Luke Liang:

> *Hi Luke,*
>
> *We didn't refuse your orders.  But what I asked are:*
>
> 1) *The price need(s) to be the price that we offered in year 2018. We have offered new price list long time ago but we have never got feed-back.*
>
> 2) *Our deal is of selling ACU's casement line of products, not just the isolated item like the hinges your side ordered.*
>
> *Thanks.*
> *Best regards,*
>
> *Alvin Zhuo*

To this, Mr. Liang responded curtly, "See you in court," and filed the present lawsuit alleging, in large part, that "Defendant refused to sell the products to plaintiff." [Doc No. 1, Complaint, pg. 5, ¶ 19].  However, there is no evidence that Plaintiff ACU, "refused to sell the products to plaintiff [Vision]," and, there is un-contradicted evidence that ACU did not refuse to sell the products to Vision. [Doc No. 1, Complaint pg. 5, ¶ 19].

The last words of ACU's China factory's January 19, 2018 email to plaintiff was a request for Vision to, "Please contact our company headquarters (ACU in Canada) for **all your new orders**."  Vision own internal documents contain a handwritten note that, "the order is too small," and, "product not in stock."  Alvin Zhuo explicitly emphasized in his February 14, 2018 response to Luke Liang's February 7, 2018 email, that ACU was not refusing orders.  This (refusing all orders) simply never happened.

In its complaint Vision sets forth two additional factual allegations (besides the alleged refusal to provide products) supporting its action for breach of the Agreement against ACU:

(1) "Defendant increased the prices of some products without notice.

(2) Upon placing the initial orders for product with the defendant, there was no satisfactory response from defendant as to when the plaintiff would provide the products."

Doc No. 1, Complaint, pg. 5, ¶¶ 14, 20.

Plaintiff complains that, "Defendant increased the prices of some products without notice." But the Agreement did not prohibit ACU from increasing prices or require notice of price

increases, so long as ACU gave Vision its best price.  Plaintiff does not allege that Defendant ACU breached its "best price" obligations.

Anyway, there is no evidence that Defendant ACU ever increased prices without notice. Defendant ACU gave notice to Vision of the 2018 price increases by sending Vision the new 2018 price list on December 22, 2017.[1]

There is also no evidence of an, "[un]satisfactory response from defendant [ACU] as to when the [defendant] would provide the products."  This simply never happened and there is no record of it having happened.

It is upon this basis that Defendant ACU will move this Court to grant summary judgement in the event that Defendant is granted leave to file a motion for summary judgement.

Very Truly Yours,

/s/ Avram E. Frisch, Esq.
Avram E. Frisch, Esq.
1 University Plaza, Suite 119
Hackensack, NJ 07601
(201) 289-5352
Avram E. Frisch, Esq.
Attorney ID: 025652006
*Attorneys for Defendant ACU*

---

[1]  In his February 7, 2018 e-mail, Vision's owner, Luke Liang, complained of a "HUGE" increase in prices in 2018.  Rather than a "HUGE" increase in prices in 2018, the price for a complete set of casement parts increased only 1.71% over the original price at the time the Agreement was executed in 2016.  Most of the 48 items had no increase of price or decreased in price compared with the original price at the time the Agreement was entered into in 2016.