RUBIN, KAPLAN & ASSOCIATES

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

200 CENTENNIAL AVENUE

SUITE 110

PISCATAWAY, NJ 08854-3950

———

(732) 463-7511

FAX: (732) 463-7648

E-MAIL: attys@rkalaw.com

WEBSITE: www.rkalaw.com

September 1, 2023

Via E-filing
Hon. Cathy L. Waldor
Martin Luther King Jr. Courthouse
50 Walnut Street
Room 4040, Courtroom 4C
Newark, New Jersey 07101

Re:   Vision Industries v. ACU Plasmold
       Case No.:  2:18-cv-06296-ES-CLW

Dear Judge Waldor:

Kindly accept this as a response to Your Honor's text order of August 30, 2023 regarding the continued retention of the CFS data held by Mr. Lanterman's company.  Plaintiff's position is that the continued retention of the CFS data is necessary to the proper administration and future trial of this case.  Per Your Honor's order, I forwarded the email containing Your Honor's text order to Mr. Lanterman.

The issue of the amount of damages as to the breach of the exclusivity clause of the contract between Plaintiff and Defendant involves proofs from the computer of Mr. Quach. As the Court may recall, there were several issues regarding Mr. Quach's communications with ACU Plasmold in Canada as to sales/profits in the U.S.  In connection with that investigation into the quantum of sales/profits, there were litigation improprieties by Defendant, which culminated in Plaintiff filing a motion for sanctions (pending).   The imaging of the Quach computer was directly related to both issues and may be needed by Plaintiff at trial for those purposes.   For the Court's ease of reference, we submit the redacted copy of Mr. Cukor's letter of November 22, 2021 which was filed with the Court, which discusses these issues.

As a reminder, the information that Lanterman currently retains is the image of the Quach hard drive that showed extensive financial information hidden by Quach and clear evidence that Quach attempted to use software to permanently erase the information before producing his hard drive for imaging.  It was ACU that created the need for Mr. Lanterman's assistance when it directed its employee to do such conduct.  The information maintained by Lanterman is critical to the case and the pending motions.  See Attached Letter DKT 147.

If ACU does not want Lanterman to preserve the information, ACU can direct Lanterman to send Vision a copy of all the information he is currently maintaining so

2

long as ACU agrees that it will not challenge the admission of any such information at

trial based on any objections, including but not limited to, authenticity, best evidence,

chain of custody or related grounds.


Respectfully,

*Evelyn Donegan*

Evelyn A. Donegan, Esq.

Michael Cukor, Esq.


EAD/tmb
Enc.

Michael Cukor

 **McGEARY CUKOR**
INTELLECTUAL PROPERTY LAW

**McGeary Cukor LLC**
7 Dumont Place
Morristown, New Jersey 07960
Direct: (973) 339-7367 Fax: (973) 200-4845
mcukor@mcgearycukor.com

November 22, 2021

Hon. Cathy L. Waldor
Martin Luther King Jr. Courthouse
50 Walnut Street
Room 4040, Courtroom 4C
Newark, New Jersey 07101

RE:      **Vision Industries Group, Inc. v. ACU Plasmold, Inc.**
         **Case No.:  2:18-cv-06296-ES-CLW**
         ▟▚▞▚▞▚▞▚▞▚▞▚▞▚▞▚▞▚▞▙

Dear Judge Waldor:

We represent Plaintiff Vision Industries Group, Inc. ("Vision") in the above captioned
matter and write in response to ACU Plasmold, Inc.'s ("ACU") Brief in Opposition to
Vision's Motion for Sanctions (Dkt. 144) and pursuant to your October 4, 2021 Order
regarding the imaging of Quach's computer. Dkt. 138.  We submit this letter via email to
chambers because it contains confidential AEO information.[1]

As the Court recalls, Mr. Quach testified that he created voluminous sales and financial
information and reports in QuickBooks and that he sent them on a USB drive to Mr.
Zhuo.  The Court will also recall that Vision has been asking for this basic discovery for
almost two years and the Court has Ordered that it be produced multiple times.  The
recently imaged Quach computer shows that Mr. Quach twice loaded data erasure
software on his computer before it was imaged.  The image also shows that more than
250 ACU Sales information files, QuickBooks files, and customer payment files were
loaded onto USB drives in the last two years and many of them subsequently placed in
the Recycle Bin.

ACU's opposition does not address any of these facts.  Instead, ACU again argues that
only sales of "casement" window parts are relevant.  ACU acts as if this were the
discovery dispute brought to the Court for the first time more than a year ago.  See Dkt.
91.  ACU's prior counsel made that argument in November of 2020, and the Court
Ordered the production of all ACU financial information.

As described in more detail below, Vision cannot quantify the total volume or dollar
amount that ACU has hidden through its violation of the Orders.  According to some of
the financial reports, the amount seems low but according to some of the newly

---

[1] A redacted copy without exhibits is filed via ECF.  Vision is also filing a separate response, via ECF,
to ACU's letter explanation of its violation of the Protective Order.  While Ms. Donegan's letter will
address that issue, it should be noted that ACU admits it disclosed Vision's Highly Confidential AEO
customer information to Mr. Zhuo in violation of the Protective Order.

McGeary Cukor LLC

Honorable Cathy L. Waldor
November 22, 2021
Page 2

discovered reports it seems much higher.  Moreover, as discussed in more detail below,
ACU, Mr. Zhuo and Mr. Quach continue to work together to keep Vision from knowing
the full extent of its damages.

**QUACH IMAGING**

On September 20, 2021, counsel for Vision sent counsel for ACU proposed draft search
protocols for the Quach computer.  Exhibit A.  Counsel for ACU accepted the protocol in
its entirety and sent it to the forensic expert retained to complete the imaging and analysis
of the Quach computer.

On October 20, 2021, the parties spoke with the forensic expert.  During that call the
expert made clear that the Quach computer contained the following.

1. QuickBooks.
2. A lot of QuickBooks files with the words ACU or ACU Hardware in the file
   names.
3. Evidence that there were external USB thumb drives used with files with ACU
   filenames.
4. A program called "BitRaser" which is advertised as follows.  "BitRaser - our
   cutting-edge erasure technology - guarantees wiping of sensitive data permanently
   from hard drives, SSDs, desktops, laptops & servers."   See www.bitraser.com.

ACU's Opposition ignores all of the items above, as if that phone call never happened.
Given Vision's pressing of the issue of whether ACU had QuickBooks reports, and Mr.
Quach's deposition testimony and then contradicting declaration regarding the existence
of QuickBooks reports, even if ACU did not look at any of the documents collected from
the Quach hard drive, its counsel participated in that call with the expert and its counsel
absolutely knew the facts above.  ACU repeatedly requested, and was granted, extra time
to respond to the motion for sanctions so that it could review the results of the Quach
imaging.  ACU's Opposition does not address any of the findings from the Quach
imaging.  At a minimum, the numbered issues above should have been addressed.
ACU's failure to mention any of these issues, and its attempt to reargue the "casement"
issue, is an admission that it has no explanation for the now proved QuickBooks reports
and no defense to its failure to produce the compelled information.

On November 2, Mr. Miller unilaterally wrote to the expert and asked for a narrative
report that only addressed three points (and ignored the remainder of the search criteria
the parties previously agreed to).  Exhibit B.  The items that were originally included in
the agreed upon search criteria that were excluded from Mr. Miller's list include the
following:

- Scrubber software that was installed
- The existence of QuickBooks or other financial software program
- Files that have been exported to an external hard drive

McGeary Cukor LLC

Honorable Cathy L. Waldor
November 22, 2021
Page 3

- ACU invoices
- ACU related import records

Immediately after Mr. Miller sent his email, counsel for Vision wrote to the expert stating "all the of the items in the search strategy need to be addressed in the report including but not limited to the items we discussed during our last call." Exhibit B. The expert did not respond.

**LANTERMAN DECLARATION**

On November 3, we received the declaration of Mark Lanterman, the forensic expert. That declaration did not address the bulleted issue above. The Lanterman Declaration did make clear that he produced approximately 8,462 responsive files, simultaneously, to counsel for the parties. He also produced "user activity" reports for the Laptop (e.g., USB data storage device history, listing of files in the recycle bin, etc.).

The Lanterman Declaration also stated that he searched for two files, "2018 annual financial report of ACU Hardware USA, Inc.pdf", and "2019 annual financial report of ACU Hardware USA, Inc.pdf." Both files are attached as exhibits to his declaration. Mr. Lanterman also identified 18 different QuickBooks files but because of "time constraints" he only reviewed three of them.

The 2018 and 2019 financial report PDFs both were created on November 2 but first downloaded to the Quach computer on November 4, 2020. Both of those reports identify ACU Hardware USA as a vendor, with Vendor number 57478. Given that both reports were created before being downloaded onto Quach's computer and given that both reports identify ACU Hardware USA as a vendor, it stands to reason that they are reports from ACU Plasmold (Canada) regarding its vendor ACU Hardware USA and that Mr. Zhuo created them on November 2 and Mr. Quach downloaded them on November 4. As such, these are not the files that Mr. Quach testified to at his deposition that he loaded onto USB drives and sent to Mr. Zhuo. Further, the creation of both the 2018 and 2019 financial reports on the same day in 2020, by someone other than Mr. Quach, suggests the reports are not to be trusted.

Additionally, while Mr. Lanterman only reviewed three of the many QuickBooks files on the Quach computer, one of the reports for ACU Hardware USA for the period "Apr 20, 21" shows *more than* ▨▨▨ *in sales*. Exhibit C. This is significantly more than any of the other reports. It is impossible for Vision to explore these wild inconsistencies because discovery has long closed, expert reports were exchanged, and the missing financial reports Mr. Quach testified he sent to Zhuo were never produced.

**THE QUACH IMAGED DOCUMENTS PRODUCED BY LANTERMAN**

*Quach testified truthfully about financial information on thumb drives*

McGeary Cukor LLC

Honorable Cathy L. Waldor
November 22, 2021
Page 4

ACU's Opposition repeatedly sets up a false dichotomy of whether Mr. Quach or Mr. Zhuo lied under oath. In reality, it is possible that they both did. In fact, it is plausible that they are working together, as they have for more than 14 years, and as they continue to do today.

The Lanterman production shows that Quach appears to have used dozens of USB devices or thumb drives in the last nine months of this year.

In the last two years, he loaded more than 250 ACU financial related files onto thumb drives. Exhibit H.[2] Many of these file names are also found in the Recycle Bin Report from the Lanterman Declaration suggesting that Mr. Quach may have loaded the files onto thumb drives and then deleted them.

The above supports accepting as truth Mr. Quach's original testimony that he prepared financial reports and sent them to Mr. Zhuo on thumb drives and rejecting Mr. Zhuo's after the fact allegation that Mr. Quach was "mentally unstable."

_ACU has been withholding more than the Quach Financials_

One of the more telling zip files produced with the Quach imaging documents is titled "2018acuhardwareusasalesinvoicesbilledfromacucanada.zip". Vision has long suspected that Mr. Zhuo has been able to manipulate sales, price, profits and tax records by controlling the pricing between his three owned entitles, ACU USA Hardware Inc., ACU Plasmold Inc. (Canada) and Jiangmen Plastic & Mold LTD (the factory in China). Apparently, there is a portion of ACU Hardware USA invoices that are billed directly from the Canadian entity. This is completely contrary to the ACU deposition testimony.[3] These invoices would also not be visible in the records of ACU Hardware USA and are further evidence that Mr. Zhuo has consistently manipulated sales information to suit his needs. This is further shown in a version of the Quach Declaration dated October 13, 2020, produced as part of the Quach imaged documents where Mr. Quach had written:

> "The reports are only for sales information. It does not show profits. **Alvin will determine the profits**."

(emphasis added) Exhibit D.

---

[2] Exhibit H is a spreadsheet extracted from the Lanterman production of Quach files used in connection with a removable USB device.

[3] Q      Mr. Quach, you are the person most knowledgeable about ACU's sales to customers in the United States, correct?

A      Yes.

...

Q      Do all sales from ACU Plasmold, Inc. that are to U.S. customers go through you?

A      Yes.

Quach Deposition Transcript Pg 50 Ln. 25 – Pg. 51 Ln.25.

McGeary Cukor LLC

Honorable Cathy L. Waldor
November 22, 2021
Page 5

The final version of the declaration omitted the admission that Mr. Zhuo determines the profits.

However, the Lanterman production of Quach documents contained ACU Hardware USA P&L statements for 2017, 2018, and 2019. One version of each of those documents were created on May 11, 2020, more than a year and a half ago and well before Mr. Quach submitted his December 10, 2020, sworn Declaration correcting his deposition testimony and stating "I do not have QuickBooks reports on sale revenue." Exhibit G.

*Vision still has no record of communications with Mr. Zhuo*

The Lanterman production shows that Mr. Quach did not use a local email program so all of his emails were stored only on the cloud and no record of them exists on the image of his hard drive. Further, the production shows that Mr. Quach used the Telegram and WeChat applications. Vision has also produced extensive communications between Vision and ACU on WeChat. While relevant communications regarding sales have been called for, it is clear that ACU has made no real effort to collect and produce email, WeChat or Telegram communications.

*Someone loaded data erasing software on the Quach computer*

The Lanterman production shows that a program called BitRaser was installed on September 21, 2021. BitRaser is advertised as having one function: "100% Data Erasure Beyond Recovery."[4] This program was installed seven days after the Court ruled that "[b]y September 21, 2021, Defendant shall submit any response as to the alleged disclosure of Attorneys Eyes Only materials [and] Defendant shall bear the cost for the imaging of Mr. Quachs computer, which shall take place by 9/27/21." Dkt. 132 (September 14, 2021).

The production also shows that a program called HDD Control 3 was installed on December 19, 2019. That program was installed fourteen days after the Order stating "Defendants failure to supply and cooperate with discovery is ongoing. … Failure to cooperate with discovery and this Order will result in the striking of defenses. … Defendant will have 14 days from receipt of the deficiency letter to comply and respond on the docket." Dkt. 72 (December 5, 2019).

The website advertising for that HDD Control 3 advertises that one of its features is to "irrevocably delete sensitive data with the integrated File Wiper."[5] Accordingly, while the Lanterman production of the Quach imaged documents shows that ACU has been withholding documents in violation of the Orders, it also shows that data erasure software was loaded almost immediately after ACU was Ordered to produce sales information.

---

[4] https://www.bitraser.com – Last accessed November 17, 2021.
[5] https://www.ashampoo.com/en-us/hdd-control-3– Last accessed November 17, 2021.

McGeary Cukor LLC

Honorable Cathy L. Waldor
November 22, 2021
Page 6

Accordingly, Vision does not know the extent of information that has been "irrevocably deleted."

*ACU Hardware withheld Invoices*

The Lanterman production shows that a significant number of invoices on the Quach computer were not produced during discovery and were not part of Vision's damages calculations. There are hundreds if not thousands of invoice documents in the Lanterman production and Vision could not review each invoice and cross check to see if it has been produced and complete a timely report to the Court. Vision sampled about 100 invoices from 2020 and searched the prior ACU productions for those invoice numbers. From that random sample, the following invoices were found in the Lanterman production of the Quach computer, but never produced by ACU during discovery:

Invoice#

McGeary Cukor LLC

Honorable Cathy L. Waldor
November 22, 2021
Page 7

The list above further demonstrates how ACU has refused to produce basic information in this case. Vision had no way to verify the accuracy or completeness of ACU's invoice production until it received the Lanterman production of the Quach hard drive. The list above shows the invoices produced were a subset of the total ACU invoices. The scope of ACU's sales in violation of the agreement with Vision is still completely unknown given ACU Canada's refusal to provide information and Mr. Quach's installing data erasure software to delete documents without leaving any record of their existence.

*ACU Import Records*

The Lanterman production shows what appears to be hundreds of previously unproduced packing slips and other import records that existed on the Quach computer. Vision has not had the time to review those records but it clear that the import records represent another large amount of information that was compelled, and not produced.

*ACU and its Counsel misrepresent Quach's role in ACU*

Vision has previously brought to the Court's attention the discrepancy between the Quach and Zhuo testimony regarding Quach's ownership of ACU Hardware USA. At one point, Quach claimed he did not own any portion of the company while Zhuo claimed Quach owned 30%. On page 1 of ACU's recent Opposition brief, ACU describes Quach as "John Quach (the sole salesman operating ACU Hardware USA)." Dkt. 144 Pg. 1. The imaged Quach computer shows that Mr. Quach is much more that the sole salesman.

Undisclosed to Vision or the Court, apparently, Mr. Zhuo sold ACU Hardware USA completely to Mr. Quach. The Quach imaged hard drives revealed an agreement between Quach and Zhuo along with recorded documents showing that Quach is now the 100% owner of ACU Hardware USA and that ACU filed an amended business license reflecting the change with the Nevada Secretary of State more than five months ago. Exhibits E and F. This all happened while this motion was pending and less than two months after Mr. Zhuo filed his March 22, 2021 Declaration alleging Mr. Quach is unstable.

The terms of that agreement are mysterious, but further suggest that Zhuo and Quach are working together to hide information. The terms of the sale to Quach include:



McGeary Cukor LLC                                    Honorable Cathy L. Waldor
                                                         November 22, 2021
                                                                  Page 8



Nothing about the agreement makes sense.  If we accept the ACU testimony, Mr. Quach
just purchased a business that makes almost no profit and has huge debt and promised to
pay that debt with a yearly payment of what ACU has claimed is its entire annual profit.
Moreover, ACU's Opposition brief repeatedly alleges that either Quach or Zhuo are
lying.  Zhuo submitted a declaration that Quach was "mentally unstable."  The fact that
Zhuo just entered into an agreement with Quach that ensures that the two will be working
together for another eight years, after the 14 they have already worked together, shows
that ACU does not really believe Quach is a rogue employee.  Mr. Zhuo's decision to
extend Mr. Quach ████████ in credit further demonstrates the closeness of the working
relationship.  ACU' recent representation to the Court that Quach is "the sole salesman
operating ACU Hardware USA" is also certainly a misrepresentation.

The agreement shows that Mr. Zhuo will continue to sell parts from his factory in China
through Mr. Quach.  Mr. Zhuo will continue to control pricing and will continue to
extend large amounts of credit to Mr. Quach.  This agreement shows that the two ACU
employees/owners are not contentious, nor does Mr. Zhuo really believe Mr. Quach is
mentally unstable.  They are instead working together to continue their business.
The agreement also shows that ACU continues to hide information that would never be
discovered if not for the imaging of the Quach computer.

ACU continues to act like it believes it is too clever for this legal process.  Discovery has
long closed and Vision cannot quantify ACU's sales in the U.S. because ACU continues
to play tricks, hide evidence, and ignore Orders.  Vision and the Court could spend
another two years compelling more documents and more computer images and still not
know the truth about ACU.  What is absolutely clear is that ACU has not complied with
this Courts Orders and that its failures and misrepresentations were not innocent
mistakes.  The Court should infer from the presence of erasure software on the imaged
drive that ACU deleted data to avoid producing it as part of the imaged drive.  ACU,
should be sanctioned as per the argument and proposed sanctions in Vision's opening
brief.  Dkt. 104.

                                        Respectfully,

                                        *Michael Cukor*
                                        Michael Cukor

cc:  Counsel of record