Michael Cukor, Esq.
**McGeary Cukor LLC**
150 Morristown Road
Bernardsville, NJ 07924

Evelyn A. Donegan, Esq.
**Rubin, Kaplan and Associates**
20 Centennial Ave
Piscataway, NJ 08854
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VISION INDUSTRIES GROUP, INC., | : |
| Plaintiff, | : |
| v, | : Case No. **2:18-cv-06296-ES-CLW** |
| ACU PLASMOLD, INC., and ABC COMPANIES 1-10, and XYZ CORPORATIONS 1-10, | : |
| Defendants. | : |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS FOR DEFENDANT'S FAILURE TO COMPLY WITH DISCOVERY ORDERS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. II

TABLE OF AUTHORITIES ........................................................................................................ III

1. PRELIMINARY STATEMENT ......................................................................................... 1

2. ACU'S ADMISSIONS ALONE WARRANT SANCTIONS ............................................. 2

   THE QUACH SPOLIATION ................................................................................................ 2

   THE DISCLOSURE OF AEO CUSTOMER LISTS TO ZHOU ................................................. 3

   ACU HAS HARMED VISION ............................................................................................. 4

   QUACH LOADED THOUSANDS OF FINANCIAL REPORTS ONTO USB DRIVES ................. 5

   THE FILENAMES SHOW QUACH WAS TRUTHFUL AND ZHOU WAS NOT ....................... 7

3. THE REQUESTED SANCTIONS ARE APPROPRIATE ................................................. 8

4. CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

Cases

*Brown v. N.J. Dep't of Corr.*, Civil Action No. 15-7708 (ES) (JAD) (D.N.J. Oct. 30, 2019) ........ 9

*Giorgi Glob. Holdings v. Smulski*, Civil Action 17-4416 (E.D. Pa. Sep. 22, 2022) ...................... 9

*Karakozova v. University of Pittsburgh*, 09cv0458 (W.D. Pa. Sep. 24, 2010) ............................... 9

*Printing Mart-Morristown v. Sharp Elecs. Corp.,* 563 A.2d 31, 47-48 (N.J. 1989) ...................... 3

*Ramada Worldwide, Inc. v. VMN Foothills*, LLC, Civil No.: 15-cv-4078 (KSH) (CLW) (D.N.J.
   Mar. 28, 2017) .................................................................................................................. 9

*Shevlin v. Phx. Life Ins. Co.*, Civil Action No. 09-6323 (MLC), at *5 (D.N.J. May 8, 2013) ....... 4

*Tracinda Corp. v. DaimlerChrysler*, 502 F.3d 212, 243 (3d Cir. 2007) ........................................ 5

*Valentine v. Mercedes-Benz Credit Corp.*, 1999 WL 787657, at *4 (S.D.N.Y.1999) ................... 3

1. **PRELIMINARY STATEMENT**

Much of what Vision Industries Group, Inc. ("Vision") demonstrates in its opening brief was admitted by ACU Plasmold Inc. ("ACU") in its Brief in Opposition to Motion for Sanctions ("Opposition").

ACU's Opposition admits:

- ACU's employee, Mr. Quach, attempted to scrub his computer before it was produced in response to this Court's Order compelling its production (Opposition at 13);

- The imaged Quach computer shows at least $100,000 of invoices for sales made in the US [in violation of the Distribution Agreement] that were never produced (Opposition at 13-14);

- ACU's counsel disclosed Vision's Attorney Eyes Only (AEO) customer list to ACU's principal (Opposition at 20);

- ACU violated Orders listed in the chart in Vision's Opening Brief (Opposition at 19); and

- ACU "is currently violating the Court's last discovery Order"[1] (Opposition at 15).

ACU's Opposition does not dispute the following:

- ACU's principal, Zhou, is wanted for his criminal activity in connection with attempting to extort more than $2M from Vision;

- ACU's employee in China (not Quach) was convicted of following Zhou's directions in his plan to extort money from Vision;

- Quach admitted at deposition that he was the sole employee of ACU USA and he was not asked by ACU to collect any financial information before ACU claimed to have complied with this Court's Order compelling production of ACU USA financials; and

- Despite ACU alleging that Quach is "crazy", "mentally unstable" and a "liar", Zhou and Quach are in business together for at least another eight years with Zhou making Quach the owner of ACU USA and extending him a large credit line.

---

[1] After ACU filed its Opposition, it finally produced discovery required by the Order. ACU's non-compliance left Vision only two weeks to review a hard drive full of encrypted data, as opposed to the more than three months it would have had if ACU timely complied with the Order. Dkt. 213.

1

Faced with a chart of violated orders, admitted spoliation, an extortionist principal, and a world-class forensic expert contradicting its assertions[2], ACU argues "no harm, no foul."  In ACU's mistaken view, it can wipe hard drives and flout orders without sanction unless Vision also proves millions of dollars of hidden sales. ACU is wrong on the facts and law. Repeated violations of court Orders alone warrant sanctions, and after being forced to spend years of time and expense pursuing ACU's financial discovery, Vision still does not know the full scope of ACU's sales in violation of the Distribution Agreement.

2. **ACU'S ADMISSIONS ALONE WARRANT SANCTIONS**

Focusing solely on the undisputed actions of ACU, the requested sanctions are appropriate.

*The Quach Spoliation*

ACU admits Quach was ACU's sole employee in the US for more than a decade and Zhou and Quach have another eight years of planned entangled business relationships.  ACU further admits that, while Quach was the sole US employee of ACU, he loaded disk erasure software on his computer immediately before it was imaged, and he deleted data Vision was entitled to receive in discovery.  All of Quach's actions and testimony relate solely to his work as an ACU employee.

ACU's owner, Zhou, is an adjudicated extortionist.  Dkt. 109-2.  Zhou threatened to falsely report Vision for non-existent customs issues if Vision refused to pay him more than $2M.  Zhou forced his employee in China to attempt the extortion and that employee served a year in prison in China. Zhou only evaded the consequence for his role in the crime by remaining in Canada.  As a proven liar, Zhou is not credible.

---

[2] Mr. Lanterman's credentials as explained in his declarations are widely recognized including by ACU.  Opposition at 12.  According to his LinkedIn profile, ACU's new declarant graduated college in 2023. https://www.linkedin.com/in/cole-popkin-3860ab164/

2

ACU's convoluted explanations for why Quach now owns ACU and Zhou extends him enormous credit despite alleging he is "mentally unstable" should be completely rejected. It is far more likely that the admitted spoliation by Quach was directed by Zhou as his employer and owner of the spoliated ACU information–the only one with an interest in withholding ACU sales information from Vision. In any event, ordinary agency principles govern a party's responsibility for spoliation committed by its employees and ACU is responsible for both Quach's conduct and Zhou's conduct, and Vision seeks sanctions from ACU. *See Valentine v. Mercedes-Benz Credit Corp.*, 1999 WL 787657, at *4 (S.D.N.Y.1999); *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 563 A.2d 31, 47-48 (N.J. 1989) (generally, an employer is liable for intentional torts committed by its employees within the scope of their employment).

Further, as discussed below, there is ample proof consistent with Quach's testimony that he sent ACU financial files on thumb drives. The recent Lanterman Memorandum attached as Exhibit 1 shows that Quach, consistent with his testimony, loaded more than 2,000 documents onto removable drives. Exhibit 1, Lanterman Memorandum at 1 ("I have identified approximately 2,000 files accessed/copied from Quach's laptop to USB drives between December 14, 2019 and September 22, 2021, including financial data like QuickBooks files.").[3,4] Quach testified he transferred files and the forensics are consistent with that testimony. Zhou's denials are hollow.

*The disclosure of AEO customer lists to Zhou*

---

[3] ACU attempts to mislead when it states that "[t]here were no transfers of any files to USB drives from December 5, 2016 until December 17, 2019". Opposition at 17. Mr. Lanterman explains that "[i]t is important to note that Quach's laptop was first set up on or about December 7, 2019. Therefore, information relating to the attachment of USB drives, and the copying of files to them is not available from before December 2019." Lanterman Memorandum Exhibit 1 at 2.

[4] This evidence stands in sharp contrast to ACU statement to the Court that "[i]t is not true that the files that were downloaded to USB drives contained, large amounts of financial data", (Opposition at 18).

3

ACU admits it breached the applicable discovery Confidentiality Order by sharing Vision's AEO customer list with Zhuo but argues that it does not really matter because Vision has not yet proved harm. ACU is wrong. It is the breach of the Order that warrants sanctions. *Shevlin v. Phx. Life Ins. Co.*, Civil Action No. 09-6323 (MLC), at *5 (D.N.J. May 8, 2013) ("Whether any harm resulted to Defendants or any improper benefit was gained by Plaintiffs is irrelevant as to the issue of breach [of the Discovery Confidentiality Order].").

Vision does not know if ACU has used or will use its AEO customer information to unfairly compete with Vision. ACU cannot shift the burden to Vision to prove ACU used the list to harm Vision. ACU defeated Vision's complicated and expensive system it employed to disclose all relevant information to the parties without disclosing the names of Vision's customers. ACU's disclosure violated the Confidentiality Order and cost Vision all of the attorney time it spent creating and implementing its code-based system for customer identities when ACU's expert gave the key to the code to Zhuo. Disclosing AEO is sanctionable and the Court should sanction it here in view of ACU's utter lack of remorse.

<u>ACU has harmed Vision</u>

Even if ACU's "no harm, no foul" argument was legally correct (it is not), Vision was harmed. First, ACU admits that prior to the Quach imaging, it failed to disclose invoices totaling at least $100,000 for sales it made in the US.[5]

Second, ACU forced Vision and the Court through years of motions and flouted Orders. If ACU reasonably participated in discovery instead of changing counsel every time it lost a ruling, it would have produced the documents compelled in September 2019. Setting aside

---

[5] ACU admits this but still inexplicably claims that "[a]fter over 8,000 documents responsive to their search words [produced from the imaged Quach computer], Plaintiff has failed to identify a single document that contradicts the total sales numbers in the sales reports which Defendant produced." Opposition at 14.

4

whether the documents have been produced today, Vision's counsel has spent hundreds of hours writing to ACU's counsel, writing to the Court, and moving to compel discovery. The Third Circuit well recognizes the harm and prejudice arising from spoliation, disregard of discovery obligations, and ignoring orders, like ACU repeatedly did here.

In *Tracinda Corp. v. DaimlerChrysler*, 502 F.3d 212, 243 (3d Cir. 2007), the court stated, "The prejudice caused by [defendant's] discovery violation was significant because the effect on [plaintiff's] trial preparation could not be remedied and because the delay imposed substantial costs on [plaintiff] — significantly beyond what the cost of trial preparation would have been had the documents been produced in a timely fashion." The harm ACU inflicted on Vison is worse. ACU's financial production is a shambles. To this day, as discussed below, Vision cannot disentangle the mess of the Quach production or decipher deleted data from produced data. ACU has deliberately and consistently obfuscated and confused its financial production to Vision's prejudice.

<u>Quach Loaded Thousands of Financial Reports onto USB Drives</u>

ACU dedicates much of its Opposition to arguing that "[i]t is not true that the files that were downloaded to USB drives contained, large amounts of financial data..." Opposition at 18. The expert, Lanterman, who imaged Quach's computer, reviewed ACU's Opposition and submitted an updated memorandum for the Court's consideration. In it, Mr. Lanterman shows that Quach put thousands of files, reports, and invoices on USB drives, just as Quach testified he did.[6]

---

[6] Mr. Lanterman further explains that Mr. Popkin, ACU's declarant, did not yet have access to the Quach data from Lanterman at the time Popkin made his declaration. This would explain why documents attached to the Popkin Declaration (alleged to be printed from the Quach imaged files) contain ACU Bates numbers as they were previously produced by ACU's counsel. In any event, Popkin's declaration does not explain how supposedly original data files from Quach's computer bear production numbers presumably affixed by ACU's counsel.

The files identified by Lanterman, that Quach loaded onto USB drives, include ACU QuickBooks files with many files exceeding 30MB. Exhibit 2 (Exhibit to Lanterman Memorandum). These are examples of the financial reports this Court compelled so many times beginning in 2019 that were never produced and that ACU claimed did not exist. See Dkt. 53, 61, 65, 72, and 94.

Quach's testimony:

> Q. Do you ever share QuickBooks reports with Alvin?
> A. Yes, I give report to him.
> …
> Q. And you have QuickBooks reports on sales revenue also from 2015 through today, correct?
> A. Yes."

Dkt 146-1 at 66-67 and 84.

Zhou testimony:

> I have never received USB/flash drive sticks in the mail from John Quach or from anyone else… The only things that John Quach consistently sent me was invoices, bank statements, and canceled check and credit card statements.

Dkt. 108-1 at ¶¶13-14.

The Lanterman Memorandum showed that Quach also loaded QuickBooks files and invoices for another company called Value Wholesaler Inc. onto USB drives. Vision has not examined those QuickBooks files but notes that Value Wholesaler Inc. is a California Corporation with an address at "1830 Flower Ave, Duarte, CA 91010." At that same address is another business called Value Window and Doors. The imaged Quach computer shows invoices and quotes on Value Window and Doors letterhead for window and door parts with the salesperson identified as John Quach--ACU's employee. Since Mr. Quach testifies that he works full time and only for ACU, the files show there may be even more sales under Value

6

Wholesaler, Value Window and Doors, or other companies that were made in violation of the Distribution Agreement and that were never disclosed to Vision or the Court.

The search terms Mr. Lanterman employed were not targeted toward these documents and could easily have not captured many or most of them. Zhou admits that he sometimes controls the billing for ACU USA from another corporation in Canada. The Value Window and Doors documents with Quach's name on them and the Value Window and Doors QuickBooks files suggest that there are other entities Zhou uses to make sales in the US. All of this is consistent with Quach's testimony that he sent Zhou large amounts of financial information that was never produced.

ACU throughout this litigation obfuscated its financials in an attempt to prevent Vision from building its damages case. Just these facts are shocking in modern federal court litigation:

- ACU never asked Quach to search, collect, or produce any ACU documents while discovery was open. Dkt. 109 at 7.
- ACU attempted to wipe a computer's hard drive with an order to image the drive pending (Opposition at 10)
- ACU's principal, Zhou, falsely declared that Quach was mentally unstable when he testified to sending Zhou financial data on USB drives
- ACU's principal attempted an extortion scheme to extract a settlement and $2M for Vision (Dkt. 109-2)
- ACU broke the AEO designation of Vision's customer list, violating the Court's Confidentiality Order (Opposition at 20)

Vision should not bear the cost or the prejudice ACU sought to inflict during this litigation.

*The Filenames Show Quach was Truthful and Zhou was Not*

7

The names of the files Quach loaded onto USB files are listed in the Exhibit to the Lanterman Memorandum. There are literally dozens of quarterly reports titled "financial report of ACU Hardwar USA, Inc.pdf." Vision has reviewed just the list of file names from the Lanterman Memorandum and ACU never produced anything approaching that quantity of financial reports during discovery.[7]

Other documents Quach downloaded to USB drives have titles like "customers payments and sales invoices.pdf", "ACU Hardware sales invoices10282020.pdf", "wire transfer to Vendor ACU Canada12282020.pdf", [QuickBooks Files] "RESTORE (Backup May 04,2020 07 03 PM).QBB", "ACU Hardware USA P & L Statement.xltx", "ACU Hardware checks images.pdf", and hundreds of documents with "invoice" in the title. Mr. Lanterman also makes clear that "there are at least approximately 300 additional files that existed on USB drive, which are not on the Quach laptop. Therefore, there are additional files that exist/existed on USB drives that are unaccounted for." Lanterman Memorandum, Exhibit 1 at 3. This evidence further supports that Quach's deposition testimony was truthful and that Zhou's declaration was not.

3.  **THE REQUESTED SANCTIONS ARE APPROPRIATE**

ACU's conduct approaches the worst of the reported cases on spoliation in this judicial district and around the country. ACU admittedly failed to comply with multiple orders, admitted spoliation, and admitted disclosing Vision's AEO customer list to Zhou. ACU made numerous misrepresentations and attempted to extort 2 million dollars, and Zhou submitted a false declaration claiming Quach never sent Zhou financial information on USB drives. ACU never intended to comply with this Court's Orders. Vision's prejudice has been extreme. This

---

[7] Based on Vision's review of the ACU-produced Bates labeled documents, ACU appears to have produced 11 pages in total of QuickBooks reports after the Quach deposition and before Mr. Lanterman imaged the Quach computer.

commercial dispute could have been resolved years ago if ACU had simply complied with its discovery obligations or at least obeyed the Court's Orders when they were issued.

The sanctions requested by Vision are moderate compared with the possibility of striking ACU's pleadings which has been awarded in situations with less culpable conduct. *Brown v. N.J. Dep't of Corr.*, Civil Action No. 15-7708 (ES) (JAD) (D.N.J. Oct. 30, 2019); *Ramada Worldwide, Inc. v. VMN Foothills*, LLC, Civil No.: 15-cv-4078 (KSH) (CLW) (D.N.J. Mar. 28, 2017); *Karakozova v. University of Pittsburgh*, 09cv0458 (W.D. Pa. Sep. 24, 2010); *Giorgi Glob. Holdings v. Smulski*, Civil Action 17-4416 (E.D. Pa. Sep. 22, 2022).

ACU still has not complied with the discovery Order of 2019 compelling all ACU sales information made to US customers. Damages expert reports and discovery was completed long before Vison received the Quach computer data. ACU's withheld documents, conflicting testimony, and false or misleading declarations warrant the requested sanctions.

4. **CONCLUSION**

For the foregoing reasons, Vision requests an Order for Sanctions as follows:

1. ACU shall be precluded from challenging Vision's damages expert on the basis of the underlying financial information Vision's expert relies on to form opinions;

2. ACU shall be precluded at trial from presenting testimony and/or evidence as to sales or expenses of ACU Hardware USA or ACU Plasmold;

3. ACU Plasmold shall be precluded from introducing documents that were not produced prior to the fact discovery deadline, as evidenced by a proper production number; and

4. ACU Plasmold shall pay all counsel fees and costs of Vision for the discovery of the Quach financials including the motions to compel discovery and sanctions.

Respectfully submitted,

<u>/Michael Cukor/s</u>
Michael Cukor, Esq.
**McGeary Cukor LLC**
150 Morristown Road
Bernardsville, NJ 07924

Evelyn A. Donegan, Esq.
**Rubin, Kaplan and Associates**
20 Centennial Ave
Piscataway, NJ 08854
Attorneys for Plaintiff
