

# MEMORANDUM

**To:**   Michael Cukor (mcukor@mcgearycukor.com)
Edward Miller (edmillerlaw@gmail.com)
Evelyn Donegan (edonegan@rkalaw.com)
Avram Frisch (frischa@avifrischlaw.com)

**From:** Mark Lanterman
**Subject:** *Vision Industries Group Inc. v. ACU Plasmold, Inc. et al.*, (2:18-cv-06296)
**Date:** January 11, 2024

## I.   Executive Summary

This brief memorandum documents Computer Forensic Services' ("CFS'") work related to the issue of whether John Quach's computer was used to copy financial data to external USB data storage devices ("USB drives"). In summary and consistent with the findings discussed in greater detail in this memorandum, I have identified approximately 2,000 files accessed/copied from Quach's laptop to USB drives between December 14, 2019 and September 22, 2021, including financial data like QuickBooks files.

CFS reserves the right to supplement this memorandum if additional information is provided, or if additional details are requested.

## II.   Materials considered

As noted in my initial declaration, on September 23, 2021, CFS received a Lenovo ThinkPad T470, bearing serial number PF-1SAX2R ("Quach's laptop"). Upon receipt, CFS created a forensic copy of the laptop. (*See* Lanterman Decl. ¶¶ 10-11). It is important to note that Quach's laptop was first set up in December of 2019. (*See infra.* § IV).

In addition to Quach's laptop, I have also received and considered the following documents to prepare this memorandum:

a. Plaintiffs' Brief In Support of Motion For Sanction for Defendant's Failure to Comply with Discovery Orders, (Dkt. 224-1);

b. A November 22, 2021 letter from Attorney Cukor to the Court. (Dkt. 147, referencing Exhibit H, a listing of "250 ACU financial related files [stored on] thumb drives");

c. Digital Forensics Report of Cole Popkin, dated January 2, 2024.

### III.     Relevant history

To contextualize my work related to whether the Quach laptop was used to copy and access files stored on USB drives, it is important to understand the history relevant to this specific issue.

In November 2021, my office supplied to counsel a series of outputs that documented different categories of information obtained from Quach's laptop. (*Id.* ¶ 14). Among those outputs were spreadsheets listing files that had been accessed from Quach's laptop, including those that were stored on USB drives. I understand that after I provided this output to counsel for the parties, Attorney Cukor identified specific entries from those spreadsheets and generated a listing of approximately 250 files and folders that existed on USB drives. (*See* Dkt. 147, Ltr. from Cukor to Court, Nov. 22, 2021, "In the last two years, [Quach] loaded more than 250 ACU financial related files onto thumb drives," citing Exhibit H.)

Because the document referred to as Exhibit H of Attorney Cukor's November 22, 2021 letter to the Court lists approximately 250 files, and Mr. Popkin's report indicates that he reviewed a "list of 250 files that were downloaded to a USB drive" I conclude that Mr. Popkin has considered this listing (as generated by Attorney Cukor). (*See* Popkin Rep. ¶ 5).[1] Because Mr. Popkin's review was limited to the files listed in Exhibit H, he has not considered the full scope of available information to determine the extent of files that were transferred to USB drives, as observable on the Quach laptop.

### IV.     Approximately 2,000 potentially relevant files were accessed from/copied to USB drives between December 2019 and September 2021.

It is important to note that Quach's laptop was first set up on or about December 7, 2019. Therefore, information relating to the attachment of USB drives, and the copying of files to them is not available from before December 2019.

I analyzed the laptop for activity consistent with the access of files from sources extrinsic to the laptop (*e.g.,* USB data storage devices). The Windows operating system, generally, does not keep a record or specific log of all files stored on an external USB data storage device when the device is simply connected to a computer. However, because Windows records information related to 1) the attachment of external USB data storage devices, and 2) files and folders that are affirmatively accessed or "double clicked," it is often possible to establish the names of files that exist on a USB data storage device, even where the specific USB device is not available for analysis, as here.

---

[1] I note that my office shipped the forensic copy of the Quach laptop to Mr. Popkin on January 2, 2024. Moreover, during a January 5, 2024 conference call Attorney Miller instructed Mr. Popkin not to answer my question about what document, specifically, Mr. Popkin reviewed to formulate his opinions.

2

 I have inventoried files and folders that were affirmatively accessed from USB drives attached to Quach's laptop. Because the USB drives that were attached to Quach's laptop are not available for analysis, I identified files and folders with the same names on the Quach laptop. Attached as Exhibit 1 is a spreadsheet listing such files, including those stored within folders. (*Contrast with* Popkin Rep. ¶ 8, "Some of the [250] 'files' were really folders."). I did not include files that were obviously personal in nature (*e.g.,* family photos). Moreover, this listing is limited to files and folders for which 1) there is evidence of having been accessed from USB drives, and 2) exist on the Quach laptop. To the extent that a file or folder was accessed from a USB drive, and there is no corresponding file or folder on the Quach laptop, it is not included in Exhibit 1. Specifically, there are at least approximately 300 additional files that existed on USB drive, which are not on the Quach laptop. Therefore, there are additional files that exist/existed on USB drives that are unaccounted for.

 As observable in Exhibit 1 of this memorandum, there were approximately 2,000 files copied to USB drives, including QuickBooks-related files, to external, portable media.

---

 This brief memorandum is intended to provide a summary of the results of the analysis. Please do not hesitate to reach me should you have any questions. I am happy to provide any additional details or clarification.

       Respectfully submitted,

       /s/Mark Lanterman
       Chief Technology Officer
       Computer Forensic Services
       mlanterman@compforensics.com
       (952) 924-9920

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VISION INDUSTRIES GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACU PLASMOLD, INC., ABC COMPANIES 1-10 and XYZ CORPORATIONS 1-10,<br><br>Defendants. | Case No. 2:18-cv-06296<br><br>DECLARATION OF MARK LANTERMAN |

I, Mark Lanterman, being first duly sworn on my oath, do depose and state that:

1. My name is Mark Lanterman. I am the Chief Technology Officer of Computer Forensic Services ("CFS") located in Minneapolis, Minnesota.

2. On January 11, 2024, I submitted a memorandum to counsel for the parties by email (Michael Cukor, Ed Miller, Evelyn Donegan, and Avram Frisch). My memorandum concerned my analysis of certain information from John Quach's computer.

3. To the best of my knowledge, all of the statements in my January 11, 2024 Memorandum are true and correct.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Executed on: January 15, 2024

_____
Mark Lanterman

1