UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VISION INDUSTRIES GROUP, INC.,** *Plaintiff*, v. **ACU PLASMOLD, INC.**, *et al.*, *Defendants*. | Civil Action No.: 2:18-cv-06296-JKS-CLW OPINION |

**CATHY L. WALDOR, U.S.M.J.**

I.  **Introduction**

This matter is before the Court on the motion of plaintiff Vision Industries Group, Inc. ("Vision") seeking Rule 37 sanctions against defendant ACU Plasmold, Inc. ("ACU"). ECF No. 224. The motion is fully briefed and has been referred to the undersigned by the Honorable Esther Salas.[1] The Court has carefully considered the parties' submissions and conducted oral argument on August 14, 2024. For the reasons stated below, Vision's motion is **GRANTED IN PART and DENIED IN PART.**

II. **Background**

As stated in Vision's 2018 complaint, "[t]his is a breach of contract action by [Vision] for breach of a distributorship agreement and breach of the covenant of good faith and fair dealing with [ACU]." ECF No. 1 at ¶ 1. ACU manufactures, and Vision sells, windows and window-related products. *Id.* at ¶¶ 10-11. Vision alleges that after undertaking significant preparations to sell ACU's products pursuant to the parties' distributorship agreement, ACU breached the

---

[1] This case has since been reassigned to the Honorable Jamel K. Semper.

agreement by refusing to sell its products to Vision and increasing certain prices without notice. *See id.* at ¶¶ 9, 17-20.

The allegations present about as straightforward a breach of contract action as one could imagine: alleged duty, breach, and damages between two parties. It is therefore surprising that this case is still active over six years after the filing of the complaint. As will be discussed, this is the case primarily because ACU has repeatedly sought to obstruct the judicial process and delay adjudication on the merits for as long as possible by refusing to produce discovery as required under the federal rules and ordered by the Court.

This course of conduct plainly warrants an award of sanctions in Vision's favor. Vision has requested an order precluding ACU from (i) challenging Vision's damages expert on the basis of the underlying financial information relied upon by Vision's expert; (ii) presenting testimony and/or evidence as to ACU's (or ACU's affiliate's) sales or expenses; and (iii) introducing documents not produced by the fact discovery deadline. Vision also seeks to recover attorney's fees and costs.

### III.  Legal Standard

Under Rule 37,

> [i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i)   directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv)  staying further proceedings until the order is obeyed;

2

> (v)    dismissing the action or proceeding in whole or in part;
> (vi)   rendering a default judgment against the disobedient party; or
> (vii)  treating as contempt of court the failure to obey any order . . . .
>
> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2). "Federal Rule of Civil Procedure 16(f) similarly authorizes the imposition of sanctions for a . . . pretrial order." *Days Inn Worldwide, Inc. v. Karishma Aashvi, Inc.*, 2023 U.S. Dist. LEXIS 139501, at *7 (D.N.J. June 30, 2023).

Additionally,

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the Orders listed in Rule 37(b)(2)(A)(i)—(vi).

FED. R. CIV. P. 37(c)(1).

"In addition, it is firmly established that the power to punish for contempts is inherent in all courts," a mechanism geared toward addressing "disobedience to the orders of the Judiciary." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991) (citations and quotation marks omitted); *see also id.* at 45-46 ("[A] court may assess attorney's fees as a

3

sanction for the willful disobedience of a court order or where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citations and quotation marks omitted).[2]

"Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976)), *superseded by statute on other grounds as stated in Lewis v. Smith*, 480 F. App'x 696 (3d Cir. 2012). Similar considerations animate the imposition of sanctions under the Court's inherent powers. *See, e.g.*, *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 111 (3d Cir. 1999) ("A court choosing among [inherent power] sanctions must 'ensure that the sanction is tailored to address the harm identified.'") (quoting *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1995)).

## IV. Discussion

### a. Background

#### 1. Introduction

Before proceeding to the facts relevant to this matter, an introductory point is in order. In their briefing, the parties offer vastly different versions of what has transpired throughout the life of this case. The briefing is replete with instances of he said-she said, perhaps the best illustration of which is ACU accusing Vision no less than a half dozen times of putting words in ACU's (or

---

[2] Vision's motion discusses the factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984). However, "[a] *Poulis* analysis is generally conducted 'when a district court imposes sanctions that are tantamount to default judgment.'" *Salins v. Emr Tech. Sols., Inc.*, 2023 U.S. Dist. LEXIS 201085, at *7 (D.N.J. Nov. 8, 2023) (quoting *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013)). As Vision has not sought, and the Court does not award, any such sanction here, *Poulis* is not particularly relevant. Notwithstanding, the Court briefly addresses these factors below. *See* footnote 11, *infra*.

4

others') mouth. Given this confounding record — as well as the fact that neither party has submitted a sworn attorney declaration attesting to the facts at issue — the Court will decline to parse every instance of the parties' disagreement over the facts. In addition to the parties' divergence over the facts, the record here speaks for itself — indeed, the case docket in this two-party, two-count breach of contract case runs over 250 entries, many if not most of which concern ACU's failures to comply with its discovery obligations — and provides more than ample ground to address Vision's motion without delving into the minutiae of five years' worth of discovery disputes. With this said, the Court proceeds to the relevant chronology.

### 2. ACU's Failures to Comply with Discovery Obligations and Court Orders

This case's first discovery dispute arose in mid-2019, when ACU failed to produce sales records of its U.S. affiliate, ACU Hardware U.S.A. ("ACU Hardware"), forcing Vision to move to compel this information. The Court granted the motion in its entirety. *See* ECF No. 41, 53. Despite being ordered to produce these materials, ACU continued to refuse to do so. The Court entered another order directing ACU to, *inter alia*, "produce [ACU Hardware employee] John Quach for [a] deposition [and] produce all documents requested in Plaintiff's Motion to Compel, including all sales records to all customers in the U.S. by November 11, 2019." ECF No. 61.[3]

---

[3] A brief aside is in order here to discuss John Quach. Mr. Quach is ACU Hardware's sole employee, as well as its salesman, bookkeeper, and liaison with the company's China-based factory. He testified that he "prepared annual reports and quarterly reports about sales and profitability that [he] sent to" ACU's principal Alvin Zhou on USB drives, as they were too large to send by email. *See* ECF No. 104-2. These sales and profitability reports are referred to as the "Quach Financials." As summarized by Vision, Quach further testified that

> he regularly reports detailed sales information to ACU's principal, Alvin Zhou, and that he can and would easily share that information with ACU's counsel. He also admitted that he was the person most knowledgeable about ACU's sales to U.S. customers and that he was never asked to collect any of that information for this case. None of the Quach financial information was collected or produced despite being compelled more than

After hiring new counsel in November 2019, ACU moved to stay production of the sales information; the Court denied the motion. ECF No. 60, 63, 65. ACU advised the Court it would produce the compelled information by December 3, 2019, but failed to do so. ECF No. 68, 70. The Court issued an order stating that "Defendant[']s failure to supply and cooperate with discovery is ongoing. . . . Failure to cooperate with discovery and this Order will result in the striking of defenses. . . . Defendant will have 14 days from receipt of [Vision's] deficiency letter to comply and respond on the docket." ECF No. 72. ACU continued to fail to cooperate, leading the Court to order it to "provide a certification as to the reasons for large redactions in the documents provided".

ACU then retained another attorney, ECF No. 83-84, and filed a motion to compel which the Court denied in its entirety, writing that it "will not entertain tit for tat discovery" and that "Defendant[']s requests are wholly irrelevant." ECF No. 91. The Court also ordered ACU to, once again, provide "sales reports, records and financials from Mr. Quach by November 17, 2020." *Id.* After ACU failed to do so, ECF No. 92, the Court issued another order stating "Defendant shall produce discovery from Mr. Quach before . . . 12/10/20." ECF No. 94.

ACU's pattern of nonfeasance and retention of new counsel persisted, resulting in an April 2021 order stating that "Defendant has defied all Court orders, and now has entered yet another attorney in this case. Defendant now claims that the sole employee and partner of defendant [*i.e.* Mr. Quach] lied in his deposition about the existence of records." ECF No. 113. ACU then requested the undersigned's recusal from the case, a request the Court denied as

---

a year ago. Mr. Quach ended his deposition stating that he could easily forward the information to ACU's counsel.

ECF No. 89.

"meritless." ECF No. 121. After yet more delays, the Court ordered that "Defendant will deliver the Quach materials both the imaging and the report[4] by November 3, 2021, in the event they are not delivered this Court will take appropriate action." ECF No. 143. In September 2023, the Court entered an order stating "Defendant shall arrange for Mr. Lanterman to produce copies of all the imaging he performed in regard to Mr. Quach's computer to both the Plaintiff and the Defendant." ECF No. 213.[5]

### 3. ACU's Misconduct with and as Revealed by Mr. Lanterman

In mid-2021, the parties engaged Mark Lanterman, CTO of Computer Forensic Services ("CFS"), to conduct a forensic analysis of Mr. Quach's computer to address (i) ACU's contention that, contrary to Mr. Quach's sworn testimony, information from Mr. Quach's computer was never loaded onto USB drives and sent to Mr. Zhou; and (ii) what appeared to be mass deletions of data from the computer. Mr. Lanterman has since undertaken such efforts.

Whereas Mr. Lanterman has displayed the highest level of proficiency, professionalism, and integrity throughout the course this litigation, the opposite is true as regards ACU's conduct with Mr. Lanterman. First, despite the parties' understanding that neither side would contact Mr. Lanterman *ex parte*, counsel for ACU repeatedly did just this: according to an email from Mr. Lanterman, counsel "contacted CFS no fewer than 17 times without opposing counsel's participation or knowledge." ECF No. 153 at 2. This, among other things, compelled Mr. Lanterman to cease participating in this matter in December 2021. *See id.* Unsurprisingly, ACU failed to timely pay CFS for its services despite being ordered to do so, ECF No. 132, resulting

---

[4] This imaging and report refer to a forensic computer report discussed immediately below.

[5] It appears that after much haranguing, ACU recently complied with this order.

in yet another sub-dispute to have to be adjudicated by the Court. In connection therewith, Mr. Lanterman has stated ACU "mislead[s] the Court." ECF No. 166 at 2.

Perhaps most egregious, Mr. Lanterman's reports have revealed that ACU has engaged in deleting data from Mr. Quach's computer. Namely, on September 21, 2021, a program called BitRaser was downloaded onto the computer and executed. *See* ECF No. 259-1 at ¶¶ 20-25. BitRaser is advertised as having one function: "100% Data Erasure Beyond Recovery."[6] This was done one day after the Court noted it was "await[ing] the results of the imaging of Mr. Quach[']s computer." ECF No. 135.

While it is true this theoretically could have been done by Mr. Quach of his own accord,[7] Mr. Lanterman's email to ACU's counsel indicates otherwise:

> At the outset, CFS discovered mass file deletions that occurred immediately before CFS received the device. In an October 12, 2021 phone call between [CFS], [ACU's counsel], and Mr. Quach discussing the mass deletions . . . , you acknowledged you had advised Mr. Quach that he could delete files before sending the device to CFS. As it turns out, many of the deleted files were germane to this litigation, including entire QuickBooks files.

ECF No. 166 at 1. Mr. Lanterman later identified from Quach's computer "approximately 2,000 files copied to USB drives, including QuickBooks-related files, to external, portable media", *see*

---

[6] *See* www.bitraser.com (last visited August 20, 2024).

[7] It must be noted that Mr. Quach is an employee of ACU Hardware, not ACU. To this end, ACU is adamant that the deletions discussed herein were made by Mr. Quach of his own accord, and that ACU therefore should not be on the hook for them. *See* ECF No. 261-2. The question of whether there is sufficient agency between ACU and ACU Hardware/Mr. Quach to impute liability upon ACU for Mr. Quach's actions is beyond the scope of the present discussion. *Cf. Graco, Inc. v. PMC Glob., Inc.*, 2009 U.S. Dist. LEXIS 26845, at *41 (D.N.J. Mar. 31, 2009) ("Whether there are sufficient relationships with and control over affiliates for the purposes of proving agency is a question of fact.") (citing *Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 481-82 (D.N.J. 1998) (denying summary judgment court could not decide, as a matter of law, that defendant did not act as a principal to influence or control business practices of its affiliates)). The record does not permit the Court to make such a finding in either direction. Moreover, the matters discussed in this section are secondary to the Court's determination on Vision's motion and are being offered primarily to provide color to ACU's actions.

ECF No. 229-1 at 1; ECF No. 230, which supports Mr. Quach's testimony that he sent to Mr. Zhou USB drives containing financial data. Mr. Lanterman also located financial reports from 2018 and 2019 which listed ACU's annual "total income" for such years to be approximately $250,000, and ten QuickBooks files (and eight backup files) providing similar information. *See* ECF No. 146-2 at ¶¶ 16-17 and Exhibits A, B; ECF No. 259-1 at ¶ 19.

### 4. ACU's Other Violations

ACU's misconduct goes beyond that described above. As one example, it failed to appear for Vision's expert's deposition and to timely produce its own expert for a deposition. ECF No. 117. As another, its counsel permitted information to be sent to Mr. Zhou despite being clearly marked "Attorneys' Eyes Only" in accordance with this matter's governing confidentiality order. *See generally* ECF No. 124 at 3. Seemingly unfamiliar with Attorneys' Eyes Only designations despite his more than three decades' worth of experience, *see* ECF No. 173, counsel explained that he "assumed [the confidentiality order] was like every other protective order I've ever encountered – prohibiting disclosure to non-parties", ECF No. 122 at 1, notwithstanding that "ATTORNEYS EYES ONLY" appeared on every page of the report sent to Mr. Zhou. ACU's counsel has also failed to appear for a settlement conference, ECF No. 172, and the Court has scheduled, held, and had to reschedule two final pretrial conferences because ACU was not prepared to proceed and/or did not prepare its portion of the proposed final pretrial order. *See* ECF No. 218, 220 ("Counsel for defense did not file his final pretrial submissions."), 223.

### b. Analysis

#### 1. Introduction

Considering the above, it is beyond reasonable dispute that a sanctions award is warranted. This is the easy part of the analysis, however. More challenging is forging an

appropriate remedy in view of the principle that sanctions must "address the specific wrongdoing that confronts the court." *Davis, v. Gas Recovery*, LLC, 2022 U.S. Dist. LEXIS 80537, at *4 (D. Del. May 3, 2022) (quoting *Bartos v. Pa.*, 2010 U.S. Dist. LEXIS 43937, 2010 WL 1816674, at *5 (M.D. Pa. May 5, 2010); citing *Klein v. Stahl, GMBH & Co., Maschinefabrik*, 185 F.3d 98 (3d Cir. 1999)). Having determined that ACU's conduct is sanctionable, the Court addresses *seriatim* the propriety of the four discrete forms of penalties requested by Vision.

### 2. <u>Payment of Fees and Costs</u>

Vision seeks to recover "counsel fees and costs of Vision for the discovery of the Quach financials including the motions to compel discovery and sanctions." ECF No. 224-1 at 25. As an initial matter, it is clear that ACU's discovery violations exceed the scope of this request, which — as represented during oral argument — Vision inadvertently limited to discovery pertaining to the Quach Financials. Given ACU's failure to rebut Vision's fee request in any substantive way, coupled with Rule 37's mandatory directive for a court to award fees (noted above and discussed immediately below), the Court will exercise its discretion to consider a wider scope of fees than those expressly contemplated in Vision's motion.

As detailed above, ACU has violated no less than **seven** Court orders directing it to produce information. *See* ECF No. 53, 61, 72, 91, 94, 143, 213. In light of this, a fee award is not only appropriate, it is mandatory: the Rule provides that a Court "***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C) (emphasis added).

ACU makes no attempt to argue that its repeated failures fall within the Rule's safe harbor, and the Court does not find this to be the case. "A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc. v. Sentia Group, Inc.*, 311 Fed. App'x 586, 599 (4th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565-66 n.2, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)); *cf. Rhodes v. Marix Servicing, LLC*, 2013 U.S. Dist. LEXIS 169586, at *9 (D.N.J. Dec. 2, 2013) (substantial justification exists where "reasonable [minds] could genuinely differ on whether a party was bound to comply with a discovery rule") (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* 790 (1970); citing *Pierce*, 487 U.S. at 553 ("substantially justified" means "justified to a degree that could satisfy a reasonable person")). There is simply no way that ACU could have reasonably believed it was not required to comply with multiple Court orders. *Cf. Tate v. Sharpe*, 300 Ark. 126, 129, 777 S.W.2d 215, 216 (1989) ("All court orders are mandatory in the sense that they are to be obeyed . . . .").

This leaves only the questions of the scope of fees and costs to be recovered by Vision, and who should pay such amounts. In approaching the first, the Court "should endeavor to impose a sanction that will restore the parties to the position they would have occupied but for the breach of discovery obligations and deter future misconduct." *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 131-32 (S.D.N.Y. 2007) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 437 (S.D.N.Y. 2004)).

As a brief aside, the Court recently addressed two questions bearing upon this inquiry. "First is whether disputes raised though [dispute] letters and resolved without necessitating motion practice fall within the scope of Rule 37(a). The second is whether, with respect to

11

matters ultimately resolved by motion, [a moving party] can recover the costs incurred in drafting the letters that preceded such applications." *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, 2023 U.S. Dist. LEXIS 106263, at *3 (D.N.J. June 20, 2023). In *AdvanSix*, the Court answered the first question in the negative, *see id.* at *4, a conclusion that, if applied here, would limit the amount Vision can recover, since Vision has filed only one formal motion to compel. However, the ensuing efforts by Vision and the orders issued by the Court are essentially facsimiles of Vision's first motion and its corresponding order, and therefore are compensable. On the second question, the Court concluded in *Advansix* that "where [a party] wrote pre-motion letters that preceded motions to compel, [it] can recover the costs incurred in connection with that correspondence." *Id.* at *7. Once again, the proposition must be modified slightly to fit the present facts: Vision was forced to write letters *after* moving to compel — something necessitated by ACU's protracted discovery failures — not before, as in *AdvanSix*, but the underlying proposition holds true all the same: "if a discovery dispute is resolved short of a motion to compel, nothing relating to it is compensable. If not, everything is fair game." *See id.*

      Accordingly, the Court will order ACU to reimburse Vision for all fees and costs incurred in connection with the events described in Section IV(a)(2) above. Vision may also recover the fees and costs incurred in connection with the instant application as well as its prior sanctions motions that were terminated by the Court. *See* ECF No. 219. Finally, the fact that ACU's misconduct has persisted despite it being represented by several attorneys suggests that it, rather than its counsel, is primarily at fault for such transgressions. The Court therefore will direct ACU to make these payments.

### 3. **Preclusion of Documents Produced After the Fact Discovery Deadline**

Vision requests that ACU be "be precluded from introducing documents that were not produced prior to the fact discovery deadline, as evidenced by a proper production number." The relevant deadline is May 8, 2020. *See* ECF No. 78.

Vision's request implicates Rule 37(c)(1), which, as noted states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e),[8] the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Under the language of the Rule, "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). The Rule does, however, "leave[] the trial court with discretion to determine if a party provides substantial justification for their delay or if the delay is harmless." *Brooks v. Price*, 121 F. App'x 961, 965 (3d Cir. 2005) (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995)).

ACU does not forward an argument that its actions are either substantially justified or harmless, and the record as described above makes clear that they are not. As noted, substantial justification generally exists where a party could reasonably conclude its position is legally and factually sound, which given the facts discussed herein, is decidedly not the case here. As to harmlessness, the relevant factors "include prejudice or surprise to a party against whom evidence is offered, the ability to cure the prejudice, likelihood of disruption to trial, and bad

---

[8] In relevant part, Rule 26(e)(B) refers to "[a] party who has . . . responded to an interrogatory[ or] request for production," which supplementation or correction to such disclosure or response has been "ordered by the court." Given the numerous Court orders referenced above, ACU's responses fall within this umbrella.

13

faith. Prejudice for failure to meet scheduling orders and to respond to discovery may include deprivation of information and costs expended to force compliance with discovery." *D&D Assocs. v. Bd. of Educ. of N. Plainfield*, 2006 U.S. Dist. LEXIS 101611, at *12-13 (D.N.J. June 8, 2006) (citations and quotation marks omitted).

Starting with prejudice, it is plain that Vision has been required to incur costs "to force compliance with discovery." *See id.* Regarding the deprivation of information and the related element of likelihood of disruption to trial, the record is less than clear when it comes to what information remains outstanding. Vision's reply brief provides "ACU still has not complied with the discovery Order of 2019 compelling all ACU sales information made to US customers," but also concedes that "after ACU filed its Opposition, it finally produced discovery required by the [most recent] Order," *i.e.*, imaging from Mr. Quach's computer, ECF No. 229 at 4 n.1, 9, a "production" that Vision has since explained refers to materials provided by Mr. Lanterman, not by ACU. Vision has stated that the printouts it received from Mr. Lanterman are more difficult to review than would be a properly Bates-numbered document production. Vision also represents that certain documents referenced on Mr. Quach's computer remain outstanding, and, more globally, that "we don't know what we don't know."

Given this, it is clear that Vision has been prejudiced due to ACU's failure to provide discovery. Vision is entitled to a comprehensive and unobstructed record of the materials bearing upon this matter. It should not be forced to make its case on an incomplete record, to sift through printouts prepared by third-party vendor, or to wonder what other relevant information may remain in the ether. ACU's actions have forced it to do all these.[9]

---

[9] Even if ACU had ultimately produced what it was required to (which it hasn't), "[t]he ultimate, untimely production of the requested material does not excuse dilatory behavior." *Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378, 404 (D.N.J. 1998) (citing *George V. Hamilton, Inc. v. Everett Co.*, 104 F.R.D. 106, 109-110 (W.D.Pa. 1985)).

The final harmlessness factors referenced above — the ability to cure the prejudice and bad faith — dovetail and weigh in Vision's favor. First, there is no way to cure the past prejudice that Vision has suffered by virtue of having to pursue discovery responses from ACU. The only way to cure any prospective prejudice would be to re-open discovery and give ACU yet another chance to comply. For multiple reasons, though, this is not a viable solution. First, the Court has no confidence that ACU would satisfy its discovery responsibilities now, when it has consistently failed to do so throughout the litigation. Moreover, a holistic view of ACU's actions reveals that ACU has done everything in its power — fail to produce discovery, hire and fire multiple attorneys, possibly[10] delete relevant documents, and repeatedly defy Court orders — to delay resolution of this as long as possible. The Court will not reward these efforts to delay justice by further postponing this matter's conclusion. Finally, ACU's actions illustrate its bad faith since almost the very beginning of this case, over six years ago. As the Court observed in *AdvanSix*, ACU's "litigation tactics are driven by a desire to either hide information from [Vision] and the Court or delay adjudication of this case as long as possible (or, more likely, both)." *Advansix Inc. v. Allianz Glob. Risks United States Ins. Co.*, 2023 U.S. Dist. LEXIS 144062, at *11 (D.N.J. Aug. 17, 2023).[11]

---

[10] The Court says "possibly" only because this deletion was performed by Mr. Quach, who, as noted, ACU argues is not an employee.

[11] As noted, because the Court is not awarding sanctions amounting to a default judgment, it need not conduct a *Poulis* analysis. *See* footnote 2, *supra*. But it bears mention that the discussion herein demonstrates that nearly all of the *Poulis* factors strongly support Vision. *Cf.* 747 F.2d at 868 (listing factors). The only factor not referenced is the meritoriousness of the claim or defense. *See id.* It is settled, however, that "not all *Poulis* factors must weigh in favor of dismissal". *Huertas v. United States Dep't of Educ.*, 408 F. App'x 639, 641 (3d Cir. 2010) (citing *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 696 (3d Cir. 1988)). Thus, to the extent this case invokes a *Poulis* analysis, such analysis would come out in Vision's favor.

For the reasons stated, the Court finds ACU's failure to produce discovery by the fact discovery deadline neither substantially justified nor harmless. It will therefore grant Vision's request to preclude at trial any information not produced by May 8, 2020.

### 4. Preclusion of Challenges to Vision's Damages Expert & Preclusion of Testimony and/or Evidence as to ACU's Sales or Expenses

Vision also requests that ACU be precluded from "challenging Vision's damages expert on the basis of the underlying financial information Vision's expert relies on to form opinions; [and] from presenting testimony and/or evidence as to sales or expenses of ACU Hardware USA or ACU Plasmold". ECF No. 224 at 25. The Court will deny these requests without prejudice and with leave to renew at the time of trial.

The former request is premature. The final pretrial order states, somewhat vaguely, that Vision's damages expert "will testify about her review of documents in this case, her experience, her analysis of the damages issues, and her opinions as to the amount of damages sustained by the Plaintiff as a result of Defendant's breach." ECF No. 246 at 31. This does not provide sufficient information for the Court to discern what constitutes "the underlying financial information Vision's expert relies on to form opinions" to enable it to render an informed decision on this matter. *Cf. Nelson v. Am. Honda Motor Co.*, 2021 U.S. Dist. LEXIS 93503, at *15 (W.D. Pa. May 17, 2021) (deferring "any analysis of challenges to Mrs. Nelson's experts' qualifications and the soundness of their methodology to [the trial judge's] discretion.").

Moreover and as noted, sanctions must "address the specific wrongdoing that confronts the court." *Davis*, *supra*. While, as discussed, the Court agrees with Vision that ACU's actions are sanctionable, Vision fails to specify why the requested sanctions are appropriate consequences to ACU's conduct. The Court therefore denies these requests without prejudice.

16

## V.    <u>Conclusion</u>

For the reasons stated, Vision's motion for sanctions (ECF No. 224) is granted in part and denied in part. An appropriate order follows.

Dated: August 21, 2024

<u>s/ Cathy L. Waldor</u>
Hon. Cathy L. Waldor, U.S.M.J.
