

March 17, 2025

Hon. Cathy L. Waldor
Martin Luther King Jr. Courthouse
50 Walnut Street
Room 4040, Courtroom 4C
Newark, New Jersey 07101

    RE:    Vision Industries Group, Inc. v. ACU Plasmold, Inc.
               Case No.: 2:18-cv-06296-ES-CLW

Dear Judge Waldor:

Please accept this letter pursuant to the Court's order of March 13, 2025, which permitted me to respond to the allegations outlined in Messrs. Warshaw and Miller's joint letter of March 12, 2025 (Dkt. 295). I understand that the parties have received an email from Sean Harrington which concerns a host of issues about me. For your information, Mr. Harrington has sent the same unsolicited email to numerous CFS clients, lawyers, Courts, friends, and others throughout the past weeks.

    A.    **Allegations Made Against Me Relating to This Case**

First, as it relates to this case, CFS uses Vonage for its phone system, which permits the recording of telephone conversations. Consequently, CFS possesses numerous recordings between individuals from my office and Mr. Miller, counsel for ACU Plasmold. Your Honor is welcome to copies of any, or all, of these recordings. Mr. Miller did, in fact, participate in numerous *ex parte* calls with CFS, without Vision's counsel present.

For Your Honor's convenience, I have listened to many of those recordings, and I have summarized them below (and include the relevant cites to ACU Plasmold's March 12, 2025 letter). Among what Messrs. Miller and Warshaw have classified as three (3) "vicious lies" are the following statements that they claim I have made in this case:

- Mr. Miller said that he told Mr. Quach to erase his hard drives. (*See* March 12, 2025 Ltr. at 3). In a recorded call from October 12, 2021, Miller said to a CFS representative: "Okay, well I'm an idiot, because he asked me, 'you know can I delete my personal stuff' and I said 'yeah.'"

- Mr. Miller told CFS to write that all data had been recovered. (*See id.*). In a recording of a January 19, 2021 call Mr. Miller asked Nate Dittmar, one of CFS's analysts, to state that all data John Quach deleted from the computer could be recovered. Dittmar responded that he could not make that statement and emphasized that he needed to be careful with his language to avoid making an inaccurate claim. Miller then said, "The question is, can you retrieve all documents and financial information that John Quach saved on this computer during the past year? And the answer to that question is yes." Mr. Dittmar replied, "I can't answer that question the way you want me to."

- I am accused of stating that Mr. Miller said, "the court can go f* itself." This is false. I have never made this statement. During a recorded call on November 3, 2021, Miller and CFS, Dittmar explained to Miller that Michael Cukor emailed him and asked Miller if he should respond. Miller replied, "With all due respect to Evelyn and Michael, f* them. Don't respond to them." Alternatively, Mr. Miller may be referring to a recorded call from November 1, 2021, in which he said, "the court shall act appropriately. What is [sic] appropriately mean? 'Appropriately' means she will f* us so bad. How will she f* us? She will bar our expert witness from testifying if we do not produce the information."

Again, I am able to provide Your Honor with copies of any and all recordings between people from my office and Mr. Miller. I believe that those recordings will support my statements. I believe it will also provide a basis for Your Honor to evaluate the veracity of Messrs. Miller and Warshaw's contention that their letter "invalidates everything that came out of [my mouth] in this case." (Dkt. 295 at 4).

## B. Sean Harrington & His Additional Allegations Against Me

As noted above, for the past several months, Mr. Harrington has been sending an email to numerous persons that is substantially similar to the one received by the parties in this case. He has sent this email to CFS's clients (even those who work with my employees and not me), my friends, news outlets, prosecutors, law enforcement, Courts and court staff, professional associations, and others across the country.

Thankfully, those who know me know Mr. Harrington's allegations are untrue. But others have taken a different approach, such as here. Indeed, Messrs. Miller and Warshaw have blindly taken Mr. Harrington's allegations and passed them to Your Honor as true. Consequently, I respectfully provide Your Honor with information that persons such as Messrs. Miller and Warshaw failed to note or obtain before leveling their false allegations against me.

### 1. Mr. Harrington is a competitor of CFS

Mr. Harrington is a competitor of CFS (*See* www.adamantdigitalforensics.com). He has been hired as an expert against CFS—twice in the past ten years, by my count. I met him only once, about fifteen years ago, and since that time, the only contact I have had with him has been related to his myriad attacks.

### 2. A federal-court decision describes Mr. Harrington's mental instability

In 2023, my name appeared in a news article related to a high-profile case where CFS provided services. Within days, Mr. Harrington sent me an email directly expressing both his seeming admiration for me, but also his displeasure with certain materials that I covered in a presentation to lawyers. Because I did not remember who he was, I decided to research him after I received the email.

I learned that Mr. Harrington struggles with mental health issues, and so I have done my best to ask him to stop/ignore him. In *Harrington v. Wilson,* 242 Fed. Appx. 514, 515–16 (10th Cir. July 18, 2007), the appellant is "Sean Lee Harrington," who happens to share a birthday with the Sean Harrington who contacted the parties. In district court, the federal judge reviewing his filings described them as "frivolous," "senseless," "harassing," "rambling," and "prolix." His objections alone spanned 2,610 pages plus another sixty pages of exhibits. (*See Harrington v. Wilson, et al.,* 05-cv-01858, Dkt. 73 at 15, *see also* Dkt. 80 at 2). This same individual documented an extensive history of psychiatric diagnoses, including bipolar disorder, narcissistic personality disorder, ADHD, PTSD, and more. (*See id.* at 5, *citing* Dkt. 22-2 at 1).

Sean Lee Harrington was "served with an order to vacate his home because he was allegedly destroying it…[and] was taken to the state mental hospital … where he remained confined for three months..." (*Id.* at 5). Mr. Harrington's ex-wife stated that he "is paranoid and potentially homicidal when he does not take his medication." She also states that Mr. Harrington "is (or was) schizophrenic." (*See* attach. Ex. A ¶ 217, for a "non-exhaustive" list of claims, *see also* Ex. A fn. 7, "Mr. Harrington has had several hospitalizations at West Pines at Lutheran Medical Center and St. Joseph's PsychCenter due to mental illness. He has been diagnosed with Bipolar Disorder, with psychotic features, and Narcissistic Personality Disorder. He has also had a past diagnosis of schizophrenia. Mr. Harrington has been prescribed anti-psychotic and mood stabilizing medications, which he has refused to take. Consequently, he has deteriorated... He has many weapons and has threatened to use them on anyone he perceives as a threat.").

For years, I have feared for my family's safety because of Mr. Harrington's obsession with me. As with his initial contact with me, it appears that Mr. Harrington is triggered when CFS is in the media (which it was approximately 4-5 weeks ago). Accordingly, I am especially observant around my home when CFS or I am in the media.

### 3. Upsala College

Mr. Miller and Mr. Warshaw, echoing Mr. Harrington's allegations, have attempted to discredit me by claiming that I misrepresented my academic credentials from Upsala College. Upsala College went bankrupt in 1995. When I attended Upsala, I was a commuter student who lived with my grandparents in Morristown, New Jersey approximately 30 minutes away from Upsala College. With limited resources, I did not participate in campus social events, nor did I attend graduation ceremonies. In 2023, I confirmed with Felician University—which maintains Upsala College's records—that they could not locate my transcripts or diploma, a situation that they indicated was possibly due to unresolved money-related issues.

I have no reason, motive, or incentive to fabricate academic credentials—much less from a small, defunct, and bankrupt institution. For nearly 25 years, I have transparently and consistently included Upsala College on my CV without objection or question from employers, opposing counsel, or the numerous courts before which I have testified. This is probably because my professional endeavors have never required holding a degree from any academic institution, but here we are.

### 4. Harvard University

Regarding Mr. Harrington's allegations about my Harvard studies, I completed a certificate program in Cybersecurity from April to July 2018. I have provided Your Honor a copy for reference. (*See* attach. Ex. B.)

### 5. The *Afremov* Litigation

The parties have referenced the *Afremov* litigation. CFS and I were involved in that matter. The case involved a billing dispute between CFS and a former client. In their submission to Your Honor, they provide an out-of-context quotation from the first district-court judge. While that quote is accurate, what is notably missing from any representations made to Your Honor is the fact that the case was appealed to the Minnesota Court of Appeals, which reversed and remanded the District Court's decision cited by Messrs. Miller and Warshaw. The Minnesota Court of Appeals relied on my presumably credible testimony in reaching its conclusion: "Lanterman's testimony established that CFS's damages from Afremov's breach of contract included

lost payments for computer run-time and flat-rate fees as well as analyst time…The district court's error was not harmless." (*See* attach. Ex. C *CFS v. Afremov,* A15-0729 at 14).

On remand, the jury entered a verdict in CFS's favor, awarding us every penny we requested. Mr. Afremov appealed, and the jury verdict was affirmed.

### C. Conclusion

I understand that this is a highly unusual situation. While this letter cannot possibly address every allegation and statement made about me in this matter and by Mr. Harrington, I hope it provides Your Honor enough information to weigh my credibility. Thank you for your attention to this matter.

Please do not hesitate to contact me if you require additional information or have any further questions.

Sincerely,

/s/ Mark Lanterman