

ABRAHAM J. ZAGER (1941-1999)
LAWRENCE M. FUCHS (1970-2020)
ANDREW W. KRANTZ
MICHAEL T. WARSHAW*
KEVIN I. ASADI
LYNN E. STAUFENBERG**I
JASON L. WYATT♦

ARTHUR L. CHIANESE, OF COUNSEL
SUSAN L. GOLDRING, OF COUNSEL
ALBERT A. ZAGER, OF COUNSEL

*ADMITTED TO THE NEW YORK BAR
CERTIFIED AS ARBITRATOR AND MEDIATOR, R.1:40

**ADMITTED TO THE PENNSYLVANIA BAR
QUALIFIED FAMILY LAW MEDIATOR
REGISTERED GUARDIAN

♦ LL.M. IN TAXATION

March 20, 2025

Hon. Cathy L. Waldor, U.S.M.J.
Martin Luther King Jr. Courthouse
50 Walnut Street
Room 4040, Courtroom 4C
Newark, New Jersey 07101

**RE:** Vision Industries Group, Inc. v. ACU Plasmold, Inc.
Case No.: 2:18-cv-06296-ES-CLW

Dear Judge Waldor,

As Your Honor knows, we are local and trial counsel for the defendant in this matter. We write to further respond (See: Doc. No. 302) to the submission by Mr. Lanterman (Doc. 301).

Because of the issues with Mr. Lanterman's credibility, the Hennepin County Attorney's Office has served a Brady notice on all defendants in their criminal calendar

Hon. Cathy L. Waldor, U.S.M.J.
March 20, 2025
Page -2-

_____

with respect to the fact that Mr. Lanterman's claimed educational and employment background have not been able to be verified by the Hennepin County Attorney's Office. (Ex. 1)

Mr. Lanterman, on page 4 of his letter, in paragraph 3, states: "For nearly 25 years, I have transparently and consistently included Upsala College on my CV without objection or question from employers, opposing counsel, with the numerous courts before which I have testified."  It is respectfully suggested that such a statement does nothing to prove that his academic qualifications are as he claims them; it merely notes that they have gone unchallenged until now.

We will not address his scurrilous attacks against Mr.  It is noteworthy, however, that Mr. Harrington is exactly the "strawman" that was referenced in our original letter, and he has nothing to do with the current litigation.

Mr. Lanterman's treatment of Defendant's allegation that Mr. Lanterman made vicious lies against Attorney Miller illustrates first rule in the liar's manual: For a lie to stand, it must have an element of truth.

Defendant alleges that Mr. Lanterman lied when he told the court (during a February 25, 2022 phone conference with the Court in which Mr. Lanterman participated) apropos of nothing, that Mr. Miller said the Court could go f' itself.  In his *rebuttal*, Mr. Lanterman makes no mention of the February 25, 2022 phone call.  Instead, he goes through a litany of Mr. Miller's use of the f' word which he has tape recorded.  In fact, Mr. Lanterman's tape recording demonstrates that though Mr. Miller

Hon. Cathy L. Waldor, U.S.M.J.
March 20, 2025
Page -3-

_____

made liberal use of the f' word, he never said the Court could go f' itself.  Truth: Mr. Miller used the f' word (in reference to Plaintiff's attorneys, who had instructed Mr. Lanterman to do extra work for which Defendant was paying).  Lie: Miller never said the Court could go f' itself.

Defendant alleges that Mr. Lanterman lied when he told the court that Mr. Miller told Mr. Quash that "he should erase his hard drive," an allegation picked up by the Plaintiff and became a virtual mantra in their pleadings (no need to explain why a lawyer would instruct a client to erase a hard drive when the computer was being sent to a forensic computer expert in restoring deleted data).  In fact, Mr. Lanterman's tape recording demonstrates that after delay after delay in producing his computer because Mr. Quash didn't want to disclose personal information, "Quash asked me, 'you know can I delete my personal stuff' and I said 'yeah.'"  Truth: Mr. Miller did tell Mr. Quash he could remove some personal data from his computer.  Lie: Mr. Miller did not instruct Mr. Quash to wipe his hard drive clean.

Mr. Lanterman is an expert in lies and coverup…that is why he has gone undetected for so many years.  He has refined the art of working with truth to fuel his falsehoods and then, when called on it, Mr. Lanterman knows exactly how to put his accusers on the defense as he is attempting to do here.  He is a master at evasion – as he is doing with his "recorded phone calls," giving the illusion that what he recorded supports his version of events, when in fact in proves Defendant's.

The bottom line is, it is possible/probable that after all these years, Mr.

Hon. Cathy L. Waldor, U.S.M.J.
March 20, 2025
Page -4-

_____

Lanterman has come to believe his own lies. That confidence and certainty makes him all the more convincing, and dangerous. If he would lie about having a Harvard post-graduate degree, there is no limit to what else he would lie about.

      Finally, in terms of the credibility of Mr. Lanterman, it is noted that he went to the Springfield Township Police Department in a Wyndmoor, Pennsylvania to retrieve his personnel file. Despite his promises to the Chief of Police to return it, inquiry by Mr. Harrington to the Chief of Police has revealed that not only has it not yet been returned, but that as of March 19, today, despite Mr. Lanterman's claims to have placed it in an envelope and mail it on March 1, 2025, his personnel file has not been returned to the Springfield Township Police Department in Montgomery County, in Wyndmoor, Pennsylvania. It is suggested that this "lost in the mail" is yet another indication of the lack of credibility on the part of Mr. Lanterman. (Ex. 2)

      Thank you for your consideration.

Respectfully submitted,


Michael T. Warshaw                                          Edward W. Miller
Local Counsel                                                 Trial Counsel

MTW:kp
cc:    counsel of record via ECF