IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VISION INDUSTRIES GROUP, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v, | : | Case No. **2:18-cv-06296** |
| | : | |
| ACU PLASMOLD, INC., | : | |
| and ABC COMPANIES 1-10, | : | |
| and XYZ CORPORATIONS 1-10, | : | |
| | : | |
| Defendants. | : | |

**PARTIES JOINT STATEMENT OF THE CASE**

**STATEMENT OF THE CASE**

**I. FACTS**

Plaintiff Vision is a New Jersey Corporation that was located in South Plainfield. Vision produces a comprehensive line of window and door operating hardware and has more than 9,000 window and door hardware parts and accessories. Vision does not sell windows, it sells window hardware parts and accessories to window manufacturers. Vision has more than 60 U.S. patents and several pending patent applications. Vision has over 25 years of experience in product development, manufacturing, and quality control. Vision has relationships with hundreds of customers and vendors and is one of the largest vendors of window and door hardware in the United States. Vision's CEO is Luke Liang.

Defendant ACU is a Canadian distributor of window hardware. ACU is owned and controlled by its CEO, Alvin Zhou. ACU and ACU Hardware USA Inc. acquire their hardware products from Jiangmen Plasmold Hardware Company Ltd. located in Jiangmen city in

> **Commented [MC1]:** Vision believes the joint statement of the case should be short and non-argumentative. ACU insisted on this version.
>
> This is a breach of contract case. Vision alleges it placed several orders with ACU that ACU refused to fill. Stipulated Facts 30-35 DE 246.
>
> Vision alleges it suffered damages from ACU's breach in the form of: Expenses paid by Vision to build a market, lost profits and prejudgment interest. DE 246 at 18.

> **Commented [EM2R1]:** Facts can never be "argumentative." Summaries of the facts such as the above, can be misleading. And yes, ACU insisted on a full statement of the facts including Stipulated Facts 30-35 DE 246.

Guandong province of the People's Republic of China.  Alvin Zhuo also owns and controls Jiangmen Plasmold Hardware Company Ltd.

Most windows sold in the United States are sash windows.  A sash window is made of one or more movable panels, or "sashes."  Sash windows open vertically.



Casement windows are built with one large window within the outer frame. Casement windows are hinged and generally open outwards, like a door.



Vision saw an opportunity to expand its market share with Vision's existing customers by entering into casement hardware sales.

By 2006 Vision had developed and applied for a patent on one of the three main parts of a casement window.  In 2006 Vision applied for, and in 2008 was granted, a patent from the United States Patent Office, for casement "adjustable hinges." [U.S. Reg'n No.7,900,400 B2].  An "adjustable hinge" is one of three key parts of a casement window.  On October 11, 2011 Vision was granted a patent from the United States Patent Office for a new improved version of its "Casement Adjustable Hinge." [U.S. Reg'n No.8,032,989 B2].  In order to get a patent for an "improved version" of an already patented product, Vision had to prove that it had come up with a "new, original and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."

> **Commented [MC3]:** Vision does not agree on this paragraph.
>
> **Commented [EM4R3]:** One cannot disagree with a fact.  It is either an accurate fact or it is not accurate.  A patent is a fact.

Recognizing the rise in demand in the U.S. for casement windows, Luke Liang, President and CEO of Vision, began to search for a manufacturer that could supply him with some of the hard to manufacture components of casement window hardware.

Mr. Liang met Alvin Zhou, on October 19, 2015.  Mr. Liang refused to become a customer of ACU unless ACU would enter into an exclusive distribution agreement.  Mr. Liang and Mr. Zhou discussed a distribution agreement in person. Mr. Liang and Mr. Zhou agreed that a successful relationship would result in long term profits for both companies since Vision had long term relationships with many existing customers and ACU could provide casement window parts.

On October 28th Luke Liang sent Alvin Zhuo a draft contract, which Mr. Liang represented he had, "modified myself from a mostly boilerplate format."  Mr. Zhou signed the proposed

contract which Mr. Liang sent him, without any edits or changes.  Under the proposed agreement Vision would become ACU's exclusive distributor in the United States for, "Primarily casement window hardware."  Under the proposed agreement there would be two limitations/obligations placed upon ACU: (1) ACU was required to sell its products to Vision at a price "no greater than the best price supplier's (ACU) factory provides its largest customer;" and, (2) ACU was prohibited from selling its products in the United States, other than to an existing customer.  (Exclusive Distribution Agreement – the "Agreement," page 5, Section 5.1; and, pages 1 and 2, Section 2.1).

     Under the Exclusive Distribution Agreement, there was no minimum purchase requirement imposed upon Vision.  Nor was there any limitation on Vision's right to buy casement window parts from other manufacturers or manufacturing casement window parts itself.  The Agreement provided that Vision's orders "shall be subject to acceptance by the Factory and shall not be binding until written confirmation of the order." (Agreement, Section 4.2.).

     Vision and ACU entered into an Exclusive Distribution Agreement dated November 2015 ("Exclusive Distribution Agreement").  Pursuant to the Exclusive Distribution Agreement, ACU granted Vision an "irrevocable, exclusive right and license to distribute": window (primarily casement) hardware and door hardware, and other materials provided by ACU for distribution and use in combination with such door and window (primarily casement) hardware, in the United States (excluding customer IWC in California), for the period of five years from the execution date, and providing the Distributor (Vision) a unilateral option to extend the Agreement for another five years under the same terms.

     Under the Exclusive Distribution Agreement, ACU was also required to provide Vision with pricing for products that was "no greater than the best price ACU's Factory provides it largest customers."  On August 18, 2017, Vision sent the following email to ACU (Vision0000481-482):

> After we made a sales agreement for casement & awning hardware system with you, we have put a lot of resources for market promotion. Now we are preparing the trade show in the beginning of September. All window samples are ready. If you cannot provide us the matched hardware samples in time, our exhibition will be seriously affected. Further, our early promotion and investments will be worthless. So please help to provide the required hardware samples in the end of this month.
>
> BTW, you promised to provide us ODM services based on the market requests in our meeting last month. Now one of our customers would like to trial the low-profile operator, and I have already passed all its requirements to your engineer Mr. Dai. To provide good samples is a must for new orders. We try our best to get order and hope you can make the support. Please provide us samples of low-profile operators before Aug. 25. Thanks a lot!

     On August 18, 2017, Alvin Zhuo from ACU sent Mr. Liang an email (Vision0000480-481; ACU 000225, 000226):

[Plaintiff's translation] VISION0000480-82

> First, your purchasing orders are required to meet following,
> 1. **Full Cartons**
> 2. Your order will be accepted when there is enough stock in our locations of Jiangmen or Canada.
> 3. If there is no stock, your order won't be operated until we have new orders for same products in the future. We won't arrange a new run of production only for the sample order.
> And right now, we have no plan to make ODM for you. Please kindly be noted.

On August 18, 2017, ACU accepted and filled an verbal order made earlier in August 2017 and supplied Vision with the requested parts, but for one part which ACU did not have in stock either in China or in Canada.

| 8/18/2017 | JIM-0818     | HG-06 | 300 | US$1.19 | US $357.00 |
|-----------|--------------|-------|-----|---------|------------|
|           | TRUSTY01L    | C-32  | 5   | US$4.85 | US $24.25  |
|           | TRUSTY02L    | C-32  | 10  | US$4.23 | US $42.30  |
|           | TRUSTY02R    | C-32  | 10  | US$4.23 | US $42.30  |

On December 14, 2017 Alvin Zhuo sent a 2018 price list to Ms. Huang Dan of Vision (via email).  45 minutes after Mr. Zhuo sent the 2018 price list to Ms. Huang Dan, Ms. Huang Dan sent an email to Mr. Zhuo asking for "the same prices as 2017.  On the next day, December 15, 2017 after Mr. Zhuo did not respond to Ms. Huang Dan's request, Ms. Huang Dan sent Mr. Zhuo an email setting forth the price increase for Zinc Alloy and noting that the increase in prices from 2017 to 2018 were significantly larger than the increase in prices for raw materials.  Mr. Zhuo responded immediately, "You should know it's not just zink alloy prices.  Hasn't your boss raised your salary in the past two years?"  Mr. Zhuo copied Luke Luang on this email which included the entire email chain including all the above emails.

> **Commented [MC5]:** Vision does not agree on these paragraphs.
>
> **Commented [EM6R5]:** One cannot "disagree" with a fact. It is either accurate or not.  These are documented facts.

On January 3, 2018 Vision placed an order for approximately $1,089.55 worth of awning operators and limit devices.  [VISION000487].

ACU did not accept Vision's order.  On January 10, 2018 ACU emailed Vision: [Vision 0000485]:

> "Your order #13165CC will not be accepted because following;
> The ordering quantity is less than its MOQ (minimum order quantity);
> There is no production plan for these products in recent months.
> Please kindly be noted."

ACU's Dai Lingiang also supplied Vision's Ms. Huang Dan with a handwritten dated communication:  [Vision 0000487].

> "The quantity of this purchase order [PO] our company cannot produce. If we receive large orders for these three part we can supply you with these items, but we checked our orders and we do not have any other order for these three parts."

Vision placed an order on January 19, 2018 for window parts (1,680 left and right awning hinges (ACU part number HG- 10 and Vision part number T1600)) totaling approximately $3,510. (VISION0000491-93).

Within an hour and a half of receiving the order, ACU's Dai Lingiang responded to Vision's Ms. Huang Dan with an email rejecting the order and explaining the reasons for the rejection of the order (VISION 0000491, 0000487):

> "This order cannot be produced, please see attached."
> Special note (Handwritten): We don't have inventory. This order is too small for mass production. Please be informed.
> Dai Lingiang Signature [ACU employee]

On January 19, 2018, an hour after emailing the above, ACU's Dai Lingiang supplemented his original email to Vision's Ms. Huang Dan: (Vision0000018).

EACH PARTY HAS SUBMITTED A CERTFIED TRANSLATION OF THIS EMAIL. THE TRANSLATIONS SIGNIFICANTLY CONTRADICT EACH OTHER.

Plaintiff's Translation:
"Day Translations"

> From: Qiangdi Hardware Davie – Dai
> Time: 01/19/2018 16:12
> To: Vision Industries Dan Huang
> Re: Re: Vision Order
>
> Hi Miss Huang,
>
> We won't supply any hardware for your orders. Please stop sending us any non-full-carton orders, the orders less than MOQ, and the sample orders. We made an agreement with you in 2015 to promote our system hardware for casement windows. But considering all of your orders in the last two years, we have made the above decision. Please contact our HQ directly for all your new orders. We will not handle your business via our China branch. If you have any questions, please inform your HQ, and let your HQ contact our HQ directly!

Defendant's Translation:
"Rush Translation"

This was the first company Defendant got a translation of this document from. Defendant did not utilize the "request revisions" option.

> **From:** "Qiang's Hardware Davie-Dai" <davie568@qq.com>;
> **Sent time:** January 19, 2018 (Friday) at 4:12 PM
> **To:** "Vision Enterprises Huang Dan" <huangnad@163.com>;
> **Subject:** Re: vision order
>
> Hi Miss Huang,
>
> We are unable to produce the products on your order; in the future, if your company has such orders for pieces, bulk parts and sample plates, please do not send them to us again! In 2015, our company made a cooperation agreement with you, mainly to promote the casement series hardware (complete set of hardware). And in view of the order status of your company in the past two years, we decided to no longer accept those orders for pieces and bulk parts, etc. as mentioned above; regarding the follow-up of your order, it is necessary to renegotiate with our headquarters. In the future, our domestic business department will no longer interface with your company. If you have any questions about this, please inform your headquarters and ask your headquarters to contact ours directly!

> **Commented [MC7]:** Vision does not agree on these paragraphs.
>
> **Commented [EM8R7]:** Again, one cannot disagree with a fact - It is either accurate or not. Here, Plaintiff does not tell us what he is disagreeing with. Is Plaintiff saying that it did not shop for a favorable translation or that it did not participate in the translation by seeking a revision?

On February 7, 2018 Vision wrote to ACU (ACU00140-142) an email captioned "re: Pending Lawsuit.":

> It has come to our attention that your factory lately had refused to take an order of 1,500 hinges without any explanation; when we wanted to order 5,000 sets of casement hardware from you last month, we were immediately given a HUGE increase without prior notice or explanations, which made it impossible for us to sell to our customers. By the contract, you were supposed to give us your best prices of all of your customers.'
> In the latest note from your factory in China, obviously under your instruction, we were notified that we can no longer contact them for any questions or orders without any explanations.
> ACU's blatant infringements of the contract have caused Vision irreparable harm, not only in tens of thousands of dollars, but in our customer relations. As for now, this matter is in our lawyer's hands. Unless you rectify these problems within the next ten business days, we will file a lawsuit of which we are very confident we will prevail.
> As an extra note, according to the Contract, we are entitled to damages once we identify the customers you are selling in the U.S.
> You are welcome to directly contact me if you are still interested in resolving this issue.

On February 14, 2018 ACU wrote to Vision. (Vision000016).

> Hi Luke,

> We didn't refuse your orders. But what I asked are:
> The price need(s) to be the price that we offered in year 2018. We have offered new price list long time ago but we have never got feed-back.
> Our deal is of selling ACU's casement line of products, not just the isolated item like the hinges your side ordered.
> Thanks.
> Best regards,
> Alvin Zhuo

Def. Liang responded to Alvin Zhuo's February 14, 2018 email (Vision 000016), "See you in court," and filed this action.

## II. ACU ISSUES

Plaintiff alleges that Defendant ACU breached an implied duty of good faith by: (1) refusing to supply Vision with product (Defendant "refused to sell the products to plaintiff" – Doc No. 1, Complaint, pg. 5, ¶¶ 17, 19); and "alter(ing) its pricing unreasonably, exorbitantly or without notice." Doc No. 1, Complaint, pg. 5, ¶ 31).

The issues presented by this case are:

A. Did Defendant have an implied duty of good faith to supply products to plaintiff and if so, did Defendant violate that duty by refusing to supply Vision with product?

B. Did Defendant have an implied duty of good faith not to raise its pricing "unreasonably, exorbitantly or without notice" and if so, did Defendant violate that duty by raising its pricing "unreasonably, exorbitantly or without notice?"

C. Did Defendant engage in a premature anticipatory breach of the contract by withdrawing with no valid cause and otherwise engaging in actions which would defeat the purpose of the agreement?

D. If Defendant did breach a duty of good faith, what are the damages?

> **Commented [MC9]:** Vision alleges ACU breached the Exclusive Distribution Agreement by refusing to fulfill orders and by selling into the US in violation of the exclusivity provisions of the agreement.
>
> ACU spoliated evidence of its sales into the US and was sanctioned.
>
> Vision suffered damages from ACU's breach in the form of: Expenses paid by Vision to build a market, lost profits and prejudgment interest.  DE 246 at 18.