ZAGER FUCHS, P.C.
Michael T. Warshaw, Atty.#: 005171976
119 Avenue at the Commons, Suite 4
Shrewsbury, New Jersey 07702
Phone: (732)747-3700
Fax: (732) 758-9068
Email: mwarshaw@zagerfuchs.com
*Attorneys for Defendant ACU Plasmold, Inc.* **LOCAL COUNSEL**

Edward W. Miller, Esq.
821 Franklin Ave., Suite 209
Garden City, NY 11530
Telephone: (917) 770—9016
Email: edmillerlaw@gmail.com
Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

VISION INDUSTRIES GROUP, INC.,

               Plaintiff,    Case No. 2:18-cv-6296 (ES) (CLW)

   -- against --

ACU PLASMOLD, INC., ABC COMPANIES 1-10 and XYZ CORPORATIONS 1-10,    **MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DEFENDANT ACU REFUSING ORDERS**

               Defendants

_____

Edward W. Miller, Esq.
On the Brief
Michael T. Warshaw, Esq.
Of Counsel

MOTION IN LIMINE TO EXCLUDE EVIDENCE
OF DEFENDANT ACU REFUSING ORDERS

Defendant seeks an order in limine excluding any evidence of Defendant ACU declining orders for window parts. Under the Agreement ACU has a right to decline orders:

> Under the Exclusive Distribution Agreement, there was no minimum purchase requirement imposed upon Vision. Nor was there any limitation on Vision's right to buy casement window parts from other manufacturers or manufacturing casement window parts itself. **The Agreement provided that Vision's orders "shall be subject to acceptance by the Factory and shall not be binding until written confirmation of the order." (Agreement, Section 4.2.).**

Parties' Joint Statement of the Case, Doc No. 305, at 3 (emphasis added).

The clause is unambiguous; it expressly preserves Defendant ACU's right not to accept orders. The Agreement's only limitations upon Defendant were that Defendant could not sell in the U.S. (other than one exception) to anyone other than Plaintiff and that Defendant had to give his "best price" to Plaintiff.

Plaintiff was the drafter of the Agreement:

> "On October 28th Luke Liang sent Alvin Zhuo a draft contract, which Mr. Liang represented he had, 'modified myself from a mostly boilerplate format.' Mr. Zhou signed the proposed contract which Mr. Liang sent him, without any edits or changes."

Parties' Joint Statement of the Case, Doc No. 305, at 2-3.

"Contra preferentem" (against the offeror) is an ancient common law rule. Ambiguities are interpreted against the drafter: "the common law rule of contract construction that an ambiguous term be interpreted against the drafter." United States Steel Corporation Plan for Employee Insurance Benefits v Musisko, 885 F.2d 1170 (3rd Cir.

1989).[1]  Thus, even were there an ambiguity in the clause providing that "Vision's orders shall be subject to acceptance by the Factory and shall not be binding until written confirmation of the order" (there is no ambiguity), it would be interpreted against the drafter, i.e. Plaintiff.

The equitable principle underlying the rule is to protect parties with lesser bargaining power from potential exploitation due to ambiguous contractual terms.  Here, there is "more likely than not" evidence of fraud.  Plaintiff's owner Luke Liang represented to Defendant's owner that, "he had, 'modified myself from a mostly boilerplate format.'"  But the contract was, obviously, drafted by a lawyer.  Relying upon Mr. Liang's false representation that he had "modified myself from a mostly boilerplate format," and the obvious implication that Mr. Liang had not involved a lawyer, Mr. Zhuo did not have the proposed contract reviewed by a lawyer.  Mr. Zhuo simply signed the contract as was, without any edits, and returned the executed contract to Mr. Liang.

The terms of the contract are self-serving for Plaintiff who has no obligations at all (other than paying for its own advertising).  Thus the contract itself is attackable as an illusory contract or the fruits of fraud.  But assuming that it is an enforceable contract, the circumstances would call for a full-throated application of the rule of interpreting all possible inferences against the drafter and in favor of the non-drafter.

This is probably the first ever "exclusive dealership agreement" where the "dealer" is not bound to buy exclusively from the manufacturer and is free to buy from anyone or to

---

[1] "These conflicting provisions—[Redacted] [Redacted] —creates an ambiguity. When language in a contract is determined to be ambiguous, it is interpreted against the drafter." <u>Jacob v. Steward Partners Glob. Advisory</u>, 1-23-CV-01179 (W.D. Texas Sept. 27 2024).

manufacture the parts himself, and has no minimum purchases or payment obligations. It is a free grant of exclusive rights to sell Defendant's products. Thus, it is only fair that the Agreement provides no requirement on the manufacturer to sell anything to the dealer (the Agreement in a one-sided provision, bars Defendant from selling to anyone else besides Plaintiff).

But there are no ambiguities to interpret. The contract expressly unequivocally preserves Defendant's right not to accept orders from Plaintiff.

Accordingly, for all these reasons, this Court should issue an order in limini excluding from evidence any evidence of Defendant ACU declining orders for window parts.