ZAGER FUCHS, P.C.
Michael T. Warshaw, Atty.#: 005171976
119 Avenue at the Commons, Suite 4
Shrewsbury, New Jersey 07702
Phone: (732)747-3700
Fax: (732) 758-9068
Email: mwarshaw@zagerfuchs.com
*Attorneys for Defendant ACU Plasmold, Inc.* **LOCAL COUNSEL**

Edward W. Miller, Esq.
821 Franklin Ave., Suite 209
Garden City, NY 11530
Telephone: (917) 770—9016
Email: edmillerlaw@gmail.com
Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

VISION INDUSTRIES GROUP, INC.,

            Plaintiff,     Case No. 2:18-cv-6296 (ES) (CLW)

   -- against --

ACU PLASMOLD, INC., ABC COMPANIES 1-10 and XYZ CORPORATIONS 1-10,     **DEFENDANT ACU PLASMOLD, INC.'S TRIAL BRIEF**

            Defendants
_____

Edward W. Miller, Esq.
On the Brief
Michael T. Warshaw, Esq.
Of Counsel

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1 of 10

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1 of 10

**LEGAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2 of 10

      **POINT ONE**

            **IN ORDER FOR PLAINTIFF TO PREVAIL, IT MUST SHOW THAT A VALID, ENFORCEABLE CONTRACT EXISTS** . . . . . . . . . . . . . . . . . . . Page 2 of 10

      **POINT TWO**

            **IT IS FUNDAMENTAL THAT A CONTRACT BASED UPON AN ILLUSORY PROMISE IS VOID.** . . . . . . . . . . . . . . . . . . . . . . . . . Page 3 of 10

      **POINT THREE**

            **THE UNIFORM COMMERCIAL CODE, ART. 2 GOVERNS THIS TRANSACTION** . . . . . . . . . Page 7 of 10

      **POINT FOUR**

            **THE PAROL EVIDENCE RULE BARS ANY EVIDENCE OFFERED TO CONTRADICT OR VARY THE TERMS OF THE WRITTEN AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8 of 10

# TABLE OF AUTHORITIES

**Cases**

Aden v. Fortsh, 169 N.J. 64 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6 of 10

Barr v. Barr, 418 N.J. Super 18, 32 (App. Div. 2011) . . . . . Page 5 of 10, Page 6 of 10

Bryant v. City of Atlantic City, 309 N.J. Super. 596, 620 (App. Div. 1998)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

*Curtis Elevator Co. v. Hampshire House, Inc.,* 142 *N.J.Super.* 537, 542, 362 *A.*2d 73 (Law Div.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

E. Brunswick Sewerage Auth. V. E. Mill Assocs., 365 N.J. Super 120, 125 (App. Div. 2004)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5 of 10

Fivey v. PA. R.R. Co., 67 N.J.L. 627, 632 (E. & A. 1902)) aff'd, 27 N.J. Super 469 (App. Div. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6 of 10

Goldfarb v. Solimine, 245 N.J. 326, 338 (2021). . . . . . . . . . Page 2 of 10, Page 3 of 10

Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super 464, 477 (App. Div. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

Maglies v. Estate of Guy, 193 N.J. 108, 143 (2007) . . . . . . . . . . . . . . . . Page 5 of 10

Meyers v. Henderson Constr. Co., 147 N.J. Super 77 (Law Div. 1977). . . Page 7 of 10

Moreira Constr. Co. V. Moretrench Corp., 97 N.J. Super. 391, 394 (App. Div. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6 of 10

Novak v. Cities Service Oil Co., 149 N.J. Super. 542, 548,9, (Law Div. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) . . . . . . . . . . . . . . . . . . . . . Page 6 of 10

Pisker v. Metro. Life Ins. Co., 115 N.J.L. 587 582 (E. & A. 1935) . . . . . . . Page 6 of 10

Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) . . . . . . . . . . . . . Page 5 of 10

Wade v. Park View Inc., 25 N.J. Super 433, 440 (Law Div.) . . . . . . . . . . Page 6 of 10

**Statutes**
N.J.S.A. 12A:2-101, et. seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7 of 10

N.J.S.A. 12A:2-105(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7 of 10

**Other Authorities**

Black's Law Dictionary, 1213 (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

J.D. Calamari and Joseph M. Perillo, *Contracts,* § 4–17 at 159 (2d ed.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

Rest. 2d, Contracts § 1, p.5 (ALI, 1981) . . . . . . . . . . . . . . . . . . . . . . . . . Page 3 of 10

Rest. 2d, Contracts § 77, p.194 (ALI, 1981) . . . . . . . . . . . Page 3 of 10, Page 4 of 10

*Restatement (Second) of Contracts,* § 2, comment e (1979) . . . . . . . . . .   Page 4 of  10

## **PRELIMINARY STATEMENT**

This action, is a straightforward suit for breach of contract. The contract is a Distribution Agreement, consisting of 11 pages, and was drafted by the plaintiff. By plaintiff's own declaration, agreed to by defendant, "this is a breach of contract action by Vision Industries Group, Inc., ("Vision") a New Jersey Corporation, for breach of a distributorship agreement and breach of the covenant of good faith and fair dealing by defendant ACU Plasma old Inc."[1] Thus, it is not a suit for breach of an explicit term of the contract, but an implied term.

The plaintiff must demonstrate that there exists an enforceable contract, including each of the elements necessary to create a valid, enforceable contract. A perusal of the document that forms the predicate for this lawsuit reveals that there is no valid enforceable contract, since it lacks the essential element of consideration. For the reasons set forth below, the complaint of plaintiff must be dismissed with prejudice and a judgement in favor of defendant for no cause of action must be entered.

## **STATEMENT OF FACTS**

The facts in this action are set forth in the Parties' Joint Statement of the Case[2] and in the Final Pretrial Order[3]. Rather than restate them here, they are incorporated by reference.

---

[1] Doc 1, ¶ 1; Doc 246, at 2 of 58, ¶ 2

[2] Doc 306

[3] Doc 246

## **LEGAL ARGUMENT**

### **POINT ONE**
### **IN ORDER FOR PLAINTIFF TO PREVAIL, IT MUST SHOW THAT A VALID, ENFORCEABLE CONTRACT EXISTS**

As noted, this is an action based upon an alleged breach of contract by defendant. The contract, written by plaintiff, designates that New Jersey law is the law that governs the interpretation of this contract. It is clear that New Jersey law is the law that governs this contract, as it sets forth the following:

> **11.4 Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey as it applies to contracts negotiated, executed, delivered, and performed solely within such jurisdiction.

Before determining if there has been a breach that would give rise to and support plaintiff's claim for damages, the Court must determine that a contract in fact exist - that is a valid, enforceable contract, between the parties to this lawsuit. In order to make that detemination, the Court must be shown that the elements of a contract are in place in this dispute. As will be demonstrated below, they are not able to do so. New Jersey's Supreme Court has even recently spoken to what the elements are that must be proved.

> To prevail on a claim of breach of contract, [o]ur law imposes on a plaintiff the burden to prove four elements: first, that "the parties entered into a contract containing certain terms"; second, that "plaintiffs did what the contract required them to do"; third, that "defendants did not do what the contract required them to do," defined as a "breach of the contract"; and fourth, that "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." [Goldfarb v. Solimine, 245 N.J. 326, 338 (2021)]

Justice LaVecchia, writing for the court, noted that "'[T]he basic features of a contract' are 'offer, acceptance, consideration, and performance by both parties.'" Goldfarb, supra, at 339. As demonstrated below, the absence of consideration, due to the illusory promise of plaintiff, renders the contract void and unenforceable. As such, plaintiff's claims must be dismissed and a judgement in favor of defendant for "No Cause for Action" must be entered.

### POINT TWO
### IT IS FUNDAMENTAL THAT A CONTRACT BASED UPON AN ILLUSORY PROMISE IS VOID.

It is fundamental, black letter law, that a "...contract is a promise, or a set of promises for the breach of which the law gives a remedy, with a performance of which the law in some way recognizes as a duty." Rest. 2d, Contracts § 1, p.5 (ALI, 1981). This action by Vision is a complaint for a claim of breach of contract by ACU.[4]

However, the contract is devoid of any promises or obligations on Plaintiff. "Under the Exclusive Distribution Agreement, there was no minimum purchase requirement imposed upon Vision. Nor was there any limitation on Vision's right to buy casement window parts from other manufacturers or manufacturing casement window parts itself."[5] There are no payments required from Plaintiff. The contract is a gifting of exclusive distribution rights (under the contract).

---

[4] Doc. 1, ¶ 1; Doc. 246, ¶ 2.

[5] Doc No. 251, Pretrial Order, pg. 6 ¶¶ 24, 25

ACU promised to sell none of its products in the U.S. to anyone but Vision, except to one existing customer, and to sell products to Vision at its best price.[6] The contract is totally free of any obligation upon plaintiff.

Vision will possibly claim that its obligation to pay for its own advertising of casement parts was consideration to Defendant. But because any benefit to Defendant from Vision's advertising is dependent on whether or not Vision buys any casement parts from Defendant, which Plaintiff has absolutely no obligation to do under the contract, it is merely a potential benefit conditioned entirely upon the will of a party, the plaintiff. Such a promise is illusory, and is not consideration. Rest. 2d, Contracts § 77, p.194 (ALI, 1981).

New Jersey contract law is in accord, and the state Courts have adopted the Restatement 2d of Contracts:

> An illusory promise has been defined as, a "promise which by [its] terms make[s] performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue [.]" Restatement (Second) of Contracts, § 2, comment e (1979). Our courts have adopted that definition. Curtis Elevator Co. v. Hampshire House, Inc., 142 N.J.Super. 537, 542, 362 A.2d 73 (Law Div.1976). Hence, an illusory promise is one in which the "promisor has committed himself not at all." J.D. Calamari and Joseph M. Perillo, Contracts, § 4–17 at 159 (2d ed.1977). Thus, if performance of an apparent promise is entirely optional with a promisor, the promise is deemed illusory. Id. at 160. [Bryant v. City of Atlantic City, 309 N.J. Super. 596, 620 (App. Div. 1998)].

Under general principles of contract law, any agreement based only upon an illusory promise is unenforceable. Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super 464, 477 (App. Div. 2015). An illusory promise is "a promise which by [its] terms make[s] performance entirely optional with the promisor whatever may happen, or whatever course

---

[6] Doc No 246, ¶ 23, @ p. 6.

of conduct in other respects he may pursue." id.  Black's law dictionary has defined an illusory promise as "one in which the promisor does not bind himself." Black's Law Dictionary, 1213 (6th ed. 1990).

For any contract to be enforceable, it must be supported by valuable consideration, which must involve a detriment incurred by the promisee or a benefit received by the promisor, at the promisor's request. Novak v. Cities Service Oil Co., 149 N.J. Super. 542, 548,9, (Law Div. 1977).  In the current case, the plain language of the agreement imposes no obligation upon Vision, other than an obligation to advertise its own products which could or could not confer some benefit upon Defendant, depending on whether or not Plaintiff chose to purchase products from Defendant.  ACU incurs a detriment by virtually eliminating its ability to sell its products in the United States market, but Vision's purchasing of materials from ACU is entirely optional at Vision's determination, and no one else. Its obligation to advertise is as vacant as its non-obligation to purchase product. Its contract with ACU, therefore, must fail for lack of consideration, rendering it void and thus unenforceable.

If the terms of a contract are "clear and unambiguous, there is no room for construction and the court must enforce those terms as written, giving them 'their plain, ordinary meaning.'" Barr v. Barr, 418 N.J. Super 18, 32 (App. Div. 2011) (citing Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008)).  See also: E. Brunswick Sewerage Auth. V. E. Mill Assocs., 365 N.J. Super 120, 125 (App. Div. 2004).  Ultimately, courts do not, and will not "supply terms to contracts that are plain and and unambiguous, nor do we make a better contract for either of the parties then the one which the parties themselves have created." Barr, supra, 418 N.J. Super at 31-32 (citing Maglies v. Estate of Guy, 193 N.J. 108, 143

Page 5 of  8

(2007)). Here the contract could not be clearer. Titled as a "Distribution Agreement,"[7] the contract is an exclusive distribution agreement, granting to plaintiff the exclusive right to distribute defendant's products in the United States. The relevant language, written by plaintiff, sets forth the following:

> **1.4 "Territory."** The United States (excluding customer IWC in California)
>
> **2.1 License.** Supplier hereby grants to Distributor, and Distributor hereby accepts from Supplier, an irrevocable, exclusive right and license to distribute the Products in the Territory for the terms of the Agreement
>
> **8.2 Exclusivity.** Supplier has no right to market, distribute, and support the Products in the Territory.
>
> **11.4 Governing Law.** This Agreement shall be construed and enforced in accordance with the laws o fthe State of New Jersey as it applies to contracts negotiated, executed, delivered, and performed solely within such jurisdiction

The plain language of Vision's contract creates merely an illusory promise; it lacks consideration and is therefore void and unenforceable.

## POINT THREE
## THE UNIFORM COMMERCIAL CODE, ART. 2 GOVERNS THIS TRANSACTION

This matter arises out of a contractual transaction. It involves the sale of goods, namely "Window (primarily Casement) Hardware and Door Hardware, and other materials provided by Supplier for distribution and use in combination with such door and window (primarily casement) hardware"[8]. As such, it is governed by Article 2 of the New Jersey Uniform Commercial Code. N.J.S.A. 12A:2-101, et. seq. The hardware meets the definition of "goods" as defined in N.J.S.A. 12A:2-105(1):

---

[7] Doc. 246, Plaintiff's Exhibit List at 46 of 58, Exhibit 1

[8] Doc. 246, Plaintiff's Exhibit List at 46 of 58, Exhibit 1, at ¶ 1.3

"Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid.

In this matter, once the hardware and "other materials" were identified to the contract, this article governed the contract for its sale. See: Meyers v. Henderson Constr. Co., 147 N.J. Super 77 (Law Div. 1977), holding prefabricated, disassembled overhead doors which the seller put together and installed constituted goods under this section.

Other documents referenced and dealt with in this litigation are tangential and ancillary to the underlying contract. The key to this dispute is that no order placed by Vision triggers an obligation for performance by ACU unless and until it is accepted by ACU.[9] Only upon such acceptance and written confirmation does ACU's obligation of performance arise. Here such acceptance and written confirmation never occurred. In fact, the single decline of an order that this lawsuit is based upon was refused for the reasons set forth in ACU's email and in its handwritten note on the order form.[10] The claims of Vision are void, as there was never any obligation for ACU to perform.

## POINT FOUR
## THE PAROL EVIDENCE RULE BARS ANY EVIDENCE OFFERED TO CONTRADICT OR VARY THE TERMS OF THE WRITTEN AGREEMENT

Because it is a contract for the sale of goods in excess of $500, it is subject to the statute of frauds. N.J.S.A. 12 A: 2-201 (1). This was a contract between merchants; it was not a consumer contract. It was a commercial contract. Any evidence offered by Vision that seeks to contradict or vary the plain terms of the Distribution Agreement, is barred to the

---

[9] Doc 246, Plaintiff's Exhibit List at 46 of 58, Exhibit 1, at ¶ 4.2

[10] Vision 0000491, 0000487

extent that is offered to vary the final written expression of the agreement between the parties, as represented in the signed contract.  N.J.S.A. 12 A: 2-202.

The contract explicitly provided that **"Vision's orders 'shall be subject to acceptance by the Factory and shall not be binding until written confirmation of the order.' (Agreement, Section 4.2.)."**[11]

Any other documents, to be dealt with at the hearing are tangential and ancillary to the underlying contract.  They relate primarily to the issue of performance, not to the contract itself.  They constitute Parol Evidence as to the contract.  The key to this dispute is that Vision and ACU signed a contract, purporting to grant to Vision the exclusive right to distribute ACU products within the United States, on the terms outlined several times above.

The Contract requires **NO** performance by Vision.  It is solely at the discretion of Vision as to whether or not it will order any "Window (primarily Casement) Hardware and Door Hardware, and other materials provided by Supplier for distribution and use in combination with such door and window (primarily casement) hardware."  There is also no obligation on ACU to accept orders placed by Vision which are explicitly in the contract made subject to acceptance and are explicitly made non-binding until confirmed in writing by ACU.

---

[11] Doc No. 305, Parties' Joint Statement of the Case, at 3 (emphasis added).