**ZAGER FUCHS, P.C.**
Michael T. Warshaw, Atty.#: 005171976
119 Avenue at the Commons, Suite 4
Shrewsbury, New Jersey 07702
Phone: (732)747-3700
Fax: (732) 758-9068
Email: mwarshaw@zagerfuchs.com
*Attorneys for Defendant ACU Plasmold, Inc.* **LOCAL COUNSEL**

Edward W. Miller, Esq.
821 Franklin Ave., Suite 209
Garden City, NY 11530
Telephone: (917) 770—9016
Email: edmillerlaw@gmail.com
Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VISION INDUSTRIES GROUP, INC., <br><br> Plaintiff, <br><br> -- against -- <br><br> ACU PLASMOLD, INC., ABC COMPANIES 1-10 and XYZ CORPORATIONS 1-10, <br><br> Defendants | Case No. 2:18-cv-6296 (ES) (CLW) <br><br> **MOTION IN LIMINE TO EXCLUDE EVIDENCE OF LOST FUTURE SALES TO "THE SEVEN CUSTOMERS"** |

Edward W. Miller, Esq. On
the Brief
Michael T. Warshaw, Esq. Of
Counsel

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\PLEADINGS\MOTIONS IN LIMINE\2 Memo in Limini re lost future sales[2].wpd

Page 1 of

## MOTION IN LIMINE TO EXCLUDE EVIDENCE OF LOST FUTURE SALES TO "THE SEVEN CUSTOMERS"

Defendant seeks an order in limine excluding any evidence of claimed lost future damages for seven customers for future sales starting in 2018 because there is no evidence that the customers would have been willing to purchase product at the then current prices.

Plaintiff's complaint is for breach of the implied covenant of good faith and fair dealing by: "breach[ing] its obligation under the Distribution Agreement to sell the product to plaintiff," by "refus[ing] to sell the products to plaintiff." Doc No. 1, Complaint, pg. 5, ¶¶ 17, 19.

Plaintiff claims that it was damaged by being unable to provide casement window parts to seven customers who would have made orders were it not for defendant's alleged refusal to provide plaintiff with product.

> The lost profits being sought are lost profits from what would have been the sale of casement hardware.

Exhibit A, Plaintiff's Answer to Supplemental Interrogatory No. 4.

The evidence of the "would have been sales" is slim. None of the seven customers actually placed orders with plaintiff before plaintiff abruptly cut off all contact with defendant on February 14, 2018 ("see you in court"). [Doc No. 251, Proposed Final Pretrial Order,

Stipulated Facts, at 9 ¶¶ 37-38]. Nor does Plaintiff claim that any of the seven customers tried to make an order.

The entire documentary evidence of the supposed intended orders consists of seven quote sheets issued by Plaintiff in the summer of 2017. Plaintiff claims the seven customers would have accepted the quotes and placed the orders in 2018 were it not for defendant's refusal to provide product. But, by 2018 the prices had increased. Every year defendant came out with a new price list. The quotes that the seven customers were supposedly willing to pay in 2018, contain prices that were based on Defendant's 2017 price list. [Exhibit A, Plaintiff's Supplemental Answers to Defendant's First Interrogatories, Interrogatory 15].

Again, by the time plaintiff contends the seven customers were ready to order (at the earliest January 20, 2018), there had been a new 2018 price list issued by Defendant – "a HUGE increase," in the words of Luke Liang. [Doc No. 251, Proposed Final Pretrial Order, Stipulated Facts, at 9 ¶ 36].

Under the Exclusive Distribution Agreement there is no limitation on the amount Defendant can charge for its products. The sole price limitation under the Agreement is that Defendant must give Plaintiff its best prices. Plaintiff has not alleged any violation of the best price obligation.

Plaintiff's premise is that the seven customers who were prepared to purchase product at the 2017 prices, would have been willing to pay much higher prices to reflect the

"HUGE INCEASE" in prices plaintiff would have had to pay defendant. There is absolutely no evidence supporting this outlandish suggestion.

Vision has never claimed that the customers would have bought at the 2018 prices. Rather, Vision seems to be advancing the wrongheaded theory that ACU was not permitted to raise its prices under the Exclusive Distribution Agreement, and that there was "an implied duty of good faith not to raise its pricing 'unreasonably, exorbitantly or without notice' and if so, did Defendant violate that duty by raising its pricing 'unreasonably, exorbitantly or without notice?'" Doc No. 1, Complaint, at 5 ¶ 27. (See: Doc No. 307-1, Defendant's Motion in Limine to Exclude Evidence of Defendant Not Accepting Orders, discussion of ambiguities being interpreted against the drafter, at pgs. 2-3).

The terms of the Agreement regarding price were explicit; the only limitation on Defendant's pricing of its own products was that defendant was required to give its best price to Plaintiff.

In sum, there is no reason to believe that the seven customers would have placed orders in 2018 at a higher price than the ones they were allegedly quoted in 2017. For these reasons this court should grant defendant's motion in limini to exclude any evidence of damages due to the supposed loss of future sales to the seven customers.

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VISION INDUSTRIES GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> ACU PLASMOLD, INC.<br>and ABC COMPANIES 1-10,<br>(said companies being fictitious),<br>and XYZ CORPORATIONS 1-10,<br>(said corporations being fictitious), <br><br> Defendants. | : <br> : <br> : <br> : Case No.: 2:18-cv-06296-ES-CLW <br> : <br> : <br> : **VISION INDUSTRIES GROUP,** <br> : **INC'S SUPPLEMENTAL** <br> : **ANSWERS TO** <br> : **INTERROGATORIES.** <br> : <br> : |

**PLEASE TAKE NOTICE** Plaintiff, Vision Industries Group, Inc., as and for its response to defendant, ACU Plasmold, Inc.'s, Supplemental Answers to Interrogatories say:

1. Sales representatives names and contact information will be supplied Attorneys Eyes Only in a separate document. Deposition notices for 1 a), b), c) and d) can be sent through plaintiff's counsel's office.

3. All emails regarding the negotiation, drafting and execution of the Agreement have been provided.

4.  Plaintiff's claim for lost profits is not related to past profits. Plaintiff's distribution agreement with defendant is for casement hardware. The profits are future profits that plaintiff would have made only on the casement line. Plaintiff was poised to make sales of casement hardware using defendant's hardware for casement windows. This is unrelated to previous sales of other types of window hardware sold by plaintiff before the distribution agreement with defendant. See answer to number 15 previously supplied as to the specific calculations and number 15 as amended herein. The lost profits being sought are lost profits from what would have been the sale of casement hardware. This is not the same as profits from other aspects of sales of Vision's products.

5.  The advertising cost for 2013 was $56,682.92. Vision did not offer casement hardware in 2013. The advertising cost for 2014 was $45,199.20. Vision did not offer casement hardware in 2014. The advertising cost for 2015 was $34,185.55. Vision did not offer casement hardware in 2015. The advertising costs for 2016, 2017 and 2018 for the combined 3 years was $129,650. The portion of this cost for only casement advertising for those three years of 2016, 2017 and 2018 was $57,994 based on plaintiff's best estimate of the advertisements. Some advertisements were for only casement in some months and some advertisements were for both hung window hardware and casement hardware in the same advertisement.

6.   a. The costs of advertising for casement hardware only for 2016, 2017 and 2018 was a total of $57,994.

Plaintiff hired an engineer to only handle the casement line. The salary of the casement engineer was $22,307 for 2016, $37,259 for 2017 and $42,760 for 2018.

Plaintiff also promoted the casement line by assembling physical window samples with the hardware attached for several customers. Each time this was done, shipping costs overseas to the factory in China were incurred. The total cost for the shipping to and from China for the casement window samples is $33,188.39.

The creation of those samples often required specific parts which were unavailable from defendant and had to be machined/ or modified. The cost was $18,260.24.

Samples of the defendant's products were purchased for giving to salesmen, potential customers and for the sample casement windows cost $4,361.25.

c. The cost of Vision for the Glassbuild America Trade Show was $267,944 for three years. For casement only, the costs of the casement exhibit booth, the color printing, the casement sample windows and shipping costs to the trade shows was $103,519.

3

9. Vision uses outside sales representatives and inside sales representatives, advertising and attendance at trade shows to sell its products from suppliers other than ACU Plasmold.

   a. See answer to 5 above and documents previously supplied and in response to supplemental request as to those specific advertisements and costs as to 2013, 2014 and 2015.

   b. None

   c. For non-casement for 2016, 2017 and 2018, the cost of the trade shows was $164,425 for these three years. See documents previously supplied as to photographs and documents related.

   d. None.

10. These have been previously supplied.

12. There are no communications by which Vision notified ACU about specific customers. Vision did send emails to Mr. Zhuo regarding purchasing products to give to sales reps to use in selling. See, Vision 733 to 736.

15. Plaintiff amends and supplements its answer to number 15 as follows:

   Plaintiff made a calculation based on the costs of the parts from the 2017 list for each sample window requested by various customers: See ACU Plastic

4

Hardware Price List 2017. For each of those sample windows, the cost was multiplied by the number of units of the expected sale. Plaintiff then calculated its selling price for that unit also multiplied by the number of units of the expected sales: The difference is the expected profit. The amount of one year of expected sales for seven customers, now revised to be denominated A through G, are as follows: A: $43,116; B: $38,010; C: $30,612; D: $9,741; E: $114,941; F: $103,933 and G: $61,488. Plaintiff estimates that sales would have continued for approximately at least 5 years. The total for these seven customers is $401,840 profit for one year. Multiplied by 5 years, the projected loss on the casement line is $2,009,200.

16. Vision Bates numbers 726-732; 737-739; 742

## CERTIFICATION

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willing false, I am subject to punishment.

I further certify that in responding to the forgoing interrogatories, I have furnished all information available to me and to my agents and attorneys.

Finally, I certify that any and all copies of reports annexed hereto rendered by proposed expert witnesses are exact copies of the entire report or reports rendered by them. I further certify that if other reports of said experts become available, either written or oral, I shall serve them promptly on the propounding party.

Date: 3/28/2019

LUKE LIANG