ZAGER FUCHS, P.C.
Michael T. Warshaw, Atty.#: 005171976
119 Avenue at the Commons, Suite 4
Shrewsbury, New Jersey 07702
Phone: (732)747-3700
Fax: (732) 758-9068
Email: mwarshaw@zagerfuchs.com
*Attorneys for Defendant ACU Plasmold, Inc.* **LOCAL COUNSEL**

Edward W. Miller, Esq.
821 Franklin Ave., Suite 209
Garden City, NY 11530
Telephone: (917) 770—9016
Email: edmillerlaw@gmail.com
Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VISION INDUSTRIES GROUP, INC., | Case No. 2:18-cv-6296 (ES) (CLW) |
| Plaintiff, | **DECLARATION OF EDWARD W. MILLER IN SUPPORT OF DEFENDANT ACU PLASMOLD, INC., MOTION TO STRIKE EXPERT DECLARATIONS OF MARK LANTERMAN, EXCLUDE LANTERMAN'S TESTIMONY, VACATE MAGISTRATE JUDGE CATHY WALDOR ORDER FOR SANCTIONS** (Doc 266), **AND TO DISMISS WITH PREJUDICE THE REMAINING ISSUES ON PLAINTIFF'S MOTIONS FOR SANCTIONS** (Doc 104; 124; 224). |
| -- against -- | |
| ACU PLASMOLD, INC., ABC COMPANIES 1-10 and XYZ CORPORATIONS 1-10, | |
| Defendants | |

I, Edward W. Miller, an attorney duly admitted to practice in the State of New York and pro hac vice in the District Court for the District of New Jersey, declare under penalty of perjury and pursuant to 28 U.S.C.§ 1746 that the following is true and correct:

1.    On March 12, 2025, Defendant informed the Court via letter (Doc No. 295) that Mr.

Mark Lanterman had provided false testimony, including claims of having graduated

from Harvard University, which were later proven to be untrue.

2.    On March 20, 2025, Mr. Lanterman submitted a rebuttal to the Court (Doc No.
301), which marked his final attempt to address the allegations against him before
withdrawing from public view.

3.    Plaintiff heavily relied on Mr. Lanterman's testimony in their Motion for Sanctions,
citing him by name 36 times in their Memorandum and 13 times in their Reply Brief
(Doc No. 224-1). The Court also referenced Mr. Lanterman 17 times in its Opinion
(Doc No. 265).

4.    The Court's reliance on Mr. Lanterman's unsworn emails, which contained hearsay,
formed the basis for its conclusion that Defendant's counsel, Mr. Miller, had
participated in evidence spoliation.   This conclusion was extended to implicate
Defendant's owner, Mr. Alvin Zhuo.

5.    Evidence has emerged that Mr. Lanterman made false claims, including stating he
had completed postgraduate work at Harvard University, when records show he was
never admitted to the institution (Exhibit A, May 2, 2017 deposition of Mark
Lanterman in Lanterman v. Stillman, Fourth Judicial District Court, Minnesota).

6.    Plaintiff's counsel has engaged in mischaracterizations and misrepresentations
throughout this case, including presenting a valuation document as a QuickBooks
annual sales report, which it was not (Exhibit B; Doc No. 147; Doc No. 224-1).

7.    Defendant has provided evidence to refute this claim, demonstrating that the
document in question represented the total sales for the company's 14-year
lifespan, not annual sales.

8.    Plaintiff's counsel falsely attributed statements to Mr. Lanterman, including claims

that he described the valuation document as a QuickBooks report, which were not supported by Mr. Lanterman's Declaration (Doc No.   156-1).

9.    Defendant has consistently demonstrated that Plaintiff's claims regarding hidden sales and withheld documents lack evidentiary support. A search of Quach's restored computer yielded no evidence of concealed sales or significant documents that had not been produced.

10.    Plaintiff's reliance on Mr. Lanterman's testimony and unsworn emails has led to significant misrepresentations in this case.   Defendant has highlighted numerous instances where Plaintiff's arguments were based on false or unsupported claims, yet these arguments were often left unaddressed by Plaintiff in their replies. (Exhibit C).

11.    Plaintiff's introduction of the term "Quach financials" has created an inherent assumption that such financials exist, despite the lack of evidence to support this claim.

12.    This term has been repeatedly referenced in Court Orders, further perpetuating the assumption.

13.    Plaintiff has also drawn negative inferences from Mr. Zhuo's change of attorneys, suggesting it was part of a scheme to conceal evidence.   Defendant has provided explanations for these changes, including Mr. Zhuo's dissatisfaction with prior counsel and his efforts to secure representation through referrals within his community.

14.    Plaintiff has made unsupported claims regarding financial transactions and other matters, often relying on hearsay or mischaracterizations.    Defendant has

consistently refuted these claims with evidence and detailed arguments.

15.     The Court's reliance on Mr. Lanterman's unsworn emails and Plaintiff's misrepresentations has resulted in conclusions that are not supported by the evidence.   Defendant has demonstrated that many of the claims made by Plaintiff and Mr. Lanterman are false or misleading.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 11, 2025                              __/s/ *Edward W. Miller*__
                                                   Edward W. Miller, Esq.
                                                   821 Franklin Ave., Suite 209
                                                   Garden City, NY 11530
                                                   Telephone: (917) 770—9016
                                                   Email: edmillerlaw@gmail.com
                                                   Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**

# EXHIBIT A

# EXHIBIT C
## HIGHLY CONFIDENTIAL AEO

8:47 AM

05/19/21

Accrual Basis

### ACU HARDWARE USA, Inc (Vendor #57478)
### Profit & Loss
### All Transactions



|  | Apr 20, 21 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| deposit for questionng Intl pho | 176.00 |
| return borrowed fund | 20.00 |
| Sales | 2,814,636.19 |
| Shipping and Delivery Income | 21,300.60 |
| **Total Income** | 2,836,132.79 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 2,068,906.19 |
| Freight Costs | 163,863.49 |
| **Total COGS** | 2,232,769.68 |
| **Gross Profit** | 603,363.11 |
| **Expense** | |
| AAMA lab test certificate | 12,088.41 |
| Advertising and Promotion | 7,232.90 |
| Auto and Truck Expenses | 2,114.66 |
| Bank Service Charges | 9,316.77 |
| Business Licenses and Permits | 5,895.71 |
| Cell phone | 233.40 |
| Computer and Internet Expenses | 4,244.35 |
| Depreciation Expense | 616.27 |
| Gasoline | 35,978.90 |
| Insurance Expense | 583.13 |
| Interest Expense | 704.56 |
| Meals and Entertainment | 9,455.41 |
| Mold charge | 26,223.00 |
| Office Cleaning Service | 151.78 |
| office key change | 140.00 |
| Office Supplies | 41,229.88 |
| Payroll Expenses | 236,709.73 |
| Professional Fees | 15,192.88 |
| Rent Expense | 83,057.88 |
| Repairs and Maintenance | 6,155.46 |
| Salary | 212,771.28 |
| Shipping | 67,513.17 |
| T-mobile | 6,329.65 |
| Taxes - Property | 7,820.41 |
| Telephone Expense | 11,292.28 |
| testing fee | 57.85 |
| Travel Expense | 7,252.07 |
| Wareshouse Mininum Charge | 447.63 |
| **Total Expense** | 810,809.42 |
| **Net Ordinary Income** | -207,446.31 |
| **Other Income/Expense** | |
| **Other Income** | |
| Bank initiated credit | 30.17 |
| SERVICE | -29,500.00 |
| **Total Other Income** | -29,469.83 |
| **Other Expense** | |
| Ask My Accountant | 16.99 |
| Credit | 68,840.84 |
| Scrap | 371.41 |
| **Total Other Expense** | 69,229.24 |
| **Net Other Income** | -98,699.07 |
| **Net Income** | -306,145.38 |

8:52 AM
05/19/21

Page 1



## ACU HARDWARE USA, Inc (Vendor #57478)
### A/R Aging Summary
As of May 19, 2021

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| Aaon J. Hunt | 0.00 | 0.00 | 0.00 | 0.00 | -1,752.01 | -1,752.01 |
| ACU PLASMOLD INC CANADA | 0.00 | 0.00 | 0.00 | 0.00 | 557,876.57 | 557,876.57 |
| C.R.Laurence Co. Inc. | 0.00 | 0.00 | 0.00 | 0.00 | 12,873.62 | 12,873.62 |
| CALIFORNIA DELUXE WINDOWS | 0.00 | 0.00 | 0.00 | 0.00 | 34,838.66 | 34,838.66 |
| INTERNATIONAL WINDOW-NORTH CA | 0.00 | 0.00 | 0.00 | 0.00 | 5,288.44 | 5,288.44 |
| INTERNATIONAL WINDOW CORPORATION | 0.00 | 0.00 | 0.00 | 0.00 | 13,636.36 | 13,636.36 |
| Samnina-SCI | 0.00 | 0.00 | 0.00 | 0.00 | -6,097.60 | -6,097.60 |
| VI-CAL SCREES, INC | 0.00 | 0.00 | 0.00 | 0.00 | -292.00 | -292.00 |
| YELLOW DOG | 0.00 | 0.00 | 0.00 | 0.00 | 10,426.81 | 10,426.81 |
| TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 826,800.85 | 826,800.85 |

3:59 AM
05/18/21

# ACU HARDWARE USA, Inc (Vendor #57478)
## Account Listing
### May 19, 2021

Page 1

| Account | Type | Balance Total | Description |
|---|---|---|---|
| farmers & merchants | Bank | 0.00 | |
| farmers & merchants:check | Bank | 0.00 | |
| US METRO BANK | Bank | 726.44 | |
| 04-001 tooling refund | Accounts Receivable | 0.00 | 04-001 tooling refund |
| Accounts Receivable | Accounts Receivable | 626,800.85 | |
| HSD | Accounts Receivable | 0.00 | |
| Rent Depsit | Accounts Receivable | 0.00 | |
| Inventory Asset | Other Current Asset | 145,958.75 | |
| JOHN QUACH UNCLEAR CAS... | Other Current Asset | 77,000.26 | John's over withdraw salary |
| Undeposited Funds | Other Current Asset | 0.00 | |
| Accumulated Depreciation | Fixed Asset | 0.00 | Accumulated depreciation on equipment, buildings a... |
| Furniture and Equipment | Fixed Asset | 434.96 | Furniture and equipment with useful life exceeding o... |
| Tractors and Trailers | Fixed Asset | 0.00 | Tractors, trailers, and other delivery vehicles |
| Warehouse Equipment | Fixed Asset | 0.00 | Shelving (not permanently attached), forklifts, and ot... |
| Accounts Payable | Accounts Payable | 1,148,776.64 | |
| Loan | Other Current Liability | 0.00 | |
| LOAN FROM SHARE HOLDER-... | Other Current Liability | 8,000.00 | LOAN FROM SHARE HOLDER-ALVIN |
| Payroll Liabilities | Other Current Liability | 300.00 | |
| Sales Tax Payable | Other Current Liability | 0.00 | |
| share horder's loan--john | Other Current Liability | 0.00 | share horder's loan--john |
| ACU PLASMOLD INC | Long Term Liability | 0.00 | ACU PLASMOLD INC'S LOAN |
| Capital Stock | Equity | 0.00 | Value of corporate stock |
| Dividends Paid | Equity | 0.00 | Dividends to shareholders |
| Opening Bal Equity | Equity | 0.00 | |
| Retained Earnings | Equity | | Undistributed earnings of the business |
| deposit for questionng intl pho | Income | | |
| questionng intl phone charge | Income | | |
| return borrowed fund | Income | | |
| Sales | Income | | Gross receipts from sales |
| Shipping and Delivery Income | Income | | Freight and delivery income |
| Cost of Goods Sold | Cost of Goods Sold | | |
| Freight Costs | Cost of Goods Sold | | Costs of freight and delivery for merchandise purcha... |
| Merchant Account Fees | Cost of Goods Sold | | Credit card merchant account discount fees, transacti... |
| AAMA lab test certificate | Expense | | |
| Advertising and Promotion | Expense | | Advertising, marketing, graphic design, and other pro... |
| Auto and Truck Expenses | Expense | | Fuel, oil, repairs, and other automobile maintenance ... |
| Bank Service Charges | Expense | | Bank account service fees, bad check charges and o... |
| borrow fund | Expense | | |
| Business Licenses and Permits | Expense | | Business licenses, permits, and other business-relat... |
| Cell phone | Expense | | |
| Computer and Internet Expenses | Expense | | Computer supplies, off-the-shelf software, online fee... |
| Depreciation Expense | Expense | | Depreciation on equipment, buildings and improvem... |
| Gasoline | Expense | | |
| Insurance Expense | Expense | | Insurance expenses |
| Insurance Expense:Health Insur... | Expense | | Employee health insurance premiums |
| Interest Expense | Expense | | Interest payments on business loans, credit card bal... |
| Meals and Entertainment | Expense | | Business meals and entertainment expenses, includi... |
| Mod charge | Expense | | Mod Charge of M-665, 667, 669 |
| Office Cleaning Service | Expense | | |

# EXHIBIT B

# EXHIBIT E
# HIGHLY CONFIDENTIAL AEO

The resolution of settlement agreement between John Quach and Xiao Lu Zhuo

Regarding: The agreement for John Quach's buying out Xiao Lu Zhuo's 70% of Acu Hardware USA Inc' Share.

Reason: Since Xiao Lu Zhuo and John Quach came together to found Acu plasmold USA Inc, Zhuo's with 70% share and Quach's 30' share, in 2007；and in 2016 to be incorporated in Nevada as the name of Acu Hardware USA Inc with the same percentages of share, it is now for over 14 years in business and Acu hardware USA Inc still can not find the profitable ways of business, both Xiao Lu Zhuo and John Quach reach this agreement as the terms as followings for a settlement:

1) Zhuo, Xiao Lu is willing to sell and John Quach is will to buy Xiao Lu Zhuo's 70% share of Acu Hardware USA inc at the price of USD:100.00. After the transaction, John Quach would own 100 Share of Acu Hardware USA Inc and would continue to run the business.

2) Since the start of operation to Jan 1st, 2021, Acu Hardware USA Inc has
A) the Negative profit of USD:306, 145.00 with John's sharing portion of lost of profit: USD:91, 843.00
B)On hand Inventory value: 256, 029,
C) Account Receivable balance: 5,257.00
(On book USD:61,257, Wire out total of USD:56,000.00(as of April 27th, 2021)
D) New shipment from Jiangmen Qiangdi Plastic Hardware Co Ltd between Jan 1, 2021 to April 27, 2021: USD:45,253.20.

E) John Quach 's Over-drawn balance: USD:77,000.00 with John's sharing portion:

USD:53,900.00.

F) Zhuo Xiao Lu's personal loan to ACU Hardware USA Inc in 2009: USD:8,000.00.

The above factors resulted in Acu Hardware USA Inc owing to the supplier Jiangmen Qiangdi Plastic Hardware Co Ltd un-paid debt Total: USD:674,594.00. With this agreement, John and Acu Hardware USA Inc would pay the balance to Jiangmen Qiangdi Plastic Hardware Co Ltd for his portion: USD:460,282.00. And Zhuo Xiao Lu would resolve his portion of payment USD:214,312.00 to Jiangmen Qiangdi Plastic Hardware Co Ltd by himself.

3) After signing this settlement agreement, Jiangmen Qiangdi Plastic Hardware Co Ltd would offer John Quach and or Acu Hardware USA Inc with credit limit of USD:250,000.00 to run Acu Hardware USA Inc. And the out standing balance over the credit limit, which is USD:210,282.00, John Quach and or Acu Hardware USA Inc commit to pay Jiangmen Qiangdi Plastic Hardware Co Ltd or its owner Zhuo Xiao Lu within 4 years start from year 2021, which USD:52,570.00 minimum each year. , John Quach and or Acu Hardware USA Inc would try the best to payout out standing balance to Jiangmen Qiangdi Plastic Hardware Co Ltd within 8 years starting from 2021.

Signature: John Quach                           Signature: Xiao Lu Zhuo
Date: 2021-5-18                                  Date: 2021-5-18

# EXHIBIT C

## EXHIBIT C

Factual Inaccuracies Relied Upon by Plaintiff and the Court
in the Plaintiff's Application for Sanctions

1.  Plaintiff and the court relied upon hearsay in an a unsworn email from Lanterman
    ("in a phone call between Nate, [Mr. Miller] and Mr. Quach") for its conclusion that
    Attorney Miller and Defendant's owner Alvin Zhuo had participated in Quach's
    spoilation of evidence. [Doc No. 224-1, Plaintiff's Memorandum in Support of Motion
    for Sanctions, at pgs. 15-16; Doc No. 265, Opinion, at 8 quoting from the unsworn
    Landerman email ECF No. 166 at 1 (the Opinion left out the word "Nate" and
    instead inserted "CFS")].

2.  Defendant responded with an affidavit from Alvin Zhou denying that he was involved
    in Quach's spoilation of evidence, affirming that he was "shocked when my lawyer
    told me what Quach had done," and that it would anyway (besides the immorality
    of destroying evidence) be foolish to erase the C drive on a computer which is being
    sent to a computer forensics expert specifically for the purpose of detecting
    deletions and restoring deleted data (anyone can "run words"). [Doc No. 261-1,
    Defendant's Letter to the Court, at 2; and Doc No. 261-2, Affidavit of Alvin Zhuo, at
    Paras. 2 and 6].

3.  Out of 8,462 documents responsive to Plaintiff's search words[1], Plaintiff relied upon
    a single document showing $2,814,636.19 in sales as its only documentary
    evidence supporting its claim that Defendant had not produced documents and was

---

[1]  In all but a few cases of corrupted files, the computer was entirely restored at a
cost to Defendant of over $30,000. [Doc No. 1146-2, November 3, 2021 Report of Mark
Lanterman, at Paras. 11-13].

concealing sales. [Doc No. 224-1, Plaintiff's Brief in Support of Motion for Sanctions, at 13; Doc No. 147, Plaintiff's Letter Brief in Support of Motion for Sanctions, at 3].

4.    Defendant responded with an Affidavit from Alvin Zhuo explaining that the document was part of a valuation of the company totaling the gross sales of the company for its entire 14 year life ($2,814,636.19)[2] drawn up in conjunction with a sale of the company that was consummated one month after the date of the valuation. [Doc No. 261-2, Affidavit of Alvin Zhuo, at Para. 5; Exibit A, Valuation of ACU Hardware U.S.A.: "PROFIT AND LOSS – ALL TRANSACTIONS FOR ACU" as of April 21, 2021; Exhibit B, May 18, 2021 Sale Agreement for ACU Hardware U.S.A.].

5.    Plaintiff represented that:

"The Lanterman Declaration explained that there were many QuickBooks files on the Quach computer, one of the reports for ACU Hardware USA showed millions of dollars in sales.  This is significantly more than any of the other reports."

Doc No. 224-1, Plaintiff's Memorandum in Support of Motion for Sanctions, at 13.

6.    Lanterman's Declaration does not contain these words or any words with a similar meaning. [Doc No. 156-1, November 3, 2021 Declaration of Mark Lanterman].

7.    Plaintiff represented that Lanterman had accused Defendant's computer expert of not having had access to the computer files Defendant's expert claimed to have reviewed:

"Mr. Lanterman further explains that Mr. Popkin, ACU's declarant, did not yet have access to the Quach data from Lanterman at the time Popkin made his

_____

[2] That comes out to roughly $200,000 per year in gross sales.

declaration."

Doc No. 229, Plaintiff's Reply Brief, at 5, f.n. 6.

8.    Lanterman's Memorandum does not contain these words or any words with a

similar meaning.[3] [Doc No. 229-1, Lanterman Memorandum].

9.    Plaintiff represented that the files downloaded onto USB/flash drive sticks contained

massive amounts of data. [Doc No. 229, Plaintiff's Reply Brief, at 5-6].

10.    Defendant responded with a report from its computer forensics expert Cole Popkin

showing that in fact the "files were between 100 to 500 kilobytes, about 2 to 3

pages" mostly copies.[4] [Doc No. 225-2, Popkin Report; Doc No. 224-1, at 13; and,

Doc No. 229, at 5-7].

11.    Plaintiff, citing an affidavit of Mr. Zhuo, represented that Zhuo admitted that ACU

Hardware U.S.A. had 20 sales a day. [Doc No. 224-1, Plaintiff's Memorandum in

Support of Motion for Sanctions, at 4].

12.    Defendant responded that the statement was made in an affidavit in opposition to

a Motion to Compel production of documents relating to  sales of casement and

non-casement window parts from both ACU Hardware USA and ACU Plasmatics.

[Doc No. 46, Affidavit of Alvin Zhuo, Para. 5; Doc No. 41-4, Plaintiffs Proposed

Order for a Motion to Compel Discovery].   Plaintiffs misrepresented Mr. Zhuo's

statement which was "20 sales a day" and "80,000 documents" including ACU

_____

[3]  Defendant's expert Cole Popkin accessed the files by painstaking very creative
process detailed in Defendants Sur-Reply, Doc No. 233, at 4-5.

[4]  Plaintiff's title "Quach Loaded Thousands of Financial Reports onto USB Drives,"
is not correct. [Doc No.. 229, Plaintiff's Reply, at 5].  The vast majority of the files Plaintiff
is referring to were shipping records.

Plasmatics and ACU Harware U.S.A., to mean 20 sales a day and 80,000 documents for ACU Hardware USA alone.

13.    Plaintiff and the Court concluded, based on a not under oath Lanterman email, that Attorney Miller repeatedly called CFS without the knowledge of Plaintiff, insisting on engaging in ex-parte communications concerning substantive matters besides billing, "compelled Mr. Lanterman to cease participating in this matter in December 2021." [Doc No. 265, Opinion, at pgs. 7-8, citing Mr. Lantersman's unsworn emails Doc Nos. 153 and 166].[5]

14.    Defendant responded that the real reason for Mr. Lantersman's withdrawal was Defendant's refusal to give in to his highly unusual and totally improper threat to destroy evidence unless he was paid an outrageous sum for "storage fees;" the calling was from Lanterman to Miller demanding money. [Doc No. 163 and 163-1, Defendant's letter to the Court, and email to Mark Lanterman].

15.    The court ordered Defendant to pay Mr. Lanterman the money he was demanding. [Doc Nos. 160 and 162, Orders].

16.    Defendant responded by showing that Mr. Lanterman was over-billing. [Doc No. 163, Defendant's letter to the court].

17.    Plaintiff and the court based their conclusion that, "Mr. Lanterman has displayed the highest level of proficiency, professionalism, and integrity throughout the course this

_____

[5] The section in Plaintiff's Brief in Support of Motion for Sanctions devoted to this subject is titled: *"ACU Can Not be Trusted."* [Doc No. 224-1, Plaintiff's Memorandum in Support of Motion for Sanctions, at 19]. The court concludes its discusion of the subject with: "Mr. Lanterman has stated ACU 'mislead[s] the Court.' ECF No. 166 at 2 (citing a not under oath email from Mr. Lanterman)." [Doc No.265, Opinion, at pg 8]

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\PLEADINGS\MOTIONS IN LIMINE\LANTERMAN MOTION\miller declaration\EXHIBIT C TO MILLER 4-11-25\DELARATION.wpd

Page 4 of 7

litigation, the opposite is true as regards ACU's conduct with Mr. Lanterman," on

unsworn emails from Mr. Lanterman. [Doc No. 265, Opinion, at 7 (in a section

entitled, "ACU's Misconduct with and as Revealed by Mr. Lanterman")].17.Plaintiff

and the Court drew a highly negative inference from Mr. Zhuo's changing of

attorneys - that it was part of his scheme to avoid discovery:

> "After hiring new counsel in November 2019,...ACU then
> retained another attorney, ECF No. 83-84,...ACU's pattern of
> nonfeasance and retention of new counsel persisted,"

Doc No. 265, Opinion, at 6.

18.    Defendant responded that after firing his first attorneys[6] Mr. Zhuo - who didn't know

anyone from New York - hired a lawyer from an advertizement in a Chinese

newspaper who had absolutely no litigation experience.  That lawyer referred the

case to a second Chinese lawyer who had only limited litigation experience (and no

federal court experience) so she hired a lawyer who had litigation experience to

---

[6] Plaintiff represented that Zhuo's changing of attorneys was evidence Zhuo being unhappy with their unwillingness to go along with his perjury.Doc No. 109, Reply Memorandum in Support of Plaintiff's Motion for Sanctions Against Defendant for Failure to Comply with Discovery Orders, at 5-6.

Defendant responded with an affidavit of Alvin Zhuo explaining why he fired his first attorney.  Plaintiff had accused Mr. Zhuo of owning a business with a name similar to Zhou's business name; the company is a major seller of casement window in America. [Doc No. 41-2, Affidavit of Luke Luang, at 4, Para. 6].  Mr. Zhuo had nothing to do with that business. [Doc No. 46, Affidavit of Alvin Zhuo in Opposition to Motion to Compel, at pgs. 3-4].  Mr. Zhuo lawyers told him they did not believe him.  The Court also did not believe Mr. Zhuo and issued an order to compel documents from that company. [Doc No. 53, Order].  In the end Mr. Zhuo was proven to be right (Mr. Zhuo doesn't even know any of the owners) and Plaintiff conceded that Mr. Zhuo had no ownership in the company and therefore - despite the order compelling him to prooduce - did not pursue those documents. Mr. Zhuo fired his lawyers because they didn't believe their own client. [Doc No. 110, Proposed Sur-Reply, Exhibit A, first two pages maked 4 and 5; and, Doc No. 108-1, Affidavit of Xiao Lu Zhuo, at Para. 11)].

defend the Quach deposition (just for attending the deposition, not for any preparation). [Doc No. 108-1, Affidavit of Xiao Lu Zhuo, at pgs. 3-4, Para. 11]. Quach did not receive any preparation for his deposition besides being given a date and time and a link.

19.    Plaintiff introduced the term "Quach Financials," adopted by the court in its orders, which carries within it the inherent assumption that there are thumb drives containing tens of thousands of pages in sales reports that have not been produced by Mr. Zhuo.

20.    Defendant responded by demonstrating that Quach's testimony was impossible nonsense - starting with a company office in Los Vegas which did not exist,[7] with sales reports "too big" for an email attachment which hold 10,000 - 15,000 pages of data, by producing all sorts of financial records showing that the company was a small company grossing about $260,000 a year (according to Quach!), a one man operation with no brick and mortar office or warehouse (they used storage facilities) with Mr. Quach making deliveries. [Doc No. 108 and attachments].  What Quach testified to is a reflection of a sick mind.  Mr. Quach is, unfortunately, mentally unstable.  But he is a very good man, a man who has been down on his luck his whole life because he is mentally unstable.  Mr. Zhuo empathized with Mr. Quach and that is the reason he gave Mr. Quach work.

21.    Plaintiff drew negative inferences from Zhuo continuing as a partner with Quach and

---

[7]  Defendant produced years of invoices for $5.99 a month for a virtual office with a Los Vegas address, which the company maintained through a company called "PhysicalAddress.com". [Doc No. 108-6, pgs. 1-27].

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\PLEADINGS\MOTIONS IN LIMINE\LANTERMAN MOTION\miller declaration\EXHIBIT C TO MILLER 4-11-25 DELARATION.wpd

Page 6 of  7

then, from Zhuo discontinuing the partnership:

> Nor does Zhuo state that he has since addressed this issue and fired Mr. Quach or recommended that he seek medical treatment. And, obviously, Zhuo's biased opinion concerning Quach's mental stability proves nothing about Mr. Quach and everything about Zhuo's willingness to attack his own employee rather than produce financial information.

> they are working together, as they have for more than 14 years, and as they continue to do today.

Doc No. 109, Reply Memorandum in Support of Plaintiff's Motion for Sanctions Against Defendant for Failure to Comply with Discovery Orders, at 3; Doc No. 147, at 4].

> ACU's convoluted explanations for why Quach now owns ACU and Zhou extends him enormous credit despite alleging he is 'mentally unstable' should be completely rejected.

Doc No. 229, Plaintiff's Reply to Defendant's Opposition to Plaintiff Motion for Sanctions, at 3.

22.    Defendant responded that it wasn't "extend[ing] him enormous credit" it was a

provision in the sales contract for Quach to repay his portion of the company's

losses and debts that he couldn't possibly pay now since he has no money. [Doc

No. 233, Defendant's Sur-Reply, at 3 f.n 3].

I declare under penalty of perjury that the foregoing is true and correct.


Dated: April 11, 2025                         ___/s/*Edward W. Miller*___
                                              Edward W. Miller, Esq.
                                              821 Franklin Ave., Suite 209
                                              Garden City, NY 11530
                                              Telephone: (917) 770—9016
                                              Email: edmillerlaw@gmail.com
                                              Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**