**ZAGER FUCHS, P.C.**
Michael T. Warshaw, Atty.#: 005171976
119 Avenue at the Commons, Suite 4
Shrewsbury, New Jersey 07702
Phone: (732)747-3700
Fax: (732) 758-9068
Email: mwarshaw@zagerfuchs.com
*Attorneys for Defendant ACU Plasmold, Inc.* **LOCAL COUNSEL**

**Edward W. Miller, Esq.**
821 Franklin Ave., Suite 209
Garden City, NY 11530
Telephone: (917) 770—9016
Email: edmillerlaw@gmail.com
Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

VISION INDUSTRIES GROUP, INC.,

                           Plaintiff,

            -- against --

ACU PLASMOLD, INC., ABC
COMPANIES 1-10 and XYZ
CORPORATIONS 1-10,

                        Defendants

Case No. 2:18-cv-6296 (ES) (CLW)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE EXPERT DECLARATIONS OF MARK LANTERMAN, EXCLUDE LANTERMAN'S TESTIMONY, VACATE MAGISTRATE JUDGE CATHY WALDOR ORDER FOR SANCTIONS** (Doc 266), **AND TO DISMISS WITH PREJUDICE THE REMAINING ISSUES ON PLAINTIFF'S MOTIONS FOR SANCTIONS** (Doc 104; 124; 224).

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1 of 16

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2 of 16

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3 of 16

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 16
    POINT ONE

Lanterman Has Falsified His Qualifications, Repeatedly Perjured Himself in Depositions, and Spoliated Evidence About His Background. . . . . . . . . . . . . . . . . . . . . Page 4 of 16

A. Lanterman Has Admitted That He Has No Evidence that He Attended Upsala College. . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5 of 16

B. There Is Overwhelming Evidence Showing That Lanterman Did Not Attend or Graduate From Upsala College. . . . . . . Page 6 of 16

C. Lanterman Has Repeatedly Perjured Himself, Lying Under Oath About Graduating From Upsala College. . . . . . . . Page 8 of 16

D. It Appears That Lanterman is Spoliating Evidence of His Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11 of 16

E. Lanterman Should Be Excluded for Perjury, Spoliation, and Obstructive Conduct. . . . . . . . . . . . . . . . . . . . . . Page 13 of 16

    POINT TWO

Where The Basis of a Court's Order Has Been Stricken From the Record of the Court, The Order Must Be Vacated and All Motions Based Upon Same Dismissed With Prejudice. Page 15 of 16 . . . . . . . . . . . . . . . . . . . . . . . . . . .

## TABLE OF AUTHORITIES

**Cases**

Boncher v. 3M Company, 2025 WL 511116 at *3 (E.D. Pa Feb. 14, 2025)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3 of 16, Page 4 of 16, Page 14 of 16

Alliance Laundry Systems LLC v. Trudy Adams, etc., No. 23-cv-22130 (MCR) (N. Dist. Fla., Mar. 14, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5 of 16

Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) . Page 13 of 16, Page 14 of 16, Page 16 of 16

D'Agostino v. Secretary United States Air Force, 2024 WL 1209745 at *6 (3d Cir., 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14 of 16

Kilpatrick v. Breg, Inc., 613 F.3rd 1329, 1335 (11ᵗʰ Cir. 2010) . . . . . . . . . . Page 3 of 16

Lanterman v. Afremov, No. 27-CV-12-22089, 2014 WL 3579827, at *9-10 (Minn. Dist. Ct. July 17, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10 of 16

Lanterman v. Afremov, No. A15-0729, 2016 WL 1551602, at *1 (Minn. Ct. App. Apr. 18, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10 of 16

Mosaid Technologies Inc. V. Samsung Electronics, Co., Ltd., 348 F. Supp. 2d 332, 335 (D.N.J. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13 of 16, Page 15 of 16

Quantum Commc'ns. Corp. . Star Broad., 473 F. Supp 2d 1249, 1269 (S,D, Fla. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14 of 16

U.S. v. Wilensky, 757 F2d 594, 597 (3d Cir., 1985) . . . . . . . . . . . . . . . . Page 14 of 16

United States v. Dunnigan, 507 U.S. 87, 94 (1993) . . . . . . . . . . . . . . . . Page 10 of 16

Zuniga Escamilla v. SMS Holdings Corp., No. 9-cv-02120-ADM-JSM (D. Minn. Aug 24, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5 of 16

**Rules**
Evidence Rule 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3 of 16

## INTRODUCTION

Credibility is the cornerstone of any testimony, and reliability is the methodology for determining credibility. That is the problem for Vision Industries Group, Inc., because its purported expert computer forensic examiner, Mark Lanterman, is not honest and thus not reliable.

After apparently falsifying his college attendance and college degrees, he has committed perjury by maintaining these false statements under oath. Lanterman's list of qualifications includes a claim to have attended the now closed Upsala college. The difficulty for him is that transcript records, commencement programs, and yearbooks will reflect that he did not. While not deposed in the pending matter, he has been deposed in other cases. In those, Lanterman has repeatedly insisted under oath that he graduated from Upsala, but has refused to answer (most recently in a deposition taken on February 11, 2025.) biographical questions that might corroborate his claimed attendance at the school. Even more shocking, is the fact that immediately after his deposition in that case, he contacted a prior employer and then traveled from his home in Minnesota to Springfield Township, to remove decades-old public records of his prior employment as a police officer, obstructing efforts to investigate his questionable history.

As has been noted previously, there are multiple false statements contained in Lanterman's résumé, and he has become the subject of many challenges to his credentials. An expert whose credentials are false is not an expert; he is a charlatan and cannot be allowed to offer any evidence, opinion or otherwise, in a trial that is a search for the truth. It is also noteworthy that when notified of the issues with Lanterman, Plaintiff simply characterized the problem as "...criticism of an expert in this case..."(Doc 294, at 1).

This is the same "expert" upon whom Plaintiff relied in its sanction applications. For this reason, not only must Lanterman's testimony and other input into this case be excluded, but the basis for this Court's entry of an Order for Sanctions is therefore absent and the Order for Sanctions against Defendant must be vacated and the Motion(s) by Plaintiff dismissed with prejudice.

The final "nail in the coffin" for Lanterman comes from his own submission. On April 2, 2025 he submitted an email to the Court "...withdrawing from any participation in this case." While he attributes this stance to many reasons, it is also true that he has been suspended by the Henepin County, Minnesota, Attorney's Office and Brady notices have been sent to all criminal defendants in cases where he was a government expert witness. The fact that the FBI has opened an investigation of Lanterman, the trouble he is experiencing in the Florida case, the findings of the Court in Minnesota that he was not credible and had lied to a Federal Magistrate Judge on multiple issues, further demonstrates the perfidy of Lanterman and virtually mandate that he be expelled from this case along with all of his deceitfulness.

## FACTUAL BACKGROUND

In the fall of 2021 the issue of imaging John Quach's computer was raised and agreed to by Defendant (Doc 131), with the issue of who was to pay remaining for the Court to decide. The Court, by text order, directed, *inter alia*, the Defendant to pay for the imaging. Plaintiff's counsel selected the expert to conduct the imaging, namely Mr. Lanterman, and proceeded to rely extensively upon his "findings" and other information in its submissions and motions for sanctions. (e.g. Doc 147; Doc 229-1). In each of these,

Lanterman purports to be a computer forensic investigator and his declarations and emails

and other material entered on the docket by Plaintiff purport to offer opinions about efforts

to "wipe" the Quach hard drive, the meaning of various documents, and to impugn

Defendant's counsel Miller.  These offerings are all built upon the fraudulent educational

background and qualification that Lanterman sets forth in his declarations.  As will be seen,

the lies that underpin his self-presentation render anything he offers as evidence worthless.

This Court must bar his testimony, strike any material derived from or through his efforts,

and dismiss all sanction claims against Defendant with prejudice.

## LEGAL STANDARD

Evidence Rule 702 establishes the standard by which this Court exercises its

function as gatekeeper for expert testimony.  Its duty is to prevent the entry of "speculative

[and] unreliable expert testimony."  Pineda v. Ford Motor Co., 520 F.3rd 237, 243 (3rd Cir.

2008).  Evidence Rule 702 provides the standard:

**Rule 702 – Testimony by Expert Witnesses**
A witness who is qualified as an expert by knowledge, skill, experience,
training, or education may testify in the form of an opinion or otherwise if the
proponent demonstrates to the court that it is more likely than not that:
(a) the expert's scientific, technical, or other specialized knowledge will help
the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and
methods to the facts of the case.

While Rule 702 has a liberal policy of admissibility, the expert must meet the

requirements of qualification, reliability, and fit.  Boncher v. 3M Company, 2025 WL 511116

at *3 (E.D. Pa Feb. 14, 2025).  It is the burden of the party proposing the expert witness

to "...show that each prong [of admissibility] – qualification, reliability, and fit – is satisfied

by a preponderance of proof." [Id. At 3].  Here, as will be shown, the elemental foundation, education, training, and experience cannot be reliably established, owing to Lanterman's deception, actions, and lies.

## LEGAL ARGUMENT

### POINT ONE
### Lanterman Has Falsified His Qualifications, Repeatedly Perjured Himself in Depositions, and Spoliated Evidence About His Background.

Lanterman swears under penalty of perjury that he "… Completed my postgraduate work in cyber security at Harvard University."  He says this not once, but twice: Doc 146-2 @ ¶ 4; Doc 259-1 @ ¶ 5.  The fact that he discloses no other education is a hint that he may not be fully transparent or honest in his presentation.  There is no indication of where or when he went to school to get his undergraduate degree.  It seems fundamental that one must have an undergraduate degree before one can "complete my postgraduate work..."  Further, his claim that he  "… Completed my postgraduate work in cyber security at Harvard University" is equally false.  He never attended Harvard University.

He took a single course online; he did not attend Harvard University.  That is a significant difference from "attending Harvard."  What Lanterman took was a single "online short course" administered through Get Smarter copyright in April 2018.  The program awarded a digital certificate, is worth no college credit, and there are no undergraduate prerequisites.  Registrants are advised:

> As a Harvard Online participant... You will not be considered a Harvard student.  When you earn your certificate or credential, you will not be considered a Harvard alum,

and that it should be stated on résumés, including LinkedIn, as a "certificate program," and "Harvard online."

Interestingly, he has claimed to have graduated from the now closed New Jersey college, Upsala. He has testified in various prior depositions that he received both a Bacehelor of Science and and a Master's degree in computer science. His résumé claims this, but does not disclose the dates when these claimed degrees were received. He testified on February 11, 2025 that he received them in 1987 and 1989 respectively. In other matters, he has sworn that he received the degrees in 1988 and 1990. See, e.g., Affidavit of Mark Lanterman at 10, Zuniga Escamilla v. SMS Holdings Corp., No. 9-cv-02120-ADM-JSM (D. Minn. Aug 24, 2010), Dkt. 175. It is amazing that one cannot know when they graduated from college, and one **should** know that information. In any event, none of it is true and Lanterman appears to have perjured himself in his deposition, continuing to lie about his credentials.

### A. Lanterman Has Admitted That He Has No Evidence that He Attended Upsala College.

There is no evidence beyond Lanterman's say-so that he ever attended Upsala College, and he has admitted as much. In his Feb. 11, 2025 depositon[1], he said:

```
Q. Do you have any documentary evidence
confirming your attendance at Upsala College?
A. I don't know. Not that I know of.

***
Q. ...[D]o you think that the parties in
this case should just rely on your statement that
you've attended Upsala College?
```

---

[1] Alliance Laundry Systems LLC v. Trudy Adams, etc., No. 23-cv-22130 (MCR) (N. Dist. Fla., Mar. 14, 2025), Dkt 155 and exhibits.

```
A. Well, it's the truth.
Q. And so we should just take that -- we
should just take your word for it?
A. ... That would be your decision.

***

Q. So you know where you went to college.
Right?
A. Yes.
Q. And how are we supposed to know?
A. Well, because I told you.
Q. And that's everything?
A. That's everything.
```
[Ex. 1 at 39:23-25; 41:20-42:3; 47:18-24]

Lanterman has had more than adequate time to address the lack of evidence to

support his claims regarding his education.  In the underlying case, his credential were

obviously questioned, and received a detailed request for proof of his B.S. degree from

Upsala[2].  He has failed to do that, instead testifying at the referenced deposition that he

"didn't know if" he even offered to look further for such evidence.  Ex. 1 @ 54:22-55:8.  He

claimed to have once requested his Upsala College transcripts and gave up when he

received no response.  He went on, at the deposition, to let the questioner know that he

didn't know if he would make further effort to locate any evidence of his alleged degrees

and his response was "Well, it -- I'm going to think about it.  And if I think I should, then I

will." Ex. 1 at 64:2-65:2.

### B.    There Is Overwhelming Evidence Showing That Lanterman Did Not Attend or Graduate From Upsala College.

Beyond the absence of evidence that Lanterman attended Upsala college, the

available evidence demonstrates that he did **not** attend Upsala College nor did he earn any

---

[2] Id, Dkt 155-5 at 2

degrees there. Upsala college, which permanently closed in 1995 after financial problems, the loss of accreditation, and declining enrollment, was located in East Orange, New Jersey.[34]    After the closure, student transcripts and records are housed at Felician University by the Registrar.[5]

Counsel for Laundrylux in the Florida case contacted Felician University to ask about the existence of any transcripts for Lanterman.  The office reported that "After multiple attempts to find this file, we have not been able to locate this students [sic] transcript."[6]  There is no possibility that the transcripts are maintained under a different name, since Lanterman testified that he has never used any other name.[7]

Despite his testimony on Feb. 11, 2025 that he attended Upsala College as a full-time student for six consecutive years,[8] the fact that there are no transcripts to document his attendance seems to be clear evidence that he did not attend or graduate from Upsala College.  And that is just the beginning.

Counsel for Laundrylux reviewed the Upsala College yearbooks for the academic years ending in 1987, 1988, 1989, and 1990, all maintained at the East Orange Public

---

[3] Exhibit 2

[4] Exhibit 3

[5] Exhibit 4

[6] Exhibit 5

[7] Ex. 1 at 7:19-25

[8] Ex. 1 at 29:17-31:4

Library.  Lanterman is not listed among the graduating class in **any** of the four years.[9]  His name is conspicuous by its absence from a single yearbook.

The Upsala College commencement programs are also attached for the subject years, 1987, 1988, 1989, and 1990.[10]  The programs list the graduates by degree type, such as Bachelor of Arts, Bachelor of Science, Master of Science, etc.  Lanterman is not listed among the graduates in any of the years, for any degree. The evidence is unrefuted and undeniable: Lanterman never earned any degrees from Upsala College but continues to assert falsely and under oath that he did.

And while Lanterman has sworn under oath that he attended Upsala College for six (6) consecutive years as a full-time student starting in September 1983, there is irrefutable evidence (including Lanterman's own sworn testimony in another matter) that he was actually a student at the University of Minnesota in the 1985-86 academic year.[11]

### C.  Lanterman Has Repeatedly Perjured Himself, Lying Under Oath About Graduating From Upsala College.

Despite his repeated and emphatic insistence that he attended and graduated from Upsala[12], even after being confronted with the absence of any proof that he even attended there, Lanterman could not name a single classmate with whom he attended Upsala, in his

---

[9] Exhibits 6, 7, 8, 9

[10] Exhibits 10, 11, 12, 13

[11] Exhibits 14, at 6, 15 at 6 (deposition transcript, at 8:5-11)

[12] See, e.g., Ex. 1 at 42:12-13 ("I attended a – Upsala College; I graduated from Upsala College")

alleged six (6) years as a full-time student. This conspicuous failing by Lanterman was attributed by him living with his grandparents.[13]

When Lanterman was asked to give the name of those (seemingly long since passed away) grandparents, he outright refused.[14] When asked for just the address where he claimed to have lived while attending Upsala, he still refused:

```
Q. Mr. Lanterman, can you give me the name of
any students you attended Upsala College with?
A. Well, I lived with my grandparents. I
wasn't close to many people. No.
Q. What were the names of your grandparents?
A. Why?
Q. Your -- you've told us that's who you
lived with during college. Can you give me their
names?
No. I'm not --
Q. You're --
A. -- giving you my -- the names of my
grandparents.
Q. Will you tell us the address that you
lived at during college?
A. No.
Q. You're refusing?
A. Yes.
Q. And you're refusing to tell us who you
lived with?
A. No. I told you who I lived with. I lived
with my grandparents.
Q. But you won't give me their names?
A. No.
Q. And you can't tell me the name of any
other student you attended school with?
A. No. I didn't have a lot of friends. I
```

---

[13] Ex. 1 at 269:17-20

[14] Ex. 1 at 269:21-270:19

`lived with my grandparents.`[15]

Thus, when asked for some basic biographical information that might corroborate his claim of attending Upsala College, Lanterman was unable and unwilling to do so. His lack of willingness is because there is no such information. Everyone should be able to name at least one classmate with whom they studied at a college they claim to have attended for six (6) years.

The only reasonable conclusion is that Lanterman's sworn statements about attending and graduating from Upsala College were perjured. See: United States v. Dunnigan, 507 U.S. 87, 94 (1993) (perjury occurs when a witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory").[16]

---

[15] Ex. 1 at 269:17-270:20; see also id at 33:17-34:17 (claiming that his purported diplomas were thrown away when his grandparents died).

[16]Importantly, his purported college degrees are not the only thing Lanterman has lied about under oath or deceptively sought to cover up through further false testimony. For instance, in a fee dispute in Afremov v. Lanterman, the court found that Lanterman's testimony was not credible, and that he had given false testimony in the underlying federal criminal case. Lanterman v. Afremov, No. 27-CV-12-22089, 2014 WL 3579827, at *9-10 (Minn. Dist. Ct. July 17, 2014) (noting that another witness "credibly testified that Lanterman's reputation for integrity is highly questionable and Lanterman's reputation among law firms raise serious questions about his billing practices" and concluding that "billing for computer run time is a fiction that Lanterman used to avoid the problems *created by his false testimony in federal court* that he had 11 people working full time 24 hours a day in shifts on the Afremov project for a total of 1,500 human work hours. To explain away the fact that there were not enough people working on the project to come anywhere close to account for an $800,000 bill, Lanterman later unbelievably testified that the hours were both human and computer run time." (emphasis added)). The decision in Afremov was later reversed on other grounds, but the findings about Lanterman's credibility were not disturbed. Lanterman v. Afremov, No. A15-0729, 2016 WL 1551602, at *1 (Minn. Ct. App. Apr. 18, 2016).

### D. It Appears That Lanterman is Spoliating Evidence of His Background

While it is obvious that he did not attend Upsala college, it is not clear what Lanterman was actually doing, nor where he actually was during the 6 years he supposedly attended (1983 to 1989 or 1990). It seems that his first job was as a police officer in Springfield Township, Montgomery County, Pennsylvania.[17] It is curious, but it seems this position does not appear on his résumé. It was discovered that shortly after the February 11, 2025 deposition, counsel for Laundrylux reached out to the Springfield Police Department to ask about Lanterman's employment records.[18] The response could have come from a spy movie, except that Lanterman's emails corroborate it.[19]

His deposition on February 11, 2025 was conducted remotely, with Lanterman in his home in Minnesota.[20] On February 12, with no warning, Lanterman emailed the Springfield Police Department, writing "I have a quick question regarding my personnel jacket [his file]. I assume it has likely been destroyed per the city's document retention policy. Would you mind confirming that is the case?"[21] The Chief of Police responded: "[W]e still have your personnel file ... we have always maintained files of employees who retired/resigned.[22]

---

[17] Ex. 1 at 70:19-72:9.

[18] Alliance Laundry Systems, supra, Dkt 155-1, ¶24.

[19] Ex. 16 at 3

[20] Ex. 1 at 9:19-10-2

[21] Ex. 16 at 3

[22] Ex. 16 at 2

On February 13, Lanterman wrote back, not with questions about his file, or if it reflected attendance at Upsala College.  Rather, he wanted to **see it in person**, "Would it be possible for me to stop by the station tomorrow to see it?"[23]  The Chief agreed to meet Lanterman on February 14.[24]

Three days after the deposition where it was confirmed that no proof of Lanterman's attendance at or graduation from Upsala College existed, the man who lives in Minnesota walked into the suburban Philadelphia police department asking to see his old personnel file; his reason was as shady as everything else - he had been diagnosed with a grave heart condition and was told to "get his affairs in order."  He wanted his old police personnel file to show his family about his early career.[25]  Claiming a need to catch a flight back to Minnesota, Lanterman left the department with the only copy of his file, promising to return it.[26]

As of the hearing before the Court on April 3, 2025, Lanterman has not returned his personnel file, thus preventing anyone from corroborating his claims about when he worked in the Springfield Township Police Department.[27] [28]  That an expert from Minnesota would travel to Suburban Philadelphia to steal his decades-old personnel file in order to hide his

---

[23] Id.

[24] Id, at 1-2

[25] Alliance Laundry, supra, Dkt 155-1 ¶ 24.

[26] Id.

[27] Id, at ¶ 25.

[28] Ex. 17

background is a shocking occurrence. It looks like the worst and most egregious form of spoliation and that deception alone is sufficient to exclude Lanterman and anything he has provided to the docket in this action. See, e.g. Mosaid Technologies Inc. V. Samsung Electronics, Co., Ltd., 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably forseeable litigation [citations omitted]).

### E.  Lanterman Should Be Excluded for Perjury, Spoliation, and Obstructive Conduct.

The Court has inherent power to remedy this perjury, spoliation, and obstructive conduct, by forbidding Lanterman from offering testimony in this matter. See: Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (a court has inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process"). It should by now be apparent that Lanterman is a serial perjurer. His lies are reckless, from his claims of receiving degrees from Upsala to his claims that he "completed my post graduate work in cybersecurity at Harvard University"[29] when in fact he never was admitted to Harvard at all.[30]

The inherent powers doctrine permits the Court "to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). That discretion gives the Court the ability to fashion an appropriate sanction

---

[29] Doc No. 259-1 at ¶ 5, p.2

[30] Ex. 18, May 2017 depositioin of Mark Lanterman in Lanterman v. Stillman, Fourth Judicial District Court, Minnesota, at p. 5

fot conduct that abuses the judicial process. Id, at 45. If, as here, a fruad has been practiced on the court, or that the "temple of justice" has been defiled, appropriate sanction may be imposed. Id, at 46. Nothing defiles the temple of justice more than perjury, which hides the truth, and turns the process into a contest to be won. That bastardizes the process and the system. That is not the purpose of the process nor of a trial. "A trial is not a contest but a search for the truth so that justice may be properly administered." U.S. v. Wilensky, 757 F2d 594, 597 (3d Cir., 1985); D'Agostino v. Secretary United States Air Force, 2024 WL 1209745 at *6 (3d Cir., March 21, 2024).

Lanterman has been demonstrated to be a perjurer, obstructor of the process, and a spoliator of evidence. The inherent powers doctrine seems to be most often invoked where perjury is involved, evidence is destroyed, or it is doctored. Quantum Commc'ns. Corp v. Star Broad, Inc., 473 F. Supp 2d 1249, 1269 (S.D. Fla 2007) and Federal Courts often use their inherent powers to exclude expert witnesses for less abusive conduct. See, e.g., Eastman Kodak Co. V. Agfa-Gevaert N.V., No. 02-cv-6564, 2003 WL 23101783 at *1 (W.D.N.Y. Dec. 4, 2003).

This relief is called for here, as Lanterman's perjury not only abuses the judicial processes and clouds his purported expert qualifications, but it is part of an ongoing pattern of prevarication and obfuscation that are hallmarks of Lanterman. His perjury materially damages his purported qualifications and his methods (described in the Allianc Laundry case as proprietary and not described), meaning he cannot meet the first two criteria of expert admissibilty. See: Boncher, supra.

Lanterman's spoliation of evidence reinforces this result. "Sanctions for spoliation of evidence include ... exclusion of expert testimony." Quantum Commc'ns. Corp. . Star

Broad., 473 F. Supp 2d 1249, 1269 (S,D, Fla. 2007) (Court has inherent power to punish destruction of evidence).

In this matter, the sanction is especially appropriate. Lanterman looks to have embarked on an extraordinary, unprecedented, and bad-faith campaign to suppress harmful information to his purported qualifications as an expert computer forensics examiner and to his perjured testimony about those qualifications. See, e.g. Mosaid Technologies, 348 F. Supp. 2d 25 335.

It is respectfully submitted that barring Lanterman's evidence, in all of its manifestations, whether declaration, email, conversation, or any other method, must be excluded and Lanterman barred as a witness.

## POINT TWO
### Where The Basis of a Court's Order Has Been Stricken From the Record of the Court, The Order Must Be Vacated and All Motions Based Upon Same Dismissed With Prejudice.

In this matter, plaintiff's counsel has repeatedly extended, exaggerated, and misrepresented the statements of Lanterman in its submissions to the Court, to the point that the Court relied upon them in its determination to award sanctions to Plaintiff and against Defendant.[31] The Order granting Plaintiff's sanctions motion, while not referencing the basis for the findings, was argued by Plaintiff by reliance upon the Declarations of Lanterman and various other material supplied by him and finding its way into the docket in this case. It seems apparent that Lanterman's material was critical in the Court's determination that Plaintiff was entitled to have its motion granted.

---

[31] Declaration of Edward W. Miller, 4/11/2025, Doc. 310-2

Once the Lanterman material is excluded, the inherent powers doctrine permits the Court to fashion a proper remedy. <u>Chambers v. NASCO</u>, 501 U.S. at 44-45. It is submitted that an order, where much, if not total, reliance was placed upon evidence that is subsequently excluded, the foundation of the order falls away and lacking the necessary foundation, cannot be permitted to remain in place.

## CONCLUSION

Experts can enhance their résumé; experts can exaggerate; experts are, after all, human. Such actions can be treated as "going to credibility" by a Court when the expert is challenged on these instances. However, where the expert outright lies in his résumé, lies repeatedly under oath at deposition, and goes to the extraordinary lengths that Lanterman did in this case, even to the point of spoliation of evidence, he cannot be permitted to testify. Under Rule 702, the Court must strike Mark Lanterman's declarations, emails, and any other material that he has contributed to the docket of this action, and bar him from testifying, based upon his history of demonstrated perjury. Furthermore, he has indicated to the Court, with no notice to defense counsel, that he has withdrawn from the case. He should not, at this point, be permitted to retract that withdrawal, and all of his submissions must also be excluded.

And since Lanterman must be excluded, any ruling based upon his testimony must also be vacated and any motion or other application based upon any information he provided must also be dismissed with prejudice.