NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VISION INDUSTRIES GROUP, INC.,

*Plaintiff/Appellee*,

v.

ACU PLASMOLD, INC.,

*Defendant/Appellant*.

Civil Action No. 18-6296

OPINION

May 7, 2025

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant-Appellant ACU Plasmold, Inc.'s ("ACU") appeals of two motions decided by the Honorable Cathy L. Waldor, U.S.M.J. ("Judge Waldor"): first, ACU appeals an August 21, 2024 Opinion and Order (ECF 265, "Sanctions Order"; ECF 266, "Sanctions Opinion"; and together, the "Sanctions Opinion and Order") granting Plaintiff-Appellee Vision Industries Group Inc.'s ("Vision") Motion for Sanctions (ECF 271, "Sanctions Appeal Br."); and second, ACU appeals Judge Waldor's November 19, 2024 Opinion and Order (ECF 289, "MTA Opinion and Order") denying ACU's letter application for leave to amend ACU's Answer and the Final Pretrial Order. (ECF 290, "MTA Appeal Br."). Vision opposed both appeals. (ECF 272, "Sanctions Appeal Opp."; ECF 292, "MTA Appeal Opp.") ACU filed a brief in reply to each respective opposition. (ECF 275, "Sanctions Reply"; ECF 293, "MTA Reply.") The Court has decided these appeals pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(c), and upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, ACU's appeals are **DENIED**. The Sanctions Order and MTA Order are **AFFIRMED**.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   A.  **ACU's Appeal of the Sanctions Opinion and Order**

The parties are familiar with the facts of this case, which involves contract claims relating to an Exclusive Distribution Agreement between Vision, a distributor of window parts, and ACU, a manufacturer of window parts. (*See generally* Compl., ECF 1.) This particular matter arises from ACU's separate appeals of Judge Waldor's Sanctions Opinion and Order and MTA Opinion.

The Sanctions Opinion and Order was issued following a discovery dispute over ACU's failure to produce sales reports, records and financials (together, the "Financial Documents") of its U.S. affiliate, ACU Hardware U.S.A. ("ACU Hardware")[1], and various other discovery violations. On December 11, 2023, Vision moved for sanctions against ACU for failing to comply with discovery orders.[2] (ECF 224, "Motion for Sanctions".) On August 21, 2024, Judge Waldor granted Plaintiff's Motion for Sanctions and imposed sanctions on ACU for its failure to comply with the Court's multiple orders to produce the Financial Documents. (*See* Sanctions Order; Sanctions Opinion at 5-7 (citing, *inter alia*, ECF 41, ECF 53, ECF 61, ECF 65, ECF 72, ECF 94, ECF 113, ECF 143, ECF 213.)) The Sanctions Opinion also pointed to other misconduct that led to sanctions, including ACU's failure to appear for Vision's expert's deposition and timely produce its own expert for a deposition; ACU counsel's distribution of "Attorneys' Eyes Only" documents to its client; ACU's counsel's failure to appear for a settlement conference; and ACU's lack of preparation for two final pretrial conferences. (*Id.* at 9.)

---

[1] The primary set of documents Plaintiff sought were financial documents Plaintiff alleged were in the possession of John Quach, ACU Hardware's sole employee, which the Sanctions Opinion refers to as the "Quach Financials." (*See* Sanctions Opinion at 5 n.3.)

[2] On February 5, 2021 and August 12, 2021, Plaintiff filed two separate sanctions motions (ECF 104, ECF 124.) On November 22, 2023, Judge Waldor ordered Plaintiff to file an omnibus sanctions motion incorporating all relevant proceedings. (ECF 219.) On December 11, 2023, Plaintiff filed the omnibus sanctions motion. (ECF 224.)

The Court imposed an award of counsel fees and costs for Vision for the discovery of certain financial information in Mr. Quach's possession, including its motions to compel discovery and sanctions under Fed. R. Civ. P. 37(b)(2)(C). (Sanctions Opinion at 10.) The Court also granted Vision's request to preclude at trial any information not produced by May 8, 2020. (*Id.* at 13-16.) The Court did not grant Vision's request to preclude ACU from challenging Vision's damages expert on the basis of the underlying financial information Vision's expert relies on to form opinions and from presenting testimony and/or evidence as to sales or expenses of ACU Hardware USA or ACU Plasmold. (*Id.* at 16.)

On September 4, 2024, ACU appealed Judge Waldor's decision imposing sanctions. (ECF 269, 271[3].) On September 20, 2024, Vision filed its opposition to ACU's appeal. (ECF 272.) On September 30, 2024, ACU filed its Reply to Vision's opposition. (ECF 275.)

### B. ACU's Appeal of Motion to Amend Opinion and Order

ACU also appeals Judge Waldor's November 19, 2024 Opinion and Order (ECF 289) denying its motion for leave to amend its Answer to add two new counterclaims and to amend the Final Pretrial Order. (ECF 290.)

Plaintiff filed its Complaint on April 12, 2018. (ECF 1.) Defendant filed an initial Answer on May 31, 2018. (ECF 7.) On August 29, 2018, Defendant filed a motion to amend its answer (ECF 16), which the Court granted on October 11, 2018. (ECF 20.) Defendant filed an Amended Answer and Counterclaims (the "Answer") on October 12, 2018. (ECF 22.) On May 24, 2024, ACU again filed leave to amend its Answer to add two new counterclaims: (1) fraud by Plaintiff and its owner, Luke Liang; and (2) breach of contract by Plaintiff. (ECF 247). Key to ACU's

---

[3] ACU filed its appeal on September 4, 2024 (ECF 269), but then filed an amended document on September 6, 2024 (ECF 271.) The Court treats the amended filing (ECF 271) as operative for purposes of this decision.

proposed amendments was its claim that Vision had begun manufacturing its own casement window parts. (*See* ECF 247 at 1-4.) Plaintiff submitted a letter in opposition to this request on June 4, 2024 (ECF 252), and Defendant filed a Reply (ECF 255).

Judge Waldor denied the Motion to Amend, applying the *Foman* factors[4] to determine that the motion was unduly delayed and would prejudice the opposing party. (MTA Opinion at 3.) First, Judge Waldor found that the Motion to Amend was unduly delayed. (*Id.* at 3-4.) Specifically, the Motion to Amend was made over three years after the completion of the final fact discovery deadline (*id.* at 2) and two and a half months after the final pretrial conference and the entry of the Final Pretrial Order (*id.* (citing ECF 247, ECF 252.)) Although ACU's Motion to Amend stated that ACU learned new information long after discovery was complete, warranting the amendment, Judge Waldor noted that "Defendant's letter application does not cite to any new information that it recently learned to justify its late request to amend the Answer and add new counterclaims." (*Id.* at 4.) In particular, the Court pointed out that "Defendant filed a motion in June 2022, approximately two years after the close of discovery deadlines, to reopen discovery based on these [same] suspicions," which the Court denied. (*Id.* at 4; *see also id.* at 2 (citing ECF 183.))

Second, Judge Waldor determined that there would be substantial undue prejudice to Plaintiff if the Motion to Amend was granted. (*Id.* at 5.) The Court noted that allowing the amendment would result in two entirely new causes of action and the addition of a new party to the case after the Final Pretrial Order had already been entered, which would result in "additional discovery, cost, and preparation to defend against new facts or new theories." (*Id.* at 5-6 (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). Because the Court

---

[4] The *Foman* factors are: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and (5) futility of the amendment. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

denied the Motion to Amend for undue delay and unfair prejudice, the Court did not make a determination on the second *Foman* factor, whether there was "bad faith or dilatory motive" behind Defendant's proposed amendment. (*Id.* at 6.)

On December 3, 2024, ACU appealed Judge Waldor's MTA Opinion and Order. (ECF 290.) On December 23, 2024, Vision filed an opposition to ACU's appeal. (ECF 292.) On December 30, 2024, ACU filed a Reply. (ECF 293.)

## II. LEGAL STANDARD

In a district judge's review of a magistrate judge's decision, Federal Rule of Civil Procedure 72(a) states: "[t]he district judge. . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Similarly, the Local Rules for this district provide that "[a]ny party may appeal from a [m]agistrate [j]udge's determination of a non-dispositive matter within 14 days" and the district court "shall consider the appeal and/or cross-appeal and set aside any portion of the [m]agistrate [j]udge's order found to be clearly erroneous or contrary to law." Local Civ. R. 72.1(c)(1)(A).

A district judge may reverse a magistrate judge's determination of a non-dispositive issue if it is shown to be "clearly erroneous or contrary to law" on the record before the magistrate judge. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a); Local Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function," permitted only to review the record that was before the magistrate judge). The burden of showing a ruling is clearly erroneous or contrary to law rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

5

A district court "will determine that a finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The magistrate judge's "ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)). A district court, however, will review a magistrate judge's legal conclusions *de novo*. *See Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) (citations omitted); *see also Haines*, 975 F.2d at 91 (noting that "the phrase 'contrary to law' indicates plenary review as to matters of law").

"Where a Magistrate Judge has exercised discretion, the District Court will reverse the decision only for an abuse of that discretion." *Zaarour v. Murphy*, No. 21-20782, 2025 WL 546581, at *2 (D.N.J. Feb. 19, 2025) (collecting cases). "An order awarding sanctions is considered a non-dispositive matter[.]" *Barton v. Mid-Atl. Flooring Ventures Inc.*, No. 13-4592, 2017 WL 119470, at *6 (D.N.J. Jan. 12, 2017) (citing *McCann v. Kennedy Univ. Hosp., Inc.*, 596 Fed. Appx. 140, 146 (3d Cir. 2014)). Motions to amend a complaint are also considered non-dispositive. *See Atain Specialty Ins. Co. v. Ne. Mountain Guiding LLC*, No. 16-05129, 2021 WL 2660302, at *2 n.1 (D.N.J. June 29, 2021) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998)).

## III. DISCUSSION

### A. Appeal of Sanctions Opinion and Order

The Sanctions Opinion and Order (1) imposed monetary sanctions and (2) precluded Defendant from introducing documents produced after the May 2, 2020 fact discovery deadline.[5] (Sanctions Opinion at 10-16.) ACU makes a number of arguments in favor of its efforts to reverse the Sanctions Opinion and Order. The Court finds that ACU has failed to meet its burden to show that Judge Waldor's decision was clearly erroneous or contrary to law.

#### i. Fees and Costs

Under Fed. R. Civ. P. 37, a Court must order a disobedient party to pay "the reasonable expenses, including attorney's fees, caused by the failure [to comply with a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).[6] Judge Waldor properly relied on this rule in imposing monetary sanctions. (Sanctions Opinion at 2-3.) As Judge Waldor pointed out, "ACU makes no attempt to argue that its repeated failures fall within the Rule's safe harbor." (Sanctions Opinion at 11.)

Although ACU's arguments on appeal are not completely clear, ACU appears to argue that its failure to timely produce the Financial Documents was substantially justified because Mr.

---

[5] The Sanctions Opinion and Order rejected Plaintiff's request that ACU be precluded from "challenging Vision's damages expert on the basis of the underlying financial information Vision's expert relies on to form opinions; [and] from presenting testimony and/or evidence as to sales or expenses of ACU Hardware USA or ACU Plasmold." (Sanctions Opinion at 16 (quoting ECF 224 at 25.)) ACU does not appeal this aspect of the Sanctions Opinion and Order and therefore the Court does not address it here.

[6] "'Substantial justification' requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance.'" *Kinney v. Trs. of Princeton Univ.*, No. 04-5252, 2007 WL 700874, at *5 (D.N.J. Mar. 1, 2007) (quoting *Fitz, Inc. v. Ralph Wilson Plastics, Co.,* 174 F.R.D. 587, 591 (D.N.J. 1997)).

7

Quach lied about the existence of those records at his deposition, yet Judge Waldor relied on his testimony anyway. (Sanctions Appeal Br. at 14, 17, 19-22 (citing ECF 108-1 (Declaration of Xiao Lu Zhuo.)) ACU contends that Judge Waldor improperly relied on that testimony while at the same time "reject[ing]" a declaration made by its principal that Mr. Quach's testimony about the unproduced sales data was "not based in reality" and "demonstrably erroneous." (*Id.* at 20-21; *see also* Sanctions Reply at 12-13.)

This argument does not leave the Court "with the definite and firm conviction that a mistake has been committed." *Dome Petroleum*, 131 F.R.D. at 65 (quotation omitted). Tellingly, it appears from filings that ACU only began questioning the existence of the Financial Documents over a year after the first order compelling production of those documents. (*See* ECF 53; *compare* ECF 96, *with* ECF 108-1.) ACU also admits in its Appeal Brief that Mr. Quach "wiped [his computer] clean". (Sanctions Appeal Br. at 25.) These facts alone undermine ACU's argument. Simply because those files were allegedly later recovered (*see id.*) does not "substantially justif[y]" ACU's failure to produce the documents in the first place. *See Kinney,* 2007 WL 700874, at *5.

Next, ACU also appears to argue that its failure to comply with the orders requiring it to produce the Financial Documents should be excused because the "allegedly missing documents" are (a) irrelevant and (b) non-existent (save for one group of 30 invoices). (Sanctions Appeal Br. at 9-12, 12 n.9; Sanctions Reply at 4-5, 9-12.) But as Judge Waldor explained, sanctions are warranted because ACU failed to comply with no less than *seven* orders to produce the Financial Documents at issue. (Sanctions Opinion at 10.) It matters not whether ACU agreed or disagreed with the orders to produce the Financial Documents. Judge Waldor repeatedly ordered ACU to produce the documents—at least 30 of which ACU admits did exist[7]—and ACU did not do so.

---

[7] Vision maintains that there are likely even more responsive documents that ACU has failed to produce. (Sanctions Appeal Opp. at 15-16.)

(*See* Sanctions Opinion at 10-11.) "The Court [ ] has inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Judge Waldor's decision to impose sanctions on this basis is not clearly erroneous, contrary to law, or an abuse of discretion.

The Court also agrees with the scope of fees and costs imposed. Judge Waldor ordered ACU to reimburse Vision for all fees and costs incurred in connection with (1) ACU's failures to comply with discovery obligations and court orders related to the ACU Hardware Financial Documents and (2) its two motions for sanctions, one of which was terminated by the Court. (Sanctions Opinion at 12 (citing ECF 219.))[8] These sanctions are directly related to ACU's failures to comply with Judge Waldor's orders regarding the Financial Documents, as the Third Circuit requires.[9] *See Barkouras v. Hecker*, No. 06-366, 2007 WL 777664, at *7 (D.N.J. March 12, 2007) (citing *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) ("The Third Circuit has instructed that monetary sanctions should relate directly to the expenses incurred due to the non-complying party's violation."); *State Nat. Ins. Co. v. Cnty. of Camden*, No. 08-5128, 2012 WL 960431, at *2 (D.N.J. Mar. 21, 2012) (citing *Kounelis*, 529 F. Supp. 2d at 521) ("[M]onetary sanctions are used to

---

[8] Judge Waldor did not determine the precise amount of costs and fees due from ACU to Vision. Instead, Judge Waldor ordered Vision to submit to the Court "a Certification setting forth the costs and fees it incurred in connection with (i) the discovery proceedings discussed in Section IV(a)(2) of the [Sanctions Opinion] and (ii) the instant motion [for sanctions] and ECF No. 104 and 124." (Sanctions Order at 1.) Judge Waldor further ordered Plaintiff's counsel to file a formal motion for approval of attorneys' fees within 10 days of the District Court's resolution of ACU's sanctions appeal. (ECF 285.)

[9] ACU also argues that letters Vision filed in connection with its motions to compel should be exempt from the fees and cost analysis, and holding otherwise is contrary to law. (Sanctions Appeal Br. at 32-33; Sanctions Reply at 14.) However, as stated in the Sanctions Opinion, Vision was forced to write letters after moving to compel because of ACU's protracted discovery failures, *i.e.*, issues related to the motion to compel. Therefore, Judge Waldor's reliance on *AdvanSix* was appropriate. (*See* Sanctions Opinion at 12 (quoting *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 221-07962, 2023 WL 6297845 (D.N.J. June 20, 2023), *reconsideration denied*, No. 221-07962, 2023 WL 5288048 (D.N.J. Aug. 17, 2023) ("[I]f a discovery dispute is resolved short of a motion to compel, nothing relating to it is compensable. If not, everything is fair game.")).

compensate a party for the time and effort it was forced to expend in an effort to obtain discovery to which it was entitled"). The Court affirms the monetary sanctions.

### ii. Preclusion of Documents

The Court also affirms Judge Waldor's decision to preclude Defendant from introducing documents produced after the May 2, 2020 fact discovery deadline. Judge Waldor's decision to preclude ACU from introducing documents produced after the May 2, 2020 fact discovery deadline was based on Fed. R. Civ. P. 37(c)(1), which states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court agrees with Judge Waldor that ACU failed to present an argument that its actions were substantially justified or harmless. (Sanctions Opinion at 13-16; *see supra* Section III.A.ii.)

Instead, ACU argues that "the May 8, 2020 date is arbitrary and, to the extent it includes productions ordered after that date, erroneous." (Sanctions Appeal Br. at 31.) The problem with ACU's argument is that the orders it cites in support of this point all relate to the Financial Documents. In other words, ACU's argument is circular; it complains that Judge Waldor's order precludes its introduction of the precise set of documents that ACU is sanctioned for failing to timely produce.[10] The Court also agrees with Judge Waldor's finding that ACU's non-compliance

---

[10] ACU also argues that the Sanctions Opinion and Order "would unfairly also preclude ACU from using documents that did not even exist as of May 8, 2020, such as the sales summaries addressed above (in the context of the 30 sales invoices)." (Sanctions Appeal Br. at 31.)  In its Reply, however, ACU argues that "there were no documents produced after the ruling granting the motion to compel documents on September 29, 2019" and the "only additional documents" (the 30 invoices) would "anyway not be evidence because there is no claim for breach of the exclusivity clause." (Sanctions Reply at 14.) ACU's arguments on appeal are unclear. The Court cannot assess whether or not ACU is appealing this aspect of Judge Waldor's Opinion and Order and whether ACU even plans to introduce any of those documents at trial. Because the basis of ACU's objection (if any) is unclear, the Court may in its discretion (and if ACU so requests at trial), allow ACU to renew this objection at trial on a document-by-document basis for any particular documents it seeks to introduce at trial.

10

was not harmless. (*See* Sanctions Opinion at 13-15.) Judge Waldor relied on the proper standard in assessing harm and determined that Vision was prejudiced by ACU's non-compliance and ACU acted in bad faith. (*See id.* at 13-14 (quoting *D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2006 WL 1644742, at *12-13 (D.N.J. June 8, 2006) ("[T]he relevant factors [in assessing harm] 'include prejudice or surprise to a party against whom evidence is offered, the ability to cure the prejudice, likelihood of disruption to trial, and bad thorough analysis of faith.'")) ACU's arguments that Vision was not prejudiced and ACU did not act in bad faith[11] are unconvincing in light of prior related filings in this case. (*See, e.g.*, ECF 96 (December 9, 2020 letter from Defendant's counsel representing that Defendant's then-attorney would "comply with Your Honor's order and produce the Quach Financials by December 10, 2020.")

The Court therefore finds that Judge Waldor's decision to preclude Defendant from introducing documents produced after the May 2, 2020 was not clearly erroneous, contrary to law, or an abuse of discretion. *See D&D Assocs.*, 2006 WL 1644742, at *7 (affirming preclusion of expert report on appeal from magistrate judge decision).

### iii. ACU's Motion in Limine

On April 11, 2025, ACU filed a motion in limine to (a) strike expert Mark Lanterman's declarations; (b) exclude Mr. Lanterman's testimony; (c) vacate the Order for Sanctions (ECF 266); and (d) dismiss with prejudice the remaining issues on Plaintiff's Motions for Sanctions. (ECF 315, ECF 316, the "Lanterman MIL".) Although further briefing on the Sanctions Order was not explicitly permitted by the Court (*see* ECF 310), the Court addresses the Lanterman MIL here

---

[11] For example, ACU asserts in its Reply that "all the documents relating to ACU Hardware USA's U.S. sales had been produced before the motion to compel was granted" (Sanctions Reply at 5-6 n.5) and that the entire case is actually a "pre-emptive strike" by Plaintiff to avoid a breach-of-contract suit by Defendant. (*Id.* at 6-7.)

11

to the extent it is functionally a sur-reply in further support of ACU's appeal of the Sanctions Opinion and Order.[12]

The parties engaged Mr. Lanterman in mid-2021 to conduct a forensic analysis of Mr. Quach's computer to address two issues relevant to the underlying dispute here: (1) ACU's contention that information from Mr. Quach's computer was never loaded onto USB drives and sent to Mr. Zhou (as Mr. Quach had testified) and (2) mass deletions of data from Mr. Quach's computer. (Sanctions Opinion at 7.) The Court ultimately ordered Mr. Lanterman to directly produce copies of all the imaging he performed on Mr. Quach's computer to both parties. (ECF 213.)

In the Lanterman MIL, ACU argues that Mr. Lanterman falsified his qualifications, committed perjury, and destroyed evidence about his background. (Lanterman MIL at 4-13.) ACU further argues that because Mr. Lanterman's evidence was "critical to the Court's determination" granting Plaintiff's motion for sanctions, the "foundation of the [sanctions] order falls away" and "cannot be permitted to remain in place." (*Id.* at 16.)

The Court rejects ACU's argument to vacate Judge Waldor's Sanctions Order based on Mr. Lanterman's alleged misconduct for one simple reason: Judge Waldor did not rely on Mr. Lanterman's representations in the Sanctions Opinion and Order. The Sanctions Opinion states that "Mr. Lanterman's reports have revealed that ACU has engaged in deleting data from Mr. Quach's computer" and that an email from Mr. Lanterman to ACU's counsel indicates that ACU's counsel advised Mr. Quach to delete files before his computer was imaged. (Sanctions Opinion at

---

[12] The Court is not issuing an opinion here on ACU's other arguments in the Lanterman MIL, including ACU's arguments that the Court should strike Mr. Lanterman's declarations and exclude Mr. Lanterman's testimony. Relatedly, the Court heard limited testimony at trial on May 6, 2025 from Mr. Quach's deposition regarding Financial Documents in Mr. Quach's possession and from Defendant's expert, Cole Popkin, regarding electronically stored information from Mr. Quach's laptop and the use of USB drives. (*See also* ECF 324-1 (Popkin Digital Forensics Report.)) Their testimony is immaterial to the Court's findings herein and therefore the Court does not consider either.

8-9.) The Sanctions Opinion noted, however, that the discussion of Mr. Lanterman's report and ACU's deletion of data from Mr. Quach's computer were "secondary to the Court's determination on Vision's motion and ***are being offered primarily to provide color to ACU's actions***." (Sanctions Opinion at 8 n.7 (emphasis added.)) Moreover, Judge Waldor imposed monetary sanctions "for all fees and costs incurred in connection with the events described in Section IV(a)(2) [of the Sanctions Opinion]" (*id.* at 12)—specifically excluding the misconduct revealed by Mr. Lanterman, which was discussed in a different section of the Opinion. Finally, neither ACU's appeal brief nor the Lanterman MIL dispute that the 30 responsive documents discovered in Mr. Lanterman's forensic analysis of Mr. Quach's computer existed.

### iv. Disclosure of Attorneys' Eyes Only Documents

Lastly, ACU argues that Judge Waldor improperly considered ACU's counsel's release of documents labeled "Attorneys' Eyes Only" ("AEO") to his client in imposing sanctions. (Sanctions Appeal at 33-34.) ACU characterizes the disclosure as a "harmless mistake" that does not warrant sanctions. (*Id.*; Sanctions Reply at 14-15.) Based on the facts of this case, here "inadvertence is not a substantial justification" for the disclosure of AEO documents. *Trowery v. O'shea*, No. 12-6473, 2015 WL 9587608, at *6 (D.N.J. Dec. 30, 2015) (finding that inadvertence alone did not substantially justify party's failure to produce documents under Rule 37(c)(1)).

For the foregoing reasons, ACU fails to satisfy the burden of demonstrating that Judge Waldor's Sanctions Order was clearly erroneous or contrary to law. *See Marks*, 347 F. Supp. 2d at 149. To the contrary, ACU's appeal only confirms that it failed to comply with Judge Waldor's multiple orders to produce documents and that such failure was not substantially justified or harmless. To that end, ACU also fails to satisfy the more deferential abuse of discretion standard in the context of the sanctions award. *See Callas*, 2019 WL 449196, at *2.

13

### B. Appeal of Motion to Amend Opinion and Order

ACU separately appeals Judge Waldor's decision denying its Motion to Amend its Answer. Motions to amend are governed by Rule 15, which provides that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision of whether to grant leave to amend a pleading is "a matter committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

The sanctions order was premised on the Court's conclusion that ACU was unduly delayed in filing its Motion to Amend and Plaintiff would be prejudiced if the Court granted the motion. (MTA Opinion and Order at 3-6.) On appeal, ACU takes issue with both factors.

As to undue delay, ACU contends that the "sole reason" for Judge Waldor's denial was undue delay resulting in prejudice to Plaintiff, yet undue delay alone is an insufficient ground to deny a motion to amend. (MTA Appeal at 2-3 (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984); *Bjorgung V. Whitetail Resort, LP*, 550 F.3d 263 (3rd Cir. 2008)). However, ACU mischaracterizes the MTA Opinion, which was based in a finding of both undue delay and unfair prejudice, not undue delay alone. (*See* MTA Opinion and Order at 3-6.)

ACU also argues that there was no undue delay. (*See* MTA Reply at 3.) ACU attempts to distinguish the facts here from two cases relied upon in the MTA Opinion: *Bjorgung* and *Omodunbi v. Gordin and Berger, P.C.*, No. 17-7553, 2022 WL 1115276 (D.N.J. April 14, 2022). ACU contends that, unlike the facts in those cases, ACU did not have all the information it needed to add its new counterclaims at an earlier date. (MTA Appeal Br. at 3-5; MTA Reply at 3-5.) But

nothing in ACU's appeal calls into question Judge Waldor's conclusion that ACU had the information it needed to file the new counterclaims long before it did. (*See* MTA Opinion and Order at 4.) In fact, in its Appeal Brief, ACU agrees with the finding in the MTA Opinion that it "first learned that Plaintiff was selling casement parts in June, 2022," nearly two years before its Motion to Amend. (MTA Appeal Br. at 4.) ACU contends, however, that "[b]ecause Plaintiff will not tell him, to this day, Defendant is not 100% certain that Plaintiff is manufacturing its casement parts." (*Id.* at 4-5.) In other words, ACU admits on the face of its appeal brief that it has learned no new information since June 2022 that would warrant filing its request for leave to amend its Answer nearly two years later—and over two and a half months after the final pretrial conference and the Court's entry of the Final Pretrial Order. (MTA Opinion and Order at 2.) This was the exact basis for Judge Waldor's finding that ACU was unduly delayed in filing the Motion to Amend.

As to the prejudice factor, ACU contends that "[t]he [Motion to Amend] decision provides no guidance on what kind of 'prejudice' resulted by virtue of the motion having been filed on May 30, 2024, rather than after the denial of Defendant's motion to reopen discovery was denied on December 23, 2022." (MTA Appeal Br. at 5.) This is incorrect. The MTA Opinion details how granting the Motion to Amend would "result in additional discovery, cost, and preparation to defend against new facts or new theories" and "unnecessarily burden the Court and delay an efficient resolution on the merits." (MTA Opinion at 6 (quoting *Cureton*, 252 F.3d at 273, *Omodunbi*, 2022 WL 1115276, at *9.)) Finally, in its appeal, ACU "rehashes the same arguments denied by the Magistrate Judge, expecting a different result." *Omojola v. ARC of Ocean Cnty.*, No. 19-20354, 2022 WL 1055482, at *4 (D.N.J. Mar. 16, 2022) (denying appeal of magistrate judge

15

opinion and order). Based on the record before the Court, I do not find that Judge Waldor's decision was clearly erroneous, contrary to law, or an abuse of discretion.[13]

### IV.    CONLCUSION

For the reasons stated above, ACU's appeals of the Sanctions Opinion and Order and the MTA Opinion and Order (ECF 271, ECF 290) are **DENIED**. The Sanctions Opinion and Order and MTA Opinion and Order are **AFFIRMED.** An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Cathy L. Waldor, U.S.M.J.
       Parties

---

[13] ACU appears to also argue that Judge Waldor made a legal error, but Judge Waldor's finding that ACU should have sought to amend its Answer earlier is a finding of fact reversible only for clear error. *See Wag Acquisition, LLC v. Gattyan Grp. S.a.r.l.*, No. 14-2832, 2020 WL 5105194, at *4 (D.N.J. Aug. 31, 2020) (citing *Everplay Installation Inc. v. Guindon*, 471 F. App'x 812, 818 (10th Cir. 2012)). Based on the foregoing, the Court does not find that Judge Waldor's decision was made in clear error.