ZAGER FUCHS, P.C.
Michael T. Warshaw, Atty.#: 005171976
119 Avenue at the Commons, Suite 4
Shrewsbury, New Jersey 07702
Phone: (732)747-3700
Fax: (732) 758-9068
Email: mwarshaw@zagerfuchs.com
*Attorneys for Defendant ACU Plasmold, Inc.* **LOCAL COUNSEL**

Edward W. Miller, Esq.
821 Franklin Ave., Suite 209
Garden City, NY 11530
Telephone: (917) 770—9016
Email: edmillerlaw@gmail.com
Attorneys for *Defendant ACU Plasmold, Inc.,* **TRIAL COUNSEL**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

VISION INDUSTRIES GROUP, INC.,

              Plaintiff,      Case No. 2:18-cv-6296 (ES) (CLW)

    -- against --

ACU PLASMOLD, INC., ABC COMPANIES 1-10 and XYZ CORPORATIONS 1-10,

              Defendants

_____

_____

**DEFENDANT'S REPLY BRIEF TO PLAINTIFF'S PROPOSED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
_____

# TABLE OF CONTENTS

**COUNTER-FACTUAL CONTENTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1 of 10

**LEGAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

    **POINT ONE**

        **THERE IS NO JUDICIAL ADMISSION BY DEFENDANT; PLAINTIFF'S BURDEN TO PROVE CONTRACT NEVER CHANGES; CONSTRUCTION OF AMBIGUITIES IN THE CONTRACT MUST GO AGAINST THE PLAINTIFF, AS DRAFTER OF THE CONTRACT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of 10

    **POINT TWO**

        **VISION'S ACTIONS DEMONSTRATE BAD FAITH; TERMINATION OF THE PURPORTED CONTRACT WAS PRECIPITOUS, UNJUSTIFIED, AND NOT DONE IN GOOD FAITH** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6 of 10

    **POINT THREE**

        **PLAINTIFF'S "JUST IN TIME" INVENTORY PRACTICES DEMONSTRATE THE FALLACY IN ITS DAMAGE ARGUMENTS; THE ABSENCE OF ANY ORDERS PLACED AFTER OBTAINING QUOTATIONS MEANS THAT THERE WAS NEVER ANY ORDER FROM THE PURPORTED CUSTOMERS** . . . . . . . . . . . . . . . . . . Page 7 of 10

    **POINT FOUR**

        **PLAINTIFF'S DAMAGE CLAIMS ARE NOT REASONABLY FORSEEABLE AND MUST BE DENIED. INTEREST, LIKEWISE, IS INAPPROPRIATE IN THIS CASE.** . . . . . . . . . . . . Page 8 of 10

# TABLE OF AUTHORITIES

**Cases**

Bak-A-Lum Corp. Of America v. Alcoa Bldg. Products, Inc., 69 N.J. 123
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6 of 10, Page 9 of 10

Coyle v. Englander's, 199 N.J. Super 212 (App. Div. 1985) . . . . . . . . . . . . . . . . . . Page 9 of 10

i

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\POST TRIAL MATERIALS\POST TRIAL BRIEF\REPLY TO PLAINTIFF\DEFENDANT'S REPLY TO PLAINTIFF[3].wpd

Danon v. Vanguard, 2018 WL 5785432 (E.D.Pa. 2018) . . . . . . . . . . . . . . . . . . . . . . Page 5 of 10

Glick v. White Motor Co., 458 F2d 1287 (3d Cir. 1972). . . . . . . . . . . . . . . . . . . . . Page 5 of 10

Graziano v. Grant 326 N.J. Super. 328, 340 (App. Div. 1999) . . . . . . . . . . . . . . . . . Page 6 of 10

Iacono v. Toll Bros., 223 N.J. Super. 87, 93 (App. Div. 1988) . . . . . . . . . . . . . . . . . Page 6 of 10

Sanders v. Reid, 131 N.J. Eq. 407, 412 (Ch. 1942) . . . . . . . . . . . . . . . . . . . . . . . . . Page 6 of 10

Sons of Thunder v. Borden, Inc., 148 N.J. 396 (1997). . . . . . . . . . . . . . . . . . . . . . . Page 9 of 10

Totaro, Duffy, Cannova and Company, LLC v. Lane, Middleton, 191 N.J. 1 at 14 (2007) Page 9 of 10

**Statutes**

**Other Authorities**

ii

## COUNTER-FACTUAL CONTENTIONS

In its Proposed Findings of Fact and Conclusions of Law Plaintiff continues to cherry-pick a single sentence or word, take it totally out of its context and misrepresent its meaning.

Plaintiff plays a twice discredited card stating as a fact that: "115. Also on January 19, 2018, ACU advised Vision by email that ACU would no longer supply any hardware for Vision. (P169; Liang, Tr. 135:2-7)." [Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 13 para. 115; debunked at T1, 45:10 to 21, T4, 630:19 to 631:16]. The words: "We won't supply any hardware for you" are plucked from the middle of an email from Mr. Zhuo's China factory that concluded with "Please contact our Canada headquarters for all your new orders." Taken in context the intended meaning is obviously, "we won't take any orders from you, in the future make all your orders with our Canada headquarters."[1]

Next, Plaintiff takes the words - "too small" - totally out of context and misrepresents it as saying that the only reason Defendant declined to accept the two orders in January was because they were "too small." [Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 13 para. 112]. But "too small" is just part of a longer sentence in which Defendant explained its reason for declining to accept the two orders (in trial testimony and in writing at the time): "it's not in stock and it's **too small** to justify a special run" and "there is no stock in our company so we cannot produce for this order." [T3, 504:3 to 7, D-5, D-7 (emphasis added)].[2]

---

[1] This was perfectly permissible under the Agreement, because the Agreement provides that the order should be made to either the China factory or the Canada headquarters.

[2] Here, Plaintiff cites Mr. Zhuo's testimony for ACU for declining the January 2018 orders because the orders were "too small." [Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 13 para. 112]. But examination of the cited testimony shows that Mr. Zhuo was asked whether or not the order was declined and he answered in the affirmation - no reasons were given or discussed.

Here, unlike the first misrepresentation set forth above, Plaintiff's misrepresentation is not fatal to Defendants defense. Defendant had a right to decline orders if there was a reason to do so. Regular non-sample orders for $600 and $3,500 were too small to make any business sense (especially given that they the first orders after a half year of no contact). However, by cutting out the main reason (that the items were not in stock and a special run would have cost far more than any profit that could be made in the transaction) Plaintiff weakens Defendant's defense.

Plaintiff next miss-cites Mr. Zhuo's testimony. Plaintiff represents that Mr. Zhuo testified: "[O]n January 19, 2018, ACU advised Vision by email that ACU would no longer accept orders from Vision without a renegotiation of the agreement. (P169; Zhuo, Tr. 560:6-10)." [Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 13 para. 114]. In fact, Mr. Zhuo specifically indicated that he did not desire "renegotiation of the agreement." (Q. "So orders in the future would require a renegotiation of the agreement. Correct?" A. "It's discussion, **not negotiate**."). [T3, 560:6 to 8].

Plaintiff did not ask Mr. Zhuo what needed to be discussed. But it is obvious what needed to be discussed. Plaintiff had made less than $10,000 in orders over the first two years of the Agreement. When after six months of total silence Plaintiff submitted two orders, they were tiny orders for "isolated items" which Defendant did not have in stock, with the wrong prices. [D-9]. Evidently, Plaintiff intended to use ACU as a source "for some of the hard to manufacture components of casement window hardware." [Plaintiff's words from T3, 613:6 to 21, and Doc No. 246, Pretrial Order, Plaintiff's Contested Facts, at 12 para. 3]. Something was terribly wrong and the smoke needed to be cleared - of course it was necessary for Mr. Liang to have a "discussion" with Mr. Zhuo.

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\POST TRIAL MATERIALS\POST TRIAL BRIEF\REPLY TO PLAINTIFF\DEFENDANT'S REPLY TO PLAINTIFF[3].wpd

Page 2 of 10

Plaintiff also leaves a false impression that Defendant did not supply Plaintiff with samples on August 18, 2017. Plaintiff creates the impression by setting forth all the correspondence between the parties in which Defendant objects to the size of the order ($606.50), but leaves out the fact that in the end Defendant supplied the samples despite Defendants objections. [Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 12 paras. 104 to 109; Defendant's Proposed Findings of Fact and Conclusions of Law, at 8 para. 40].

Plaintiff presents one fact to show that Vision informed Mr. Zhuo of potential sales of casement parts, i.e., a June 29, 2017 email in which Mr. Liang spoke of 20 potential customers for casement parts. Almost three-quarters of a year went by without any word from Plaintiff about any of the 20 potential customers. That supported Defendant's loss of hope for any meaningful sales to Plaintiff. [Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 12 para. 103; Defendant's Proposed Findings of Fact and Conclusions of Law, at 6 para. 29, and, 8 para. 41 (See: cited transcript)].

In regards to the price increase, Plaintiff throws together two misrepresentations of fact and a misstatement of the burden of proof:

\*	First, that it was a "20 to 30% increase" in key components. It was actually a 14% to 22% increase in key components over ACU's original 2016 price list. [Defendant's Proposed Findings of Fact and Conclusions of Law, at 9 paras. 45 and 47].
	According to Mr. Liang's testimony that the industry norm was annual price increases ranging "from 3% to 7 or 8%" [T1, 204:3-10] and given that the 2018 increase was the first price increase in two years, a typical expected price increase would have been between 6% to 16%, leaving the purportedly "excessive" part of the increase at between 6% to 8%.

\*	Second, that Plaintiff "did not receive any similar increases (i.e. 20% to 30%) from any of its other suppliers." As established in the beginning of Mr. Liang's cross examination, Plaintiff's "supplier" or "vendor" is its own China factory for whom Mr. Liang signed the Agreement and to which Mr. Liang referred as "my factory in China." Plaintiff is a manufacturer - distributer, who manufactures the product it distributes. Also, of course there

were no similar 20% to 30% price increases since those increases were off a heavily discounted price which had been cut down even further in 2017 for Plaintiff at Plaintiff's request.

* Third, Plaintiff states: "ACU never produced any documentary evidence that any ACU customer paid the same or higher prices that the increased prices it provided to Vision." [Defendant's Proposed Findings of Fact and Conclusions of Law, at 14 para. 123]. In a breach of contract case it is the plaintiff who has the burden to prove that Defendant breached the contract, not the Defendant who has the burden to prove that it did <u>not</u> breach the contract. Also, ACU Plasmold in Canada was not bound by the best price guarantee; it was the Jiangmen Qiangdi Plastic Company Ltd. factory in China which was required to give Vision "a price no greater than the best price Supplier's Factory provides its largest customer." [P-1, at pg. 5, Section 5.1 Prices to Distributor]. Also, breach of the best price guarantee was never pled in Plaintiff's complaint.

Plaintiff's footnote 2 on p. 21 of its submission is also a mis-statement of what the contract says. There was no condition or limit on Vision's ability to use a different supplier or to manufacture its own parts. Liang appears to acknowledge as much, in his effort to offer an explanation that seems to add terms to the Agreement. As the Agreement itself states:

> **11.8 Entire Agreement.** This Agreement constitutes the entire understanding and contract between the parties and supersedes any and all prior and contemporaneous, oral or written representations, communications, understandings, and agreements between the parties with respect to the subject matter hereof. The parties acknowledge and agree that neither of the parties is entering into this Agreement on the basis of any representations or promises not expressly contained herein. (P-1, ¶ 11.8 @ p. 11).

Plaintiff's footnote 2 directly contradicts this language, as does much of Mr. Liang's trial testimony.

## LEGAL ARGUMENT

### POINT ONE
### THERE IS NO JUDICIAL ADMISSION BY DEFENDANT; PLAINTIFF'S BURDEN TO PROVE CONTRACT NEVER CHANGES; CONSTRUCTION OF AMBIGUITIES IN THE CONTRACT MUST GO AGAINST THE PLAINTIFF, AS DRAFTER OF THE CONTRACT

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\POST TRIAL MATERIALS\POST TRIAL BRIEF\REPLY TO PLAINTIFF\DEFENDANT'S REPLY TO PLAINTIFF[3].wpd

Page 4 of 10

Plaintiff argues that ACU has admitted a contract and therefore there is no opportunity to discuss its burden of proof, relying upon <u>Glick v. White Motor Co.</u>, 458 F2d 1287 (3d Cir. 1972). That case was noted by the Court in <u>Danon v. Vanguard</u>, 2018 WL 5785432 (E.D.Pa. 2018):

> The judicial admissions in Glick refer to the acceptance at trial of the authenticity of exhibits. Id. The situation is not analogous as the procedural posture is not comparable between the two cases. Glick held "that the plain and unequivocal acceptance at trial" of the authenticity of "exhibits constitutes a binding admission by" the party, and that party could not disavow those trial admissions on appeal. Id.

So too in this case. Defendant admits and has admitted that the purported contract drawn by Liang, on Plaintiff's behalf, was the document that he understood to be an Exclusive Distribution Agreement. However, ACU has not admitted a legally binding contract exists and Vision has never lost the obligation to prove the elements of a contract, including consideration, are present in this case. Despite its argument in I(b) @ p. 19 of its submission, Plaintiff offers no law or facts in support of its argument that ACU has waived any rights regarding the right to contest the existence of the purported contract due to lack of an element.

Insofar as any ambiguities that may exist, the law is clear that when "[t]here are passages of doubtful purport, but the instrument is of the defendant's drafting and ambiguities are to be taken most strongly against him. <u>Jennings v. Pinto</u>, 5 N.J. 562, 569 (1950). So too in this case - as the drafter of the purported contract, any questions of meaning arising from ambiguities or less than precise clarity are to be taken most strongly against Vision and Liang, As such, there is no question but that the absence of any enforceable obligation on Vision's part renders the purported contract void as lacking consideration due to the illusory promise found within it.

**POINT TWO**
**VISION'S ACTIONS DEMONSTRATE BAD FAITH;**
**TERMINATION OF THE PURPORTED CONTRACT WAS**

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\POST TRIAL MATERIALS\POST TRIAL BRIEF\REPLY TO PLAINTIFF\DEFENDANT'S REPLY TO PLAINTIFF[3].wpd

Page 5 of 10

### PRECIPITOUS, UNJUSTIFIED, AND NOT DONE IN GOOD FAITH

Vision introduced P-117, a November 2015 email from Mr. Zhuo to Mr. Liang, in which Mr. Zhuo confirmed and agreed with Mr. Liang's expressed "...need to work closely for the issues for the future's cooperation." (T1, 76:9 to 22). Despite that acknowledgment of the need to work closely, there is not a scintilla of evidence that demonstrates any effort by Vison to "work closely" with ACU. In fact, ACU, in August 2017, told Vision of its difficulties working with Vision. (¶ 39, Defendant's Brief). Vision never responded. In December 2017, ACU sent its prices for 2018. Liang expressed outrage at the prices, to his company and to his employees. He said nothing to Zhuo nor to any ACU personnel.

If it was necessary to "work closely," why was there no response from Vision? The silence from Vision carries implications. It has long been the law in New Jersey that silence can constitute consent, if there is a duty to speak. See: e.g.: Sanders v. Reid, 131 N.J. Eq. 407, 412 (Ch. 1942); Iacono v. Toll Bros., 223 N.J. Super. 87, 93 (App. Div. 1988); Graziano v. Grant, 326 N.J. Super. 328, 340 (App. Div. 1999).

After half a year of no orders or communications, the only response from Vision was to send two tiny orders using outdated prices. Then, rather than contacting Mr. Zhuo to discuss his supposed concern of the declining of the tiny order, Mr. Liang responded with a "Pending Lawsuit" email, informing Mr. Zhuo that the matter was in the hands of Vision's lawyers. (D-9).

Nor did Mr. Liang respond to Mr. Zhuo's February 14, 2018 email, inviting further discussion other than a "see you in court." (D-9, T3, 478:4 to 14; DB ¶ 51).

As noted by Judge Conford in Bak-A-Lum Corp. Of America v. Alcoa Bldg. Products, Inc.,

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\POST TRIAL MATERIALS\POST TRIAL BRIEF\REPLY TO PLAINTIFF\DEFENDANT'S REPLY TO PLAINTIFF[3].wpd

Page 6 of 10

69 N.J. 123, at 130: "While the contractual relation of manufacturer and exclusive territorial distributor continued between the parties, an obligation of reciprocal good-faith dealing similarly persisted between them." In keeping secret its intent to terminate the contract prior to its end date, the court noted that Alcoa acted in bad faith by "the selfish withholding . . . of its intention. . ." predicated on its continuation constituted a breach of the implied covenant of good faith. Here, the Plaintiff engaged in a similar "selfish withholding" in failing and/or refusing to respond to ACU's communications and requests for further discussion. Instead of engaging with ACU, Vision unilaterally terminated the purported contract. That is bad faith.

ACU indicated its desire to continue the relationship with Vision in Mr. Zhuo's responsive email to Liang's "Pending Lawsuit" email, but Liang was adamant. (D-9). As explained in Defendant's closing, this had absolutely nothing to do with business.

### POINT THREE
### PLAINTIFF'S "JUST IN TIME" INVENTORY PRACTICES DEMONSTRATE THE FALLACY IN ITS DAMAGE ARGUMENTS; THE ABSENCE OF ANY ORDERS PLACED AFTER OBTAINING QUOTATIONS MEANS THAT THERE WAS NEVER ANY ORDER FROM THE PURPORTED CUSTOMERS

Plaintiff has testified and argued, with apparent pride, and at great length, about its "one-of-a-kind," industry leading inventory and stocking practices. (T1, 34:22 to 33:3; 61:7 to 12; 62:16 to 19; 63:22 to 23; 64:2 to 3; 64:13 to 18; 64:21 to 65:3; 104:13 to 20; 165:9 to 20; 216:2 to 6; T2, 237:3 to 22; 241:11 to 17; 253:3 to 254:5; 254:16 to 255:2). Almost every witness for Vision testified about this and the "stocking program that is unparalleled to none." (T2, 237:16 to 17).

The process that Vision followed was that the quotation (P-91 to P-101) was issued, the next step was to order inventory; once that was in place, the purchase orders were placed, Ms. Prignano

T:\MTW\cases\ACU PALUSMOLD - ZHUO, ALVIN - ED MILLER\POST TRIAL MATERIALS\POST TRIAL BRIEF\REPLY TO PLAINTIFF\DEFENDANT'S REPLY TO PLAINTIFF[3].wpd

Page 7 of 10

said that the only reason for a quotation not to become a purchase order was because the product was not in inventory. (T2, 241:11 to 17). Given that some of the dates on the quotations produced by Vision were as early as July 2015, and July 2017. (T2, 242:5 to 23), it seems only logical, given Vision's claims about its method of operating its inventory and stocking program, that a number of orders should have been placed with ACU for many casement hardware sets, amounting to hundreds of thousands of dollars, so that it could operate its inventory and stocking magic. Once the products were in inventory, the quotations would become purchase orders. (T2, 241:11 to 17). And yet it is undisputed that Vision never placed an order (and there are no emails in which Vision was talking about any future orders, supporting Mr. Zhuo's testimony that he never had any conversations with Vision in which Plaintiff said anything about future orders) with ACU that was consistent with its inventory and stocking policies. Ms. Prignano was unable to explain why that did not happen. (T2, 242:5 to 18), and neither did any other Vision witness. Even though Liang, in an email and in testimony, alluded to a purported "5,000 sets of casement hardware," no evidence of any email, purchase order, or other documentation was ever produced. Mr. Zhuo flatly denied ever hearing of such an order, because had he received such an order, it would have been a reason to celebrate. (Def. Brief @ 26; T3, 449:14 to 450:3).

**POINT FOUR**
**PLAINTIFF'S DAMAGE CLAIMS ARE NOT REASONABLY FORSEEABLE AND MUST BE DENIED. INTEREST, LIKEWISE, IS INAPPROPRIATE IN THIS CASE.**

As noted in DB Point 3, the failure to alert ACU to the existence of the quotations, and the failure to order the inventory necessary to cover those quotations and thereby reduce them to the certain orders that Vision bragged about, makes any claim for damages by Vision meritless. Plaintiff

seeks liquidated damages, based upon its self-serving calculations, along with pre-judgment interest. The equities in this case should preclude the allowance of interest to Plaintiff. Bak-A-Lum, supra, at 131.

Additionally, the damages claimed, given the "selfish silence" of Plaintiff[3] in failing to order inventory or keep ACU informed about the status and developments of its efforts to build a Casement window business and the existence of quotations and what that meant, and, especially in light of the failure to order any inventory after getting approval of quotes from some customers, as early as July 2017, it cannot have been reasonably forseeable that there would be any damages to Plaintiff, even if the Court should decide that ACU breached the purported contract as a result of the two orders in January 2018. As noted by the N.J. Supreme Court:

> . . . The goal is "to put the party in as good a position as . . . if performance had been rendered. [citation omitted] . . . "[w]hat that position is depends upon what the parties reasonably expected." [Totaro, Duffy, Cannova and Company, LLC v. Lane, Middleton, 191 N.J. 1 at 14 (2007); see also: Sons of Thunder v. Borden, Inc., 148 N.J. 396 (1997)].

Most often, courts will award compensatory damages in a breach of contract action, not consequential damages, ordinarily reserved for tort claims. Totaro, supra, at 12-14. Coyle v. Englander's, 199 N.J. Super 212 (App. Div. 1985), cited by Plaintiff, is consistent with this holding. Plaintiff's claims for "Expectation Damages" amount to a claim for consequential damages, not ordinarily awarded in New Jersey contract cases. Totaro, supra. Plaintiff offers no showing of fact or law why this rule should not be followed in this case, should the Court find that ACU has breached the purported contract and is liable to Vision for damages. Coyle v. Englander, 199 N.J. Super 212 (App. Div. 1985) (Nightclub not liable for injury to band member for its failure to provide

---

[3] See Point two, supra, @ p. 7 for Judge Conford's discussion of this idea.

personnel to load band equipment, per contract).

## CONCLUSION

Defendant again urges the Court, for the reasons set forth in the original Defendant's Post-Trial Brief and in this Reply to Plaintiff's Proposed Findings of Fact and Conclusions of Law, to enter a Judgment of "No Cause for Action" in favor of Defendant ACU and against Plaintiff, Vision, dismissing the complaint in its entirety, with prejudice and with costs to Defendant.

Dated:  May 27, 2025                                       __/s/*Michael T. Warshaw*__

                                                                                                __/s/*Edward W. Miller*__